Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe St.
Spokane, WA 99201
(509) 795 4863
kirby@kirbylawoffice.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PREPARED FOOD PHOTOS, INC., f/k/a ADLIFE MARKETING & COMMUNICATIONS CO., INC., a Florida for profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>POOL WORLD, INC., a Washington for profit corporation,<br><br>Defendant. | No. 2:23-cv-00160-TOR<br><br>**DEFENDANT'S MOTION TO COMPEL ANSWERS TO DISCOVERY**<br><br>Hearing December 8, 2023<br>6:30 PM |

The discovery sought in this motion addresses an issue that both sides agree is central to the parties' dispute in this case—whether plaintiff's tactics to extract large settlement payments for allegedly infringing use of individual photos, far in excess of the market value of the individual photos used, and the apparently large profits made using those tactics, bear on plaintiff's invocation of the discovery rule to avoid the three-year statute of limitations or, indeed, on the damages claim itself. Defendant seeks to show the amount of revenue that plaintiff earns using these tactics, and the extent of its use of these tactics to inform a motion for summary judgment. Plaintiff, without making any claim that disclosing such information will put it at any competitive disadvantage, has refused to produce the information because, as its counsel put it, once disclosed it will not be possible to "put the toothpaste back in the tube." Thus, defendant now moves to compel answers to the following two interrogatories and one request for production of documents:

> **Interrogatory 12.** Please identify any and all claims that you have made for infringement of the copyright in the Work, or in any group of photos that included the Work.
>
> ANSWER: Plaintiff objects to this interrogatory as it is not relevant to the claims or defenses at issue in the lawsuit. Plaintiff further objects to this interrogatory as overly broad, in that it would require Plaintiff to identify every pre-suit and filed lawsuit demand that Plaintiff has ever made with respect to each and every one of its 30,000+ photographs.
>
> **Interrogatory 14.** Please state, for each calendar year since 2010, how much revenue Plaintiff derived from claims of infringement that it asserted and/or from filing infringement lawsuits.
>
> ANSWER: Plaintiff objects to this interrogatory as it is not relevant to claims or defenses at issue in this lawsuit.
>
> **Request for Production 6**. Any communications to alleged infringers (or representatives of alleged infringers) of the copyright in the "Work" or in any group of photos that included the "Work," other than initial demand letters, that refer to the expense of litigation as a reason why the alleged infringer should pay any amount greater than $5000 to avoid infringement litigation.
>
> RESPONSE: Plaintiff objects to this request as not relevant to the claims or defenses at issue in this lawsuit and as overly broad/unduly burdensome.

**BACKGROUND FACTS SUPPORTING RELEVANCE**

In 2010, defendant Pool World created a website describing the grills it offers for sale and linking to images of the grills that could be bought on its premises. The website

included a two-part image comprised of sections of two separate photos, one of skewers of shrimp on a grill, and one of skewers of vegetables on a grill. In this copyright infringement lawsuit, filed in May 2023, plaintiff Prepared Food Photos, Inc., alleges that it is in the business of licensing high-end photos of food, contends that it owns the copyright in the photo of vegetables on the righthand side of the image, and seeks tens of thousands of dollars in actual damages for the license fee it claims to have lost.

When Pool World created its website in 2010, plaintiff made its photos available for licensing on iStock, a stock photo website, apparently for as little as a dollar per license. Defendant's investigation of the case thus far reveals that, currently, comparable stock photos can be licensed for $12. *See* Levy Aff. ¶¶10, 11 and Exhs. D and E. Plaintiff contends, however, that it is entitled to recover a lost license fee of $35,964 because, in 2016, it pulled all of its photos off iStock and switched business models, making its photos available only by subscription to its entire photo library at a minimum rate of $999 per month—and $999 times the 36-month limitations period is $35,964. *Id.* Beginning in 2017, plaintiff began conducting reverse image searches to find examples of alleged infringement of its copyrights so that it could threaten and bring lawsuits such as this one.

This lawsuit, which plaintiff filed thirteen years after the alleged infringement, would ordinarily be barred by the Copyright Act's three-year statute of limitations. See 17 U.S.C. § 507(b); *see also Bell v. Oakland Community Pool Project*, 2020 WL 4458890, at *5 n.3 (N.D. Cal. May 4, 2020) (collecting cases and noting that "[c]ourts . . . have concluded that the mere fact that a document remained online does not" mean that a plaintiff's copyright claim continually accrues). Plaintiff seeks to be excused from application of the three-year statute of limitations by invoking the discovery rule. Plaintiff contends that, even though it has been running reverse image searches for several years to enable litigation like this case, it located Pool World's use only last year. Complaint ¶ 21. Among Pool World's defenses are (1) that plaintiff's claimed actual damages are grossly inflated and (2) that plaintiff's inequitable conduct in this case and countless others like it deprives plaintiff of the ability to invoke the equitable discovery-rule exception to the statute of limitations.

Specifically, Pool World disputes plaintiff's self-characterization as a business licensing high-end food photographs. Instead, Pool World contends that plaintiff's main business is threatening and bringing copyright infringement litigation against small businesses and nonprofits for their use of stock photos that have limited individual market value, and extracting large settlements from those defendants or potential defendants even though the individual photos were originally offered for licensing for a few dollars at most. PACER reveals that plaintiff has filed hundreds of suits similar to this one, Levy Aff. ¶¶ 5-6 and Exh. C, securing five-figure default judgments through ex parte briefing that fails to acknowledge the well-established rule that actual damages for copyright infringement must be based on "what a willing buyer would have been reasonably required to pay to a willing seller for [the] plaintiffs' work, . . . not what the owner would have charged." *Dash v. Mayweather*, 731 F.3d 303, 313 (4th Cir. 2013) (alteration and omission in original; citation omitted); see also Levy Aff. ¶ 7.[1] But Pool World's investigation reveals that most cases never reach judgment; rather, they are dismissed voluntarily with no appearance having been entered. *Id.* ¶ 6. Defendant suspects that plaintiff points to the default judgments to intimidate defendants into settlements which, we expect to find, are in the mid-four figures. Assuming that to be true, for the hundreds of lawsuits plaintiff has filed, it has likely collected over one million dollars, more than it has earned in actual license fees. The discovery at issue on this motion seeks to confirm that estimate.

Moreover, Pool World expects to prove that, besides the hundreds of lawsuits found on PACER, plaintiff has sent many demand letters, many of them similar to the demand letter that is attached to the Answer as Exhibit A, and has extracted settlements from targets who do not have access to experienced copyright counsel, who do not understand that the

---

[1] Other circuits follow the same approach. *Gaylord v. United States*, 777 F.3d 1363, 1368 (Fed. Cir. 2015) ("court [need not] allow owners to charge what they would like to have charged if unconstrained by reality") (cleaned up); *Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001).

infirmities in the demand letters, and who cannot afford to defend themselves. (The attached affirmation enumerates many ways in which the demand letters are misleading and coercive). Currently, its demand letters routinely demand a $30,000 settlement that must be paid within 21 days; unless that amount is paid promptly, the letter threatens, plaintiff will file suit in federal court in Florida. *Id.* ¶¶ 13 to 24.[2] The large settlements demanded in the letters, like the $35,964 in damages sought in this case, are untethered from economic reality, and are demanded, defendant believes, for the purpose of intimidation. Moreover, plaintiff never pursues individual defendants (who could appear pro se), only incorporated entities, deliberately taking advantage of the high expense of defending copyright litigation, *id.* ¶¶ 19, 26-27 and Exh. J, to extract large settlements.

Pool World intends to seek summary judgment on limitations grounds, and a partial summary judgment negating plaintiff's theory that it can base its damages claim on the subscription model that it adopted long after the alleged infringement began. In support of summary judgment, Pool World will argue first that the Court should adopt the reasoning of a line of cases holding that serial copyright litigators like the plaintiff cannot take advantage of the discovery rule to sue over infringements that occurred many years before.[3] These courts reason that a plaintiff that habitually files infringement claims must be actively monitoring uses of its intellectual property and hence, as a matter of law, it should reasonably be expected to discover any infringement within the three-year limitations window. Thus, we expect to argue that, based on the undisputed fact that plaintiff has filed more than two hundred infringement suits in the past few years, plaintiff cannot take advantage of the discovery rule as a matter of law. Although this line of cases would apply

---

[2] Initially, plaintiff would demand "only" a few thousand dollars for the infringement of the copyright in a single photograph. Levy Aff. ¶ 24 and Exh. H.

[3] *Minden Pictures v. Complex Media*, 2023 WL 2648027, at *3 (S.D.N.Y. Mar. 27, 2023) *Lixenberg v. Complex Media*, 2023 WL 144663, at *3 (S.D.N.Y. Jan. 10, 2023) (plaintiff had filed nearly twenty such lawsuits); *Minden Pictures v. Buzzfeed, Inc.*, 390 F. Supp. 3d 461, 467 (S.D.N.Y. 2019).

to plaintiff based on the number of lawsuits filed alone, responses to the discovery sought here would provide additional important evidence in support of defendant's motion.

Pool World also intends to seek summary judgment based on arguments more specific to plaintiff. The discovery rule is founded on equitable principles, *e.g.*, *Andrews v. TRW, Inc.*, 225 F.3d 1063, 1066–67 (9th Cir. 2000), *rev'd on other grounds*, 534 U.S. 19 (2001) (unless Congress has legislated otherwise, "the equitable doctrine of discovery 'is read into every federal statute of limitations.' *Holmberg v. Armbrecht*, 327 U.S. 392. . . (1946)"). Given the equitable origins of the discovery rule, plaintiff should be denied the use of the discovery rule based on the fundamental principle that a party cannot get equity if it has not done equity. *In re Gardenhire*, 209 F.3d 1145, 1152 n.11 (9th Cir. 2000) ("[h]e who seeks equity must do equity"). Pool World will argue, as a matter of first impression, that plaintiff brought this lawsuit as part and parcel of a money-making scheme that is the very opposite of equity. Indeed, allowing suit against Pool World so far outside the limitations period is especially inequitable both because the plaintiff's damages calculations are predicated on a licensing model that was not created until many years after the alleged infringement, and because that plaintiff's discovery answers reveal even the plaintiff has not kept relevant records from the time period of the alleged infringement, and for several years afterward, that are needed to assess its claims.[4] Yet plaintiff seeks a large damages award by taking advantage of the fact defendant has not retained relevant records that could aid its defense.

In pursuit of those intended arguments, Pool World served discovery seeking to show the tiny sums paid for licensing before the 2016 switch in business model, to show that asserting grossly overstated copyright claims is plaintiff's main source of income, and to show that plaintiff deliberately takes advantage of the high cost of defending copyright

---

[4] Pool World will also seek summary judgment on the ground that plaintiff "should have known" of the infringement before 2022, considering that reverse image technology has been available for more than 15 years, and that plaintiff has been using that technology to develop infringement claims at least since 2017. Additional discovery, not at issue on this motion, is needed before that seeking summary judgment on this ground.

litigation to extort unjustified settlements. Plaintiff has denied any knowledge of the actual cost of buying licenses for its work at the time of the alleged infringement, and apparently even denies knowing how much income it earned from those licenses during the period when individual licenses were for sale. And plaintiff objects on relevance grounds to the discovery sought to show that plaintiff has mischaracterized its business and has acted so inequitably that it should be deprived of the benefits of the discovery rule.

Before filing this motion, defendant's counsel met and conferred with counsel for plaintiff. Levy Aff. ¶ 3. After two oral meetings and several written exchanges, many of the disputes appear to have been resolved, but the issues that remain are matters of principle, informed by the parties' respective legal theories of the case. *Id.* Thus, the parties require a court ruling on those issues to set the way forward in this litigation.

**ARGUMENT**

Pre-trial discovery is "accorded a broad and liberal treatment; [ordinarily] the production of evidence can be compelled regarding any matter 'relevant to the subject matter involved in the action' or 'reasonably calculated to lead to the discovery of admissible evidence.'" *Shields v. Transamerica Premier Life Ins. Co.*, 2022 WL 18832325, at *1 (E.D. Wash. Aug. 26, 2022) (cleaned up); *Kelleher v. Fred Meyer Stores*, 302 F.R.D. 596, 597 (E.D. Wash. 2014). Here, the discovery sought is relevant to the subject matter involved in the action, and is relevant both to Pool World's statute of limitations defense and to the parties' dispute about the proper measure of damages in the case.

The discovery requests at issue on this motion (listed on page 1 above) are relevant to several issues in the case. First, plaintiff alleged in the Complaint that it "is in the business of licensing high-end, professional photographs for the food industry." ¶ 6. That allegation is likely intended to show the basis for seeking a large damages award for infringement. Pool World's Answer denied that allegation because it has reason to believe that plaintiff's main business is claiming copyright infringement, both by sending large numbers of deceptive and deliberately intimidating letters threatening to sue for exorbitant amounts of damages for copyright infringement, and by filing lawsuits for infringement.

The existence of hundreds of infringement lawsuits is a matter of public record, but the volume and content of demand letters is not public, and that data could provide a better sense of what plaintiff's main business is. Similarly, Interrogatory 14 seeks to quantify the revenues secured from threats and litigation over alleged copyright infringement, which can be compared to the amount of revenue secured by selling licenses, in determining what plaintiff's real business is—whether it is a legitimate vendor of highly valuable images and not mainly an enforcer of overstated copyright claims—and thus negating plaintiff's claim of huge actual damages for lost license fees.[5]

Second, the information sought by all three discovery requests is relevant to plaintiff's invocation of the discovery rule to maintain a lawsuit over an alleged infringement of copyright that began in 2010, in several respects. In several recent cases, judges have expressed particular skepticism when what they call "seasoned litigator[s]," those who have filed a significant number of copyright infringement actions, have invoked the discovery rule to avoid dismissal on limitations grounds. *E.g.*, *Minden Pictures v. Buzzfeed, Inc.*, 390 F. Supp. 3d 461, 467 (S.D.N.Y. 2019) (plaintiff had filed forty infringement suits); *see also Minden Pictures v. Complex Media*, 2023 WL 2648027, at *3 (S.D.N.Y. Mar. 27, 2023) (plaintiff had filed 100 infringement suits); *Lixenberg v. Complex Media*, 2023 WL 144663, at *3 (S.D.N.Y. Jan. 10, 2023) (plaintiff had filed nearly twenty infringement lawsuits). In urging the Court to adopt this approach to hold that plaintiff should be denied access to

---

[5] In answer to Interrogatory 9, plaintiff claims not to know how much iStock charged for licenses to use its photographs during the period of time before plaintiff adopted its current business model of licensing only by subscription. In answer to Interrogatory 13, plaintiff avoided saying how much revenue plaintiff derived from its pre-subscription-model licenses. Defendant questions plaintiff's implicit assertions that it has no idea what was charged for its work, or how much it was paid in toto for that work, but rather than ask the Court to find the answers to be evasive, defendant will subpoena a third party to obtain that information. Defendant's research suggests that, at the time of the alleged infringement, plaintiff's photos could be licensed for as little as $1, and that the current price for such stock photos is $12. Levy Aff. ¶¶ 10, 11 and Exh. E, F. If that research is confirmed by discovery from iStock itself, that will tend to contradict the allegation that plaintiff licenses "high-end" photos.

the discovery rule as a matter of law, and thus that summary judgment should be granted dismissing the complaint on limitations grounds, defendant wishes to be able to present a full account of the extent to which plaintiff is not just a "seasoned litigator" of copyright infringement claims, but is a seasoned threatener of copyright infringement claims whose fruits, defendant hopes to be able to show, outstrip the amount of revenue that plaintiff obtains by selling licenses to use its photographs.

These discovery requests are also sought in aid of defendant's anticipated argument that, regardless of whether serial copyright enforcers should be barred from invoking the discovery rule as a matter of law, plaintiff should be denied the ability to invoke the discovery rule because the rule is an equitable exception to the statute of limitations, and equity is properly denied to a party that itself has not done equity. In that regard, Pool World expects that its discovery will show that Prepared Food Photos has been extracting huge sums of money by sending demand letters that misrepresent the law in communications with lay recipients—the owners of small businesses and nonprofit organizations—who are not likely to have ready access either to knowledgeable copyright lawyers, or to the information they would need to question the assertions in the demand letters and to understand that much of the contents of the demand letters constitute empty threats not likely to be upheld in court if there are adversarial presentations. By showing the vast volume of this enterprise, the repetition of these misrepresentations in letter after letter, the deliberate direction of the demand letters to entities rather than individuals, and the substantial sums that plaintiff extracts through its litigation threats, defendant intends to prove that inequitable conduct produces more revenue than the very limited market value that the individual photographs have. This evidence, in turn, will be offered in support of defendant's argument that plaintiff has not done equity and hence should not be allowed to invoke the discovery rule as an equitable exception to the statute of limitations.

The particular aspect of plaintiff's enforcement campaign at which Request to Produce 6 is directed has an especial bearing on plaintiff's failure to do equity—the use of direct references to how expensive it will be for the target of the demand to defend itself in

court—in effect, it suggests that Prepared Food Photos threatens to file strike suits in order to secure payments of thousands of dollars in nuisance payments, which courts strive to minimize. *See Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 214 (2000) (recognizing importance of construing trademark laws in a way that minimizes the opportunity for strike suits). Interrogatory 12, coupled with Request to Produce 7, will help establish that the language in the demand letter sent to Pool World—"Keep in mind that attorney fees will include those that you will be forced to incur to mount a defense (if any)"—is a standard part of the boilerplate sent to all of plaintiff's targets. Request for Production 6 is focused on similar references in followup communications. As noted in the Levy Affirmation, ¶ 18 and Exh. G, one of the lawyers at Copycat Legal who signed the demand letter to Pool World told a different one of plaintiff's targets that its offer of $1500 to settle an infringement claim for a stock photo of fruits and vegetables was unacceptable because it "does not appear to be based on any semblance of reality." An important part of that "reality" that plaintiff sought to hammer home included not only the theory that plaintiff can recover damages based on the cost of a monthly subscription for the three-year limitations period, but also that, as a practical matter, it would be very expensive for the target to pay its attorneys to defend itself in court:

> I would anticipate that Healthy Solutions is incurring an additional $15,000 to $30,000 of attorney fees with your firm. ., . . [O]n Healthy Solutions' best day, it appears to be responsible for at minimum $17,5000.00 out–of–pocket defending the lawsuit.....

Exh. G, at G-112.

Accordingly, plaintiff's threat of litigation goes on, to "get down to the brass tacks of this matter," a settlement of $23,976 must be paid for this target to avoid being sued. *Id*.

Request to Produce 6 seeks to determine whether this explicit threat to impose high defense costs is a one-off, so that the Court can properly weigh the equities in deciding defendant's anticipated motion for summary judgment on the limitations issue.

## CONCLUSION

The motion to compel discovery should be granted.

/s/ Paul Alan Levy
Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

/s/ Stephen Kirby
Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe St.
Spokane, WA 99201
(509) 795 4863
kirby@kirbylawoffice.com

Attorneys for Defendant

November 5, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 5th day of November, 2023, I am filing this motion to compel discovery and attached affirmation and exhibits by the Court's ECF system, which will effect service on counsel for plaintiff, Max Archer and Lauren Hausman.

                                      /s/  Paul Alan Levy
Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

November 5, 2023