Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe Street
Spokane, Washington 99201
(509) 795-4863
kirby@kirbylawoffice.com

Phillip R. Malone (pro hac vice)
Juelsgaard Intellectual Property and Innovation Clinic
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
(650) 724-1900
pmalone@stanford.edu

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF WASHINGTON

PREPARED FOOD PHOTOS, INC.,
f/k/a ADLIFE MARKETING
& COMMUNICATIONS CO., INC.,
a Florida for profit corporation,

                Plaintiff,

    v.

POOL WORLD, INC., a Washington for
profit corporation,

                Defendant.

No. 2:23-cv-00160-TOR

**DEFENDANT'S OPPOSITION TO MOTION TO DISMISS WITHOUT PREJUDICE** [CORRECTED]

Hearing September 30, 2024
6:30 PM

### TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.    The Legal Prejudice to Pool World from Dismissal Without Prejudice Warrants Denial of PFP's Motion . . . . . . . . . . . . . . . . . . . . 9

B.    The Court Should Exercise Its Discretion to Deny Dismissal Without Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Affordable Aerial Photography v. Abdelsayed,*
No. 9:21-cv-91331 (S.D. Fla.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Blum v. Stenson,*
465 U.S. 886 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Cadkin v. Loose,*
569 F.3d 1142 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

*Cheyenne LV Capital v. A10 Capital,*
2022 WL 2873171 (S.D. Cal. July 21, 2022) . . . . . . . . . . . . . . . . . . . . . 11

*Cuellar v. Joyce,*
603 F.3d 1142 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dennis v. Chang,*
611 F.2d 1302 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Dental Health Services v. Miller,*
2024 WL 1173803 (W.D. Wash. Mar. 19, 2024) . . . . . . . . . . . . . . . . . . . 11

*Eisen v. Day,*
2023 WL 8813521 (N.D. Cal. Dec. 19, 2023). . . . . . . . . . . . . . . . . . . . . . 10

*Elf-Man, LLC v. Lamberson,*
2014 WL 12634827 (E.D. Wash. July 10, 2014) . . . . . . . . . . . . . . . . . 12

*Jarvis v. K2 Inc.,*
486 F.3d 526 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Kirtsaeng v. John Wiley & Sons,*
579 U.S. 197 (2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Morrison v. CIR,*
565 F.3d 658 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*On Davis v. The Gap,*
246 F.3d 152 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Prepared Food Photos v. Arcadia Academy,*
No. 4:23-cv.00163 (E.D. Mo.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Prepared Food Photos v. Clyde's Chicken King,*
No. 6:24-cv-00351 (W.D. La.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Prepared Food Photos v. WeNeeda Vacation.com,*
No. 1:23-cv-11085 (D. Mass.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Prepared Food Photos v. AM, Inc.,*
No. 1:23-cv-00931 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Save Our Cumberland Mountains v. Hodel,*
857 F.2d 1516 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Starz Entertainment v. MGM,*
39 F.4th 1236 (9th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*U.S. v. $32,820.56 in U.S. Currency,*
838 F.3d 930 (8th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*U.S. v. Ito,*
472 Fed. Appx. 841 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Warner Chappell Music v. Nealy,*
144 S. Ct. 1135 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Westlands Water Dist. v. U.S.,*
100 F.3d 94 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Willis v. Scorpio Music (Black Scorpio),*
2017 WL 11680862 (S.D. Cal. Apr. 21, 2017) . . . . . . . . . . . . . . . . . . . . . . . 11

*Zanowick v. Baxter Healthcare Corp.,*
850 F.3d 1090 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**STATUTES AND RULES**

17 U.S.C. § 411(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

17 U.S.C. § 505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rules of Civil Procedure
    Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Local Rule 7(g)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Defendant Pool World is one of thousands of American businesses from which plaintiff Prepared Food Photos, Inc. ("PFP") has attempted to extract legally unjustified settlements for alleged copyright infringement. Since 2016, PFP's main source of revenue, and its staff's main occupation, has been looking for alleged infringements of its decades-old photo library, sending demand letters, and suing small companies seeking tens of thousands of dollars each in damages. These amounts are based on a damage theory that is plainly unjustified under controlling authority in the Ninth Circuit and elsewhere, and untested in adversarial proceedings. Plaintiff keeps this approach alive by avoiding contested litigation.

Pool World posted an allegedly infringing image on a website in 2010. At the time, PFP had an arrangement with iStock (istockphoto.com) under which a photo that was part of the image was available to license for under $1. In 2016, PFP registered the copyright in all of its photos (including the photo at issue here), pulled its photos from iStock, and moved from an a-la-carte licensing model using third-party vendors to a subscription-only model under which, PFP alleges, a minimum monthly charge of $999 must be paid for access to its entire library of stock food images. PFP's owner candidly admitted in a blog post that this change enabled plaintiff to make money from infringement claims.

PFP sued Pool World for infringement on June 2, 2023, invoking the "discovery rule" to avoid the three-year statute of limitations, and relying on the 9th

Circuit's rule that damages can be sought for the entire period of the alleged infringement to claim entitlement to damages in the form of its lost license fee, as well as a portion of the profits that Pool World allegedly made from the claimed infringement.  Hoping to avoid litigation, Pool World had promptly removed the image after receiving PFP's demand letter.  But PFP's initial disclosures make clear that, because PFP contends that its actual charge for access to its entire database of about 20,000 photos is a minimum of $999 per month, it is seeking $11,922 in lost license fees for each of the twelve years from the date of posting in 2010 to the date the photo was removed in 2022, all for a single image whose perpetual use could have been licensed for less than a dollar in 2010.

Over the past year, Pool World has pursued formal and informal discovery to prepare to seek summary judgment on both the statute of limitations and damages. The discovery has exposed serious concerns about the veracity of PFP's factual allegations in this case about the amounts actually paid by companies seeking access to its database of photos by paying monthly subscription fees.  Faced with a motion to compel discovery that threatens to further undercut the factual claims, not to speak of risking an adverse decision on the merits that could be cited against it in future cases, PFP suddenly seeks to drop its suit after twelve months of litigation, discovery motions, and mediation process, even though Pool World counsel clearly advised PFP's counsel at the outset of the litigation of the many defects in its claims.  But PFP

wants to dismiss **without** prejudice, thus avoiding accountability via an application for an award of statutory attorney fees under 17 U.S.C. § 505, through which Pool World could be made whole, and its counsel compensated, for the time and expense that this case has consumed. Because the Ninth Circuit and many other courts have held that a voluntary dismissal that deprives a defendant of the opportunity to pursue a statutory claim for attorney fees constitutes legal prejudice and hence warrants denial of dismissal without prejudice, the motion to dismiss without prejudice should be denied. PFP should be allowed to dismiss only **with** prejudice.

**STATEMENT OF THE CASE**

The motion to dismiss is larded with assertions about the facts, about PFP's claims, and about the reasons why PFP now seeks to dismiss without prejudice. These assertions lack evidentiary support, and many of them are false and misleading.

For about 20 years, until 2016, PFP, under its former name AdLife Marketing and Communications Co., gave businesses and other potential users access to its photographs via licensing on third-party stock photo websites; licenses cost less than a dollar through iStock, a subsidiary of Getty Images. Levy Third Affirmation (submitted with this motion), at ¶ 3 Exh. N. The terms of the standard iStock license allowed perpetual use, not only by the licensee but also by its clients, *id.* ¶ 5 Exh. O. PFP was never told who was buying the licenses, and thus to this day it has no records identifying licensees from this period. *See* Levy First Affirmation (DN 21-1,

attached to Pool World's Motion to Compel last year), at ¶¶ 15-16.

In 2016, PFP changed business models.  It pulled all of its photos off the stock websites, registered the copyright in its existing photos, and began making the photos available for licensing only by monthly subscription.  Levy Third Aff. ¶ 8 & Exh. R. A 2023 blog post by PFP's owner, which he took offline after Pool World's counsel inquired about it, admitted that the purpose for this shift was to enable PFP to make money from infringement claims. *Id.*  PFP staff then began conducting reverse image searches, Levy First Aff. Exh B., DN 21-4, at B59-60.  Indeed, PFP recently admitted in a Rule 30(b)(6) deposition that reverse image searching is the main task on which PFP staff spend their time.  Levy Third Aff. ¶ 47 & Exh. Z.  And although PFP claims that it is still in the business of creating food photos, the Copyright Office's register reflects that PFP has not registered any copyrights since early 2017. *Id.* ¶ 48.

During the first few years of its copyright enforcement business, PFP staff sent out their own demand letters, routinely insisting on damages payments of $8,000 or $16,000 for claimed infringing use of a single photo. *Id.* ¶ & Exh. S.  For a period of time, including the year 2020, PFP's demand letters were sent by a California law firm that sought $4,825 or $2,525 for alleged infringements, arguing that this was a very low amount because, allegedly, PFP was charging $999 per month for use of its images, so that the lost license fees for an infringement would total nearly $12,000 for each year of infringing use.  Levy First Aff. ¶ 24 and Exh. H.  And for the past

three years, represented by its current counsel, PFP's demand letters (like the letter to Pool World attached to the Answer, DN 7) routinely insist that $30,000 be paid within 21 days. PFP's law firm has sent more than 2,000 such demand letters over the past three years, Levy Third Aff. ¶ 10, and PFP has filed hundreds of infringement actions, almost all of which either are settled within a few months of filing, or have resulted in a default judgment awarding damages in amounts as high as $72,000, based on ex parte representations about the claimed subscription agreements and briefing that avoids citing the governing precedents in those circuits about how actual damages are to be calculated. Levy First Aff. ¶¶ 5-6 and Exh. C. Notably, no court has ever addressed PFP's whole-catalogue damages theory after receiving adversary briefing on those issues. *Id.* ¶ 8. Nor has a court ever addressed the soundness of PFP's reliance on the discovery rule to justify making copyright claims over decade-old alleged infringements.

PFP filed this action over Pool World's 2010 use of a composite image containing two photos, one of vegetables on a grill and one of shrimp on a grill, for a website promoting a minor part of Pool World's business. Flynn Aff. ¶ 4. The vegetable photo was one of the thousands of PFP images that iStock routinely licensed in the years before 2016. Levy First Aff. ¶ 9. As explained in Pool World's responses to PFP's discovery, Levy Third Aff., Exh. M, the employee who obtained the image left Pool World's employ years ago, but as best Pool World has been able

to reconstruct, considering Pool World's consistent policy for sourcing its images, the image was likely obtained from a vendor supplying the grills that Pool World sells. As a practical matter, however, given the lapse of time, and given that Pool World never had reason to retain the relevant records, and that PFP never created records identifying its licensees, it is unlikely that either side will be able to prove to a certainty whether the creator of the composite image had a proper license for use of the grilled vegetable image, and whether that license extended to Pool World.

In 2022, when Pool World received PFP's demand letter (which is Exhibit A to the Answer), it promptly removed the composite image from its website, hoping to avoid the time and expense of an infringement lawsuit.  Flynn Aff. ¶ 4.  But when PFP filed this action, Pool World felt it was being bullied, and was unwilling to pay a strike settlement, or indeed refer the case to its insurance company.  *Id.* ¶¶ 5-7. Instead, it retained counsel and prepared to litigate the case in earnest, undertaking discovery, retaining the services of expert witnesses, and preparing for trial.  *Id.* ¶ 9. These defensive efforts consumed a significant amount of time not only on the part of Pool World's pro bono counsel but also Pool World's own staff, as well as thousands of dollars of out-of-pocket expense.  *Id.*

The discovery has revealed facts that could undermine PFP's claims not only in this case but in every other case in which PFP's current business model has sought, and continues to seek, to extract extreme and objectively unreasonable damages

payments for claims over long-ago alleged infringements.  First, PFP was unable to identify the photographer who took the photo of vegetables on a grill, potentially calling into question the veracity of its application for copyright registration, where PFP implied that the photographer was Joel Albrizio, in that it claimed ownership of the copyright as "Employer-for-Hire of Joel Albrizio."  Complaint, Exh. A.  Further confusing the issues of authorship and originality, PFP identified Rebecca Jones as a person with personal knowledge of facts about how the photo was taken, even though she did not begin working at PFP until 2016—long after the photo was taken. Levy Third Aff. ¶ 12.

Moreover, after PFP produced the subscription agreements on which it has been basing its claims of entitlement to actual damages of $999 per month of alleged infringement, it became clear that PFP's claims were overstated at best.  First, some of the subscriptions were for much lower monthly amounts—as low as $99 per month.  Second, it became apparent when Pool World's counsel spoke to several subscribers that their subscriptions were not arms-length licensing transactions to gain access to PFP's database of photos for future use, but rather were entered to settle claims of past infringement.  Levy Third Aff. ¶¶ 13-21.  Although Pool World expects to seek summary judgment relying on well-established precedent in the Ninth Circuit and elsewhere that damages are based "not what the owner would have charged, but rather what is the fair market value" of the infringed work, *Jarvis v. K2*

*Inc.*, 486 F.3d 526, 534 (9th Cir. 2007), quoting *On Davis v. The Gap*, 246 F.3d 152, 166 (2d Cir. 2001), the process of reviewing the contracts and contacting subscribers cast doubt even on whether the contracts were probative of the value of access to the entire database of photos. To follow up, Pool World served additional discovery requests to learn in what months and years PFP had let subscribers pay less than $999 per month, and what discussions had led to the signing of the subscription contracts. *Id.* ¶ 22 and Exh. V.

The documents were needed to challenge PFP's damages calculations, and to identify third-party witnesses who might need to be subpoenaed to pursue the issue of how the subscriptions were obtained. These facts matter because, under Ninth Circuit law, *see Starz Entertainment v. MGM*, 39 F.4th 1236, 1244 (9th Cir. 2022), confirmed by the Supreme Court in *Warner Chappell Music v. Nealy*, 144 S. Ct. 1135 (2024), when a copyright holder successfully invokes the discovery rule to sue over an infringement more than three years old, it may seek damages for the entire period of alleged infringement. Because PFP's Initial Disclosures, Levy Third Aff. Exh. Q, said that PFP was claiming $999 in actual damages for each month going back to 2010 that the photo was on Pool World's website, Pool World needed to ascertain, for each of the months before 2022, whether subscription payments less than $999 had been accepted, and in what amounts. And because interviews raised the possibility that PFP had obtained subscription agreements to support inflated future

damages claims by promising not to sue for past infringements, Pool World needed to secure the communications between PFP and its subscribers to ascertain, for each agreement, whether the agreed prices reflected the market value of future access to the database of photos, or only a desire to avoid litigation and damages payments for past alleged infringements.

PFP objected to the discovery on relevance grounds, but before Pool World could pursue a motion to compel, PFP sought a stay of further litigation to permit mediation. Levy Third Aff. ¶¶ 24-25. Pool World was worried that the purpose of the stay pending mediation was to postpone discovery and an ensuing motion for summary judgment, but because PFP's counsel assured Pool World that hearing a candid evaluation of PFP's position from a neutral mediator could persuade his client to be realistic about settlement, Pool World consented to the stay, *id.* ¶ 26, see also Kirby Aff. ¶ 8, and devoted substantial time to developing presentations for the mediation. Levy Third Aff. ¶ 28. Ultimately, though, mediation revealed that the parties remained too far apart to make settlement possible. *Id.*

PFP now moves to dismiss without prejudice and to stay the case even further.

**ARGUMENT**

Dismissal without prejudice should be denied because it would cause plain legal prejudice to Pool World which, under Ninth Circuit precedent, is the first consideration when voluntary dismissal is sought without prejudice, and because, on

the facts of this case, PFP's inequitable behavior does not warrant an exercise of the Court's discretion to grant PFP that relief. PFP should dismiss with prejudice if it no longer wishes to pursue this litigation.

**A.    The Legal Prejudice to Pool World from Dismissal Without Prejudice Warrants Denial of PFP's Motion.**

The Ninth Circuit has long held in considering a motion for voluntary dismissal without prejudice, "the district court must determine whether the defendant will suffer some plain legal prejudice as a result of the dismissal. 'Legal prejudice' is 'prejudice to some legal interest, some legal claim, some legal argument.'" *Zanowick v. Baxter Healthcare Corp.*, 850 F.3d 1090, 1093 (9th Cir. 2017) (cleaned up), (*quoting Westlands Water Dist. v. U.S.*, 100 F.3d 94, 96-97 (9th Cir. 1996)). Dismissal on those terms would plainly cause such prejudice here.

In *U.S. v. Ito*, 472 Fed. Appx. 841, 842 (9th Cir. 2012), where a trial court had allowed the plaintiff to dismiss a civil forfeiture action without prejudice, the Ninth Circuit reversed and remanded with instruction to make the dismissal with prejudice. Citing *Cadkin v. Loose*, 569 F.3d 1142, 1148-49 (9th Cir. 2009), which held that dismissal without prejudice does not confer prevailing party status for a defendant that was sued under the Copyright Act, the court explained that the defendants "suffered plain legal prejudice in losing their ability to move for attorney's fees." Following *Ito*, several district courts in the Ninth Circuit have refused to allow plaintiffs to deprive defendants of the ability to seek awards of statutory attorney fees

by dismissing without prejudice. *Eisen v. Day*, 2023 WL 8813521, at \*3 (N.D. Cal. Dec. 19, 2023); *Cheyenne LV Capital v. A10 Capital* 2022 WL 2873171, at \*2 (S.D. Cal. July 21, 2022); *Willis v. Scorpio Music (Black Scorpio)*, 2017 WL 11680862, at \*1 (S.D. Cal. Apr. 21, 2017) (citing several other cases); s*ee also* in *U.S. v. $32,820.56 in U.S. Currency*, 838 F.3d 930, 937 (8th Cir. 2016) (noting that dismissal without prejudice should not be granted to deprive defendant of ability to seek statutory fees, but that this argument had been waived below).

Here, because dismissal without prejudice would deprive Pool World of the prevailing party status that the Copyright Act requires for a defendant to seek an award of attorney fees, *Cadkin*, 569 F.3d at 1148-49, dismissal on those terms would plainly prejudice Pool World.

PFP concedes that this is the general rule in the Ninth Circuit, Motion at 10-11, but relies on dicta in *Dental Health Services v. Miller*, 2024 WL 1173803, at \*2–3 (W.D. Wash. Mar. 19, 2024), about circumstances in which a claim to attorney fees may be too "speculative" to warrant a finding of legal prejudice from a dismissal that denies prevailing party status to the defendant. Motion at 11-12. But the district court in *Dental Health Services* followed *Ito* in refusing to allow dismissal without prejudice, and in fact rejected the effort of the plaintiff there to distinguish *Ito* on the ground that the statutory fee provision in *Ito* was mandatory, not permissive and subject to application of multiple factors.

PFP also cites an oral ruling in *Affordable Aerial Photography v. Abdelsayed*, No. 9:21-cv-91331 (S.D. Fla.).  *See* Motion at 13-14.  But in violation of Local Rule 7(g)(2), PFP did not file the oral ruling, and when Pool World's counsel requested a copy of the ruling, PFP counsel said that it could be found in a hearing transcript and suggested that Pool World order the transcript to find out what it said.  Moreover, the ruling as described is far too vague and conclusory to be followed here.

Additionally, the fact that Pool World is represented by pro bono counsel does not diminish the legal prejudice that Pool World would face from a dismissal without prejudice that would deprive it of prevailing party status and, in that way, would prevent it from pursuing a claim for attorney fees or, indeed, a state-law damages action for malicious prosecution.  Attorney fees are properly awarded to counsel working for non-profit organizations (or by private lawyers such as Mr. Kirby who have agreed to look solely to a possible fee award for their compensation).  *See Blum v. Stenson*, 465 U.S. 886 (1984); *Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010), citing *Morrison v. CIR*, 565 F.3d 658, 664 (9th Cir. 2009).  Defendant Pool World has submitted an affidavit explaining that it has in interest in having its counsel compensated for their work on Pool World's behalf.  That interest is enough reason to deny dismissal without prejudice.

In any event, as this Court indicated in *Elf-Man, LLC v. Lamberson*, 2014 WL 12634827, at *1 (E.D. Wash. July 10, 2014), the pendency of a motion to

dismiss is not the proper time to decide whether the motion for an award of attorney fees should be granted.  Rather, assuming that PFP chooses to dismiss with prejudice instead of continuing to pursue this litigation, Pool World will then move for an award of attorney fees and PFP will have the opportunity to argue that its claims were not unreasonable and did not otherwise merit an award of attorney fees under the *Kirtsaeng* factors.  *Kirtsaeng v. John Wiley & Sons*, 579 U.S. 197 (2016).

Finally, PFP admits that depriving a defendant of a statute of limitations defense can also constitute legal prejudice precluding grant of dismissal without prejudice, Motion at 9, but it argues that this defense cannot succeed here because PFP has invoked the discovery rule.  *Id.* at 9-10.  However, as this Court noted in addressing Pool World's motion to compel, "application of the discovery rule is a fact-intensive inquiry."  DN 27, at 7-9.  Based on discovery obtained to date, and further disclosures that could emerge during depositions of PFP's witnesses, as well as arguments described in detail to Judge Goeke in the mediation as well as to counsel for PFP in a meet and confer, Pool World expects to succeed on a motion for summary judgment on the limitations issue.

**B.    The Court Should Exercise Its Discretion to Deny Dismissal Without Prejudice.**

Even aside from the prejudice to Pool World, PFP has not shown that the Court should exercise discretion to dismiss.

Based on the unsupported allegations of its complaint, PFP presents a

deceptively simple but largely false picture of this case. Motion at 2-3. According to PFP, Pool World used PFP's photo without authorization, but, with its hand "caught in the proverbial cookie jar," *id.* at 13, it refuses to pay damages and instead raises a series of baseless defenses that cannot possibly succeed. Thus, the story goes, PFP, acting responsibly before anybody has spent a significant amount of time or money preparing the case for trial, has decided to drop the case because the amount of money it stands to recover is not worth its investment of time to litigate.

But PFP's motion does not seek dismissal under Rule 12(b)(6). PFP cannot rest on the allegations of its complaint, and the evidence submitted with this opposition shows a very different picture. First, although the complaint alleges that Pool World's use was unauthorized, PFP has no way of knowing whether that is true, both because the licenses it sold via iStock were "royalty-free," allowing perpetual use both by the company buying the license and by the buyers' customers, Levy Third Aff. ¶ 5 & Exh. O, and because PFP never kept track of the entities to whom iStock was selling, not to speak of those entities' end-users. *Id.* ¶ 4. PFP was specifically warned of this uncertainty before it filed this action, *id.* ¶ 6 and Exh. P, but it charged ahead anyway. As explained in its discovery responses, Pool World has reason to believe it made an authorized use, Exh. M, but it is unlikely that either side will present definite proof on this point because there are no records of what happened in 2010. Such uncertainties are present every time PFP pursues alleged infringements

occurring before its photos were taken off iStock in 2016. Among other issues on the statute of limitations defense, Pool World will argue that, when PFP invokes the equitable "discovery rule" exception to avoid the three-year statute of limitations, equity requires that PFP bear the burden of the uncertainty caused by its own failure to keep records from licensing arrangements that date back well over ten years before suit was filed.

Second, PFP's damages claim based on its lost license fee amounts to more than $100,000 ($11,992 for each of the twelve years of alleged infringement), in addition to a possible claim for a share of Pool World's profits, Exh. Q, all for posting a **single image**. If PFP had confidence in its damages claim, it would have ample incentive to litigate this case to judgment. A judgment for $120,000 would be higher than any of the default judgments it has secured. Moreover, Pool World's potential financial exposure also justifies the time and out-of-pocket expense that both Pool World and its counsel have devoted to the defense. But the legal arguments on which Pool World expects to seek summary judgment—the statute of limitations and PFP's damages theory—pose serious threats to PFP's business model of threatening to sue for hundreds of thousands of dollars unless targets pay $30,000. (Pool World may also be able to defend on the ground that PFP's copyright is invalid, and may have grounds to ask the Court to use the procedure provided by 17 U.S.C. § 411(b)(2).)

Such a threat to PFP's business model is also posed by Pool World's having

learned, by examining PFP's actual subscription agreements, that the entire basis for demanding $999 per month may have been a lie.  Levy Third Aff. ¶¶ 13-21.  It was only when Pool World sought discovery of PFP's books showing the payments actually received, and documents showing whether **all** of PFP's subscription agreements were obtained through threats of suit for past infringement, that PFP sought to stay the litigation.  PFP knows that, if Pool World prevails on summary judgment, or if discovery shows that PFP has been misrepresenting the facts of its subscription income, its business model could be undermined well beyond this case.  In the circumstances, this Court should not enable PFP to avoid the risk of such consequences by granting dismissal without prejudice.

The timing of PFP's motion to dismiss should also disincline the Court to exercise its equitable discretion in PFP's favor.  The economics by which PFP now claims to be motivated in seeking to dismiss have been true from the beginning of this case, and indeed they are present in every case that PFP files and every case that PFP threatens to file.  PFP counts on defendants who are unrepresented by counsel and unwilling to invest the time and money that it takes to defeat its legally unfounded and grossly exaggerated claims.

Indeed, as shown by the evidence submitted last year in support of the motion to compel, PFP deliberately preys on the high cost of defending a copyright case to extract large payments.  In almost every case, it secures a quick settlement.  But in

two recent cases, it litigated for several months against lawyers who provided defense services on a contingent basis, and then entered into confidential settlements that concealed PFP's defeat.  *See PFP v. Arcadia Academy*, No. 4:23-cv-00163 (E.D. Mo.); *PFP v. WeNeeda Vacation.com*, No. 1:23-cv-11085 (D. Mass.).  And in *PFP v. Clyde's Chicken King*, No. 6:24-cv-00351 (W.D. La.).  Most recently, PFP dismissed with prejudice after defendant moved for summary judgment.  *See* Levy Third Aff. ¶ 49 (providing links to the dockets).  Similarly, here, PFP sued a business motivated to fight the case on the merits rather than acceding to a settlement on PFP's terms.  PFP's run of luck in choosing defendants has run out.

Moreover, counsel for Pool World repeatedly told counsel for PFP, as early as October 2023, that Pool World chose not to refer this case to its insurance carrier because it was unwilling to have a strike settlement paid in its name, but wanted to stand up for itself and other small businesses to put a halt to PFP's unethical business tactics; that Pool World intended to litigate this case to judgment, and on appeal if need be; and that the only way for PFP to end the case without a litigated judgment would be to dismiss with prejudice and risk the filing of a motion for an award of attorney fees.  Instead of dismissing immediately, PFP continued to litigate, imposing on Pool World the time and expense of taking discovery, investigating the case, responding to discovery, preparing discovery motions, retaining expert witnesses, and otherwise preparing for summary judgment and trial.

Then, in February, faced with discovery that threatened to expose the reality of its subscriptions, PFP put this case on hold by invoking mediation, with its counsel representing that a mediator's candid assessment might produce a settlement.  Pool World took the mediation process seriously, producing a lengthy offer of settlement (including a statement of reasons that explained to PFP why Pool World expected to prevail in the litigation), and a lengthy legal memorandum for Judge Goeke supported by detailed evidence, so that Judge Goeke could, in the words of PFP counsel Daniel DeSouza, give PFP a realistic assessment of its prospects in this litigation.  At the same time, during the six-month stay that PFP obtained for the duration of the mediation, and the additional stay obtained by moving for dismissal without prejudice, PFP has continued to file lawsuits and send demand letters to extract strike settlements from small businesses.  Levy Third Aff. ¶ 38 and Exh. W.  All of this maneuvering has cost Pool World time and money (most of which would not qualify as taxable costs, so PFP's willingness to pay taxable costs is cold comfort), and has disrupted it from focusing on its business.  The explicit threat to force targets "to spend the resources to see how a judge/jury would rule," Exhibit W at 170 (third page of 8/26/24 email from Meghan Medacier), is part of the way PFP coerces its targets into paying unjustified settlements.  It would not be equitable to reward this conduct by granting PFP dismissal without prejudice.

Finally, PFP argues that Pool World's interest in pursuing its claim for attorney

fees should be given no weight because its counsel have done this case pro bono, making their compensation contingent on an award of attorney fees. As explained above, in Part A, a voluntary dismissal without prejudice that would preclude Pool World from seeking an award of attorney fees would cause Pool World legal prejudice. *See* supra Part A. But Pool World's inability to pursue a fee award if PFP's motion is granted is at least an equitable factor that tilts against an exercise of discretion in PFP's favor. Ninth Circuit law allows the award of attorney fees for pro bono litigation, *Dennis v. Chang*, 611 F.2d 1302, 1307 (9th Cir. 1980), *see also Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1521–1524 (D.C. Cir. 1988) (en banc) (recognizing the need for market-rate attorney fee awards to attract competent counsel to handle complex cases), and absent insurance coverage, given how expensive copyright litigation is, Levy First Aff. ¶ 26 and Exh. J, contingent fees are the only way that a small business can afford to defend a case of this sort.

Indeed, although PFP's arrangements with its lawyers are not in the record, CopyCat Legal's website tells prospective clients that the firm charges "no fees unless we win." https://www.copycatlegal.com/. This implies that PFP employs CopyCat Legal on a contingent-fee basis. When PFP secures a default judgment, it routinely seeks an award of attorney fees, submitting an affidavit that does not represent that PFP actually paid CopyCat Legal for its services. *See*, *e.g.*, *Prepared Food Photos v. AM, Inc.*, No. 1:23-cv-00931 (D. Colo.), DN 19-2, Declaration of

Daniel DeSouza. Just as PFP has an interest in having its counsel paid by seeking an award of attorney fees, so too can Pool World vindicate its own interests by securing status as a prevailing party so that it can move for an award of attorney fees. The attached affidavit of Pat Flynn shows why Pool World chose to defend this case and how its interests would be harmed by granting dismissal.

In sum, the Court should exercise its equitable discretion to deny the motion to dismiss without prejudice. PFP should be given fifteen days to dismiss with prejudice, or in the alternative, to meet and confer with Pool World about a proposed new schedule for the litigation. Pool World also intends to ask the Court for a discovery conference about the discovery dispute that was postponed by the stay.

## CONCLUSION

The motion to dismiss without prejudice should be denied.

Respectfully submitted,

/s/   Paul Alan Levy
Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

/s/ Stephen Kirby
Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe St.
Spokane, Washington 99201
(509) 795-4863
kirby@kirbylawoffice.com

/s/ Phillip R. Malone
Phillip R. Malone (pro hac vice)
Juelsgaard Intellectual Property
 and Innovation Clinic
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
(650) 724-1900
pmalone@stanford.edu

Attorneys for Defendant

August 30, 2024

Refiled with corrected exhibits September 4, 2024

## CERTIFICATE OF SERVICE

I hereby certify that, on this 4th day of September, 2024, I am refiling this opposition to dismissal without prejudice with the attached affirmations and corrected exhibits by the Court's ECF system, which will effect service on counsel for plaintiff, Max Archer and Lauren Hausman. Only the contents of Exhibits Y and Z, with one page added to each, the page number shown for Exhibit Z in the index of exhibits, the date on the final page of the motion, and this certificate of service, have been changed from the papers e-filed on August 30, 2024.

Paul Alan Levy

/s/   Paul Alan Levy
Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

September 4, 2024