# Exhibit M

1 | Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
2 | 1600 20th Street NW
Washington, D.C. 20009
3 | (202) 588-7725
plevy@citizen.org
4 |
Stephen Kirby
5 | Kirby Law Office, PLLC
WSBA #43228
6 | 1312 N. Monroe St.
Spokane, WA 99201
7 | (509) 795 4863
kirby@kirbylawoffice.com
8 |
UNITED STATES DISTRICT COURT
9 | FOR THE EASTERN DISTRICT OF WASHINGTON

10 | PREPARED FOOD PHOTOS, INC.,
   | f/k/a  ADLIFE MARKETING
11 | & COMMUNICATIONS CO., INC.,          )
   | a  Florida for profit corporation,    )          No. 2:23-cv-00160-TOR
12 |                                        )
   |              Plaintiff,                )          **DEFENDANT'S ANSWERS**
13 |                                        )          **TO INTERROGATORIES**
   |        v.                              )          **FROM PLAINTIFF**
14 |                                        )
   | POOL WORLD, INC., a Washington for    )
15 | profit corporation,                   )
   |                                        )
16 |              Defendant.                )

17 |        Pursuant to the instructions and limitations set forth in Amended Interrogatories

18 | received from Plaintiff, Pool World, Inc. answers as follows:

19 |        1.      Please state the name, address and telephone number of any person preparing

20 | or aiding in the preparation of the answers to these Interrogatories.

21 | **ANSWER**

22 | The answers were prepared by Pat Flynn, defendant's business manager, and counsel Paul

23 | Alan Levy, Stephen Kirby and Nick Sansone, consulting with and plumbing the

24 | recollections of Grady Early, defendant's owner, Dan Meacham, defendant's sales manager,

25 | and  Elisha Heinje, defendant's current marketing employee. Because the staff and owners

26 | of Pool World , Inc. ("Pool World") can be reached through counsel, their addresses and

27 | telephone numbers are not being supplied.

28 |        2.      Identify each and every commercial use of the Work by Defendant and, if such

use involves publishing or displaying the Work on the Website(s), the Facebook Page, and/or any other social media page owned by Defendant, identify each sub-page thereof on which the Work was published and/or displayed.

**ANSWER**

Assuming that the left-hand side of the composite image identified in Defendant's complaint ¶ 16 (cited in the following answers as "the Composite Image") is a copy of the Work, the home page of poolworld-grillworld.com is the only web page or social media page owned by defendant where the Work appears.

3.    Identify all websites and/or social media pages owned and/or controlled by Defendant (including any websites and/or social media pages Defendant has disabled, discontinued, and/or removed from public view).

**ANSWER**

Defendant owns or controls the following websites and social media pages:

CDAHotTubs.com
PoolsSpokane.com
PoolWorld.biz
PoolWorld-Commercial.com
PoolWorld-Community.com
PoolWorld-GrillWorld.com
PoolWorld-Testimonials.com
PoolWorld-WaterCare.com
SaunaCDA.com
SaunaSpokane.com
SpokaneHotTubs.com
https://poolworld.biz/blog/
https://www.facebook.com/PoolWorldInc
https://www.instagram.com/PoolWorldInc
https://www.youtube.com/@PoolWorldVideos
https://twitter.com/PoolWorldInc
https://www.pinterest.com/poolworld/
In addition, Pool World has "claimed" the following pages on Yelp.com, which gives Pool World some control over small portions of those pages
https://www.yelp.com/biz/pool-world-spokane-valley-2
https://www.yelp.com/biz/pool-world-spokane-2
https://www.yelp.com/biz/pool-world-spokane
https://www.yelp.com/biz/pool-world-coeur-d-alene
Pool World owns several domain names that do not have separate web sites, but that resolve to some of the websites identified above.

4.    Identify each member, shareholder, director, and/or manager of Defendant and,

1  for each such person, identify all business entities that such person is currently a member

2  or shareholder.

3  **ANSWER**

4  At the current time, Pool World is owned by Grady Early and Lyla Henderson. Pat Flynn

5  is Pool World's business manager; Dan Meacham is Pool World's sales manager.

6  5.      Describe the ownership structure of Defendant from September 16, 2022 through the

7  date your responses to these requests are served, including but not limited to any sale of the

8  assets and/or stock of Defendant and/or any change of ownership of Defendant.

9  **ANSWER:**

10  Throughout that period, Pool World has been owned by Grady Early and Lyla Henderson.

11  There has been no sale of the assets and/or stock of Defendant and/or any change of

12  ownership of Defendant since September 16. 2022.

13  6.      Prior to September 16, 2022, did Defendant license or purchase any photograph

14  published and/or displayed on any page of the Website(s), the Facebook Page, and/or any

15  other social media page owned by Defendant? If yes: (a) identify all persons or entities from

16  which Defendant purchased or licensed such photograph(s) and (b) identify the amount of

17  any monies paid with respect to such purchases or licenses.

18  **ANSWER:**

19  Over the years, Pool World purchased clipart on floppy disks and CDs, and prepackaged

20  license packs, for use in its advertising, including its early websites. In addition, pursuant

21  to agreements (which provide for payments by Pool World for the goods provided from

22  various vendors and their distributors), Pool World has been given access to online sites

23  containing images, including photographs, that could be used to advertise the goods being

24  purchased from those vendors for sale to the public, including on Pool World's various

25  websites (a term that for these purposes includes web pages on social media platforms). In

26  this regard, the license to make use of the images was compensated as part of the overall

27  commercial relationship with the vendors. For the past few years, Pool World has belonged

28  to Pexels, which makes images available for free use. Before Pexels, Pool World used a

---

different free stock site, whose name Pool World staff cannot recall.

7.    Following September 16, 2022, did Defendant remove any photograph from public display on the Website(s), the Facebook Page, and/or any other social media page owned by Defendant (other than the Work)? If yes, then for each such photograph that was removed: (a) identify the photograph; (b) identify the sub-page on the Website(s)/social media page such photograph previously appeared; and (c) describe in detail the reason(s) why such photograph was removed from public display.

**ANSWER**

After receiving plaintiff's demand letter, Pool World removed the Composite Image, which contains two separate photographs, because Pool World could not readily locate documentation of the sourcing for that image, and Pool World preferred to avoid the trouble and expense of litigating plaintiff's' allegation of infringement; Pool World hoped and expected that removal of the composite image might be enough to avoid the potential controversy.  Several months later, Pool World undertook a self-audit of the images still visible on its various websites, for the purpose of identifying any images whose sourcing could not be readily verified; rather than facing further threats over images, especially images that did not play a significant role in promoting Pool World's business, Pool World removed more images.  Pursuant to that audit, for example, Pool World removed four photographs from https://poolworld-grillworld.com/Great%20Grilling%20Recipes.htm: photos of a grilled veggie sandwich, of marinated grilled shrimp, and of BBQ ribs, as well as an image of Papa Murphy's grilled pizza Instructions.  Grilling vendors commonly have web pages listing recipes that can be prepared on a grill, along with photos of the dishes. Pool World assumed that this is how it acquired those photos, but it could not locate documentation, so it removed the photos to limit the risk of having to defend future copyright claims such as the one that it is currently having to defend.  The very limited commercial value of leaving the photos on those pages was simply not worth the risk, and Pool World we could not count on receiving pro bono legal help in such cases as it has in this case.

For similar reasons, Pool World removed a photo of Emily Schreiber swimming for Cystic Fibrosis from http://poolworld-community.com/Splash%20for%20CF.htm, which describes Pool World's support for the fight against cystic fibrosis; a photo of four golden retrievers on a http://poolworld-community.com/Spokane%20Humane%20Society.htm, a page about Pool World support for the Humane Society; and a picture of the world with feet on it from https://poolworld-grillworld.com/Traeger%20Environmental.htm

In the course of its audit, Pool World research also found some outdated sections on two websites and deleted some pages entirely. It deleted the entirety of its page on Toys for Tots under its Poolworld-Community site because Pool World is no longer involved with that program. The only image on that page was the Toys for Tots logo. It also deleted the entirety of a page on Embassy Pools at the Poolworld-Commercial website. Pool World no longer carries that brand. The pool design images on that site were Pool World's own designs.

8.    Identify each and every sub-page of the Website(s), the Facebook Page, and/or any other social media page owned by Defendant on which the Work was published and/or displayed.

**ANSWER**

Pool World objects to this interrogatory because, as phrased, it implies that published and/or displayed the Work itself, and that it published and/or displayed the Work on Facebook or any other social media page. Pool World never posted the Work alone, only the Composite Image. The only place where the Composite Image was published and/or displayed was poolworld-grillworld.com. It published and displayed the Composite Image there in 2010; that page remained entirely unchanged in the ensuing years, with the image remaining visible there, until it was removed in 2022.

9.    Describe in detail how it is that the Work came to be published and/or displayed on the Website(s), the Facebook Page, and/or any other social media page owned by Defendant. Your response should include, but not be limited to: (a) an identification of the first date on which the Work was published or displayed thereon; (b) an identification

1   of what person(s) participated in the publishing or display of the Work thereon; and (c) an
2   identification and description of the source from which the Work was found.
3   **ANSWER**
4   Pool World objects to this interrogatory because, as phrased, it implies that published and/or
5   displayed the Work itself, and that it published and/or displayed the Work on Facebook or
6   any other social media page. Pool World never posted the Work alone, only the Composite
7   Image. The only place where the Composite Image was ever posted was poolworld-
8   grillworld.com.
9   Subject to that objection, because Pool World acquired the Composite Image at least thirteen
10  years ago, because it was acquired by Macy Franklin an employee who has not worked at
11  Pool World for many years, and because Pool World never had any reason to retain
12  documentation of its acquisition process, the account of how that image was acquired is
13  necessarily fragmentary, but what follows is its best estimate: Pool World's vendors and
14  their distributors have given Pool World access to online sites containing images, including
15  photographs, that could be used to advertise the goods being purchased from those vendors
16  for sale to the public, including on Pool World's various websites (a term that for these
17  purposes includes web pages on social media platforms). Macy Franklin, its marketing
18  person in 2010, under the guidance and direction of Pat Flynn, was the individual tasked
19  with completing Pool World's websites, which included the selection of any logos,
20  photographs and artwork. It has been Pool World's standard practice to use photos it obtains
21  from its many vendors or distributors that give Pool World the right to use the photos to
22  market and promote their products. The poolworld-grillworld.com website was and is grill
23  / BBQ specific. In 2010, Pool World was an authorized dealer for Weber and Traeger, and
24  looked to them for logos, photographs and artwork we would utilize to create the
25  poolworld-grillworld.com website. The Traeger brand has grown substantially, but in 2010
26  was not as well-known and did not have a large marketing resource library to utilize. Weber
27  has been for decades a well established brand, and there was at the time a reasonably-sized
28  marketing resource library available to its Weber's authorized dealers through its regional

1  distributors. Because the composite image retained on Pool World's files is labeled Weber-
2  shrimp.jpg (reflecting the content on one side of the Composite Image), because the same
3  Composite Image was visible on the website of a different company selling grills (including
4  Webers), and because Pool World's agreements with Weber have required Pool World to
5  use images approved by Weber, it is most likely that the image was acquired from a set of
6  images made available to Pool World to promote the sale of Weber grills.  Although it does
7  not appear that the image was acquired directly from Weber, it is most likely that it was
8  acquired from one of the several distributors of Weber products with which Pool World has
9  done business over the years.  Pool World does not know which one.

10      10.     Do you contend that Defendant was authorized and/or licensed to display the
11  Work on the Website(s), the Facebook Page, and/or any other social media page owned by
12  Defendant?  If yes, describe in detail the factual basis for such contention.

13  **ANSWER:**

14  Pool World objects to this interrogatory because, as phrased, it implies that published and/or
15  displayed the Work itself, and that it published and/or displayed the Work on Facebook or
16  any other social media page.  Pool World never posted the Work alone, only the Composite
17  Image.  The only place where the Composite Image was ever posted was poolworld-
18  grillworld.com.

19  Subject to that objection: Yes, to the best of Pool World's knowledge. As explained above,
20  pursuant to agreements with various vendors and their distributors, providing goods for
21  which Pool World was paying, Pool World has been given access to online sites containing
22  images, including photographs, that could be used to advertise the goods being purchased
23  from those vendors for sale to the public, including on Pool World's various websites (a
24  term that for these purposes includes web pages on social media platforms).  Because the
25  composite image retained on Pool World's files is labeled Weber-shrimp.jpg (reflecting the
26  content on one side of the Composite Image), because the same Composite Image was
27  visible on the website of a different company selling grills (including Webers), and because
28  Pool World's agreement with Weber has required Pool World to use images approved by

Weber, it is most likely that the image was acquired from a set of images made available to Pool World among other grill sellers to promote the sale of Weber grills. Pool World is aware that, in 2010, AdLife Marketing and Communications was making its photos available for licensing on iStock, and Pool World also knows that the Work was visible on several web sites, sometimes credited to iStock and AdLife. And Pool World understands that the licenses sold by iStock allowed use indefinitely into the future, and allowed use on a licensee's multiple projects and multiple clients. So Pool World assumed at the time, and still believes, that whoever it is that created the Composite Image had secured an appropriate license from stock photo sources for each part of the Composite Image, and that this license was sufficient to support Pool World's use. Pool World continues to investigate this matter and may supplement this answer based on further discovery.

11.    Has Defendant received any other notice of copyright infringement or letter alleging infringement with respect to any photograph? If yes: (a) identify the date of such notice/letter; (b) identify the person or entity from which such notice/letter was sent; and (c) describe the subject matter of such notice/letter.

**ANSWER**

No.

12.    Prior to September 16, 2022, did Defendant license or purchase any photograph displayed on the Website(s), the Facebook Page, and/or any other social media page owned by Defendant? If yes: (a) identify all persons or entities from which Defendant purchased or licensed such photograph(s) and (b) identify the amount of any monies paid with respect to such purchases or licenses.

**ANSWER:**

Yes. Outside the date range specified by the instructions, Pool World purchased clipart on floppy disks and CDs, and prepackaged license packs, for use in its advertising, including its early websites. Within that date range: pursuant to agreements with various vendors and their distributors, for the provision of goods for which Pool World was paying, Pool World has been given access to online sites containing images, including photographs,

1  that could be used to advertise the goods being purchased from those vendors for sale to the
2  public, including on Pool World's various websites (a term that for these purposes includes
3  web pages on social media platforms). These vendors have included Weber Grills, Traeger
4  Grills, Big Green Egg Grills, Louisiana Grills, Doughboy Pools, Kona Pools, Finnleo Sauna,
5  Hot Spring Spas, Caldera Spas, Free Flow Spas, and many other vendors. A complete list
6  of vendors and their addresses will be supplied if requested. No money was paid directly
7  for the use of the images; but the cost of the images was part of the overall package of
8  payments made to the vendors and distributors.
9  For the past few years, Pool World has belonged to Pexels, which makes images available
10 for free use. Before Pexels, Pool World used a different free stock site, whose name Pool
11 World staff cannot recall.

12      13.    Describe in detail all policies, procedures, terms, and/or conditions
13 implemented by Defendant at the time the Work was published or displayed on the
14 Website(s), the Facebook Page, and/or any other social media page owned by Defendant
15 with respect to intellectual property and/or ensuring that photographs published or displayed
16 on the Website(s), the Facebook Page, and/or any other social media page owned by
17 Defendant were properly licensed.

18 **ANSWER**
19 Both at the time Pool World created the poolworld-grillworld.com web site, and ever since,
20 Pool World has consistently maintained a standard policy and practice to use photos it
21 obtains from its many vendors that give it the right to use the photos to market and promote
22 their products, as specified in Pool World's agreements with them as their dealers. Indeed,
23 as with its agreement with Weber, Pool World's agreements with many of its vendors
24 require Pool World to use images that they approve, and Pool World is required by some
25 agreements to identify its websites so that the vendors can check to make sure that such
26 requirements are being followed. Typical agreements are being produced (the agreement
27 with Weber is marked confidential but Pool World is seeking permission to disclose it).
28 The Pexels web site includes an assurance that Pexels has verified that photos that it

provides are properly licensed. https://www.pexels.com/about/.

14.     Describe in detail all factual support for Defendant's contention, set forth in its First Affirmative Defense, that "Plaintiff's claims fare barred by the statute of limitations."

**ANSWER**

Assuming that Interrogatory meant "are" and not "fare," the Interrogatory accurately portrays Pool World's defense. There are several clusters of fact that support this defense. First, the Composite Image was placed on the website in September 2010, and remained there unchanged until it was removed last year. PoolWorld did not commit any allegedly infringing acts in between those two times.

Second, it is apparent that plaintiff has been conducting reverse image searches since early 2017 for the purpose of enabling claims for copyright claims, either by demand letter or by litigation. Reverse image search technology has been available since before the Composite Image was posted to poolworld-grillworld.com. Plaintiff's written discovery responses reveal that although it claims to have conducted searches for the Work on several occasions before the June 2022 search that located the Composite Image on poolworld-grillworld.com, it has not documented those searches and cannot specify either the dates of those searches, nor the names of the searchers, or anything else about those searches. And in recent years, at least, it has been assigning its own staff to conduct image searches, rather than retaining one of the several commercial services that use sophisticated software and artificial intelligence to locate uses of any photos, even with a large database of images, for monthly fees that are highly affordable considering the amount of damages plaintiff is claiming should be awarded in each such case. Defendant was able to identify several web pages where the Work (or the Composite Image) has been displayed, yet plaintiff apparently never found them. Indeed, the Work is currently displayed on some pages that Defendant was able to find with a simple search. There is no reason why plaintiff should not have located Pool World's allegedly infringing use many years ago. Similarly, plaintiff has been known to claim, in demand letters sent many years apart, that it newly discovered infringement of the same photographs, even alleged infringements that have been online for many years; this

calls into question how thorough each search is. Defendant has outstanding discovery addressed to this issue, some of which plaintiff has refused to answer on relevance grounds. Defendant reserves the possibility of moving to compel responses.

Third, several facts support defendant's contention that it would be inequitable to allow Plaintiff to invoke the discovery rule. The employee who secured the Composite Image in 2010 has not worked for Pool World for many years, and does not remember exactly where she got it; and given the passage of time. Pool World has not retained documents that could have enabled it to be more specific. Indeed, plaintiff itself has not retained many of the documents that might have been relevant to this case. Moreover, the demand letter sent to Pool World, like many other demand letters sent to other targets, is replete with exaggerated, deceptive and even deliberately false assertions, that are likely intended to coerce targets into making unjustified settlement payments, and deliberately take advantage of the likely ignorance of small business owners and of the high cost of hiring copyright counsel and litigating an infringement action. Indeed, the demand letter and this litigation are part and parcel of a campaign of copyright trolling, which appears to be the plaintiff's main business and main source of income. Defendant has outstanding discovery addressed to this issue.

Fourth, it is well-known (indeed, PFP has confirmed in its papers) that PFP is a "seasoned litigator" of copyright claims.

Fifth, the poolworld-grillworld.com website was created in 2010 and not materially changed until 2022, when Pool World removed the Composite Image.

Pool World intends to advance other arguments about the statute of limitations based on legal arguments, not specific facts subject to disclosure in response to this Interrogatory.

15.   Describe in detail all factual support for Defendant's contention, set forth in its Second Affirmative Defense, that "defendant had permission to use the Work by way of a license from a stock photo service."

**ANSWER**

As explained above in response to Interrogatories 9 and 10, Pool World never posted the Work alone, only the Composite Image. Because Pool World acquired the Composite

Image at least thirteen years ago, because it was acquired by Macy Franklin, an employee who has not worked at Pool World for many years, and because Pool World never had any reason to retain documentation of its acquisition process, the account of how that image was acquired is necessarily fragmentary, but what follows is its best estimate:

Pool World has been given access to online sites containing images, including photographs, that could be used to advertise the goods being purchased from those vendors for sale to the public, including on Pool World's various websites (a term that for these purposes includes web pages on social media platforms). In fact, in it business, Pool World's vendors expect it to use their images to promote sales of their goods. Macy Franklin, Pool World marketing person in 2010, under the guidance and direction of Pat Flynn, was the individual tasked with completing Pool World's websites, which included the selection of any logos, photographs and artwork. It had been and still is Pool World's standard practice to use photos it obtains from its many vendors or distributors that give Pool World the right to use the photos to market and promote their products.

The poolworld-grillworld.com website was and is grill / BBQ specific. In 2010, Pool World was an authorized dealer for Weber and Traeger, and looked to them for logos, photographs and artwork it would utilize to create the poolworld-grillworld.com website. The Traeger brand has grown substantially, but in 2010 was not as well known and did not have a large marketing resource library to utilize. Weber has been for decades a well-established brand, and there was at the time a reasonably-sized marketing resource library available to Weber's authorized dealers through its regional distributors. Because the composite image retained on Pool World's files is labeled Weber-shrimp.jpg (reflecting the content on one side of the Composite Image), because the same Composite Image was visible on the website of a different company selling grills, including Webers, and because Pool World's agreement with Weber has required Pool World to use images approved by Weber, it is most likely that the image was acquired

1 from a set of images made available to Pool World to promote the sale of Weber grills.
2 Although it does not appear that the image was acquired directly from Weber, it is most
3 likely that it was acquired from one of the several distributors of Weber products with
4 which Pool World has done business. Pool World does not know which one. Pool
5 World posted the Composite Image on the assumption that the vendor from which the
6 image was acquired had permission to use the image.
7 Moreover, Pool World is aware that, in 2010, AdLife Marketing and Communications
8 was making its photos available for licensing on iStock, and Pool World also knows that
9 the Work has been visible on several web sites, sometimes credited to iStock and
10 AdLife. It is apparent, therefore, that licenses to use the work have been sold to
11 unknown persons. Moreover, at least one other company selling grills (including
12 Webers) formerly had the same Composite Image on its website in 2010. Additionally,
13 Pool World understands that the licenses sold by iStock allowed use indefinitely into the
14 future, and allowed use on a licensee's multiple projects and multiple clients. So Pool
15 World assumed at the time, and still believes, that whoever it is that created the
16 Composite Image likely secured an appropriate license from stock photo sources for each
17 part of the composite image, and that this license was sufficient to support Pool World's
18 use.
19 In the final analysis, considering the plentiful resources to which Pool World's vendors
20 give it access for the purpose of promoting sales of their products, thus giving Pool
21 World many options of available photographs, there would have been no need for Pool
22 World to look anyplace else on the internet to find a suitable photo for its new website
23 about the grilling side of its business. Indeed, it would have been inefficient for Pool
24 World staff to go roaming the web looking for other images to use on a small satellite
25 site. And considering that nothing has changed between 2010 and 2023 in regards to
26 Pool World's practice to use photos it obtains from its many vendors, it is simply
27 unlikely that Pool World would have done an internet search to find a possibly infringing
28 image. Plaintiff's predecessor deliberately entered into a relationship with iStock that

1   allowed its photos to be licensed without iStock providing plaintiff with any information
2   about who got those licenses. If no documentation exists because of the passage of time,
3   it is plaintiff rather than defendant that ought to bear the consequences of the
4   uncertainty.

**VERIFICATION**

6       I, Pat Flynn, the business manager of defendant Pool World, Inc. have reviewed
7   the foregoing answers to Interrogatories, and I affirm under penalty of perjury that the
8   facts stated are true to the best of my knowledge, information and belief. I concur in the
9   legal statements prepared by Pool World's counsel.
10  Executed on November 28, 2023.

                        Paul Alan Levy
                        Paul Alan Levy (pro hac vice)
                        Public Citizen Litigation Group
                        1600 20th Street NW
                        Washington, D.C. 20009
                        (202) 588-7725
                        plevy@citizen.org

                        /s/ Stephen Kirby
                        Stephen Kirby
                        Kirby Law Office, PLLC
                        WSBA #43228
                        1312 N. Monroe St.
                        Spokane, WA 99201
                        (509) 795 4863
                        kirby@kirbylawoffice.com

                        Attorneys for Defendant

23  November 28, 2023

## CERTIFICATE OF SERVICE

1

2     I hereby certify that, on this 28th day of November, 2023, I am serving these

3   Answers to Interrogatories on counsel for plaintiff Max Archer and Lauren Hausman at

4   their email addresses, mka@riverside-law.com and lauren@copycatlegal.com.

5

6                                        /s/   Paul Alan Levy
                                       Paul Alan Levy (pro hac vice)
7                                      Public Citizen Litigation Group
                                       1600 20th Street NW
8                                      Washington, D.C. 20009
                                       (202) 588-7725
9                                      plevy@citizen.org

10

11   November 28, 2023

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

1 | Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
2 | 1600 20th Street NW
Washington, D.C. 20009
3 | (202) 588-7725
plevy@citizen.org

4 | Stephen Kirby
5 | Kirby Law Office, PLLC
WSBA #43228
6 | 1312 N. Monroe St.
Spokane, WA 99201
7 | (509) 795 4863
kirby@kirbylawoffice.com

8 | UNITED STATES DISTRICT COURT
9 | FOR THE EASTERN DISTRICT OF WASHINGTON

10 | PREPARED FOOD PHOTOS, INC.,
f/k/a ADLIFE MARKETING
11 | & COMMUNICATIONS CO., INC.,
a Florida for profit corporation,                    No. 2:23-cv-00160-TOR

12 |           Plaintiff,         **DEFENDANT'S RESPONSES
13 |                                                   TO ADMISSION REQUESTS
        v.                                 FROM PLAINTIFF**

14 | POOL WORLD, INC., a Washington for
15 | profit corporation,

16 |           Defendant.

17      Pursuant to the instructions and limitations set forth in Amended Requests for

18 Admission received from Plaintiff, Pool World, Inc. responds as follows:

19     1.    Admit that the Website(s) are owned by Defendant.

20 **RESPONSE**

21 Defendant objects that this request for admission is circular, considering that the term

22 "Website(s)" is defined as all "websites owned and/or controlled by Defendant." Subject

23 to that objection, it is admitted defendant owns all websites that it owns and/or controls, and

24 specifically that it owns the specific websites identified in the definition, the sites posted at

25 the URL's https://poolworld.biz/ and https://poolworld-grillworld.com/.

26     2.    Admit that the Facebook Page is owned and/or controlled by Defendant.

27 **RESPONSE:**

28 Admitted

---

Defendant's Responses to Plaintiff's Requests for Admission               Case No. 2::23-cv-00160-TOR

3.    Admit that, from at least January 1, 2022 - September 16, 2022, the Work was published and/or displayed on the Website(s) in such manner that it was viewable to the public at large.

**RESPONSE:**

Defendant objects to this request on the ground that "publish" and "display" are terms of art in copyright law. Subject to that objection, defendant denies that the Work was published or displayed in the sense defined by copyright law at any time during this period. Defendant also denies that the Work was ever published or displayed in any sense of those terms on any "Website(s)" other than https://poolworld-grillworld.com/. Defendant admits that, after it placed on https://poolworld-grillworld.com/ the Composite Image identified in ¶ 16 of the Complaint, which plaintiff contends includes the Work, that web page remained online unchanged, and that image continued to be visible there through the time period specified. Whether that continued visibility entailed a volitional act of publication or display in 2022 may be a contested legal issue in the case.

4.    Admit that, from at least January 1, 2021 - December 31, 2021, the Work was published and/or displayed on the Website(s) in such manner that it was viewable to the public at large.

**RESPONSE:**

Defendant objects to this request on the ground that "publish" and "display" are terms of art in copyright law. Subject to that objection, defendant denies that the Work was published or displayed in the sense defined by copyright law at any time during this period. Defendant also denies that the Work was ever published or displayed in any sense of those terms on any "Website(s)" other than https://poolworld-grillworld.com/. Defendant admits that, after it placed on https://poolworld-grillworld.com/ the Composite Image identified in ¶ 16 of the Complaint, which plaintiff contends includes the Work, that image continued to be visible there through the time period specified. Whether that continued visibility entailed a volitional act of publication or display in 2021 may be a contested legal issue in the case.

5.    Admit that, from at least January 1, 2020 - December 31, 2020, the Work was

published and/or displayed on the Website(s) in such manner that it was viewable to the public at large.

**RESPONSE:**

Defendant objects to this request on the ground that "publish" and "display" are terms of art in copyright law. Subject to that objection, defendant denies that the Work was published or displayed in the sense defined by copyright law at any time during this period. Defendant also denies that the Work was ever published or displayed in any sense of those terms on any "Website(s)" other than https://poolworld-grillworld.com/. Defendant admits that, after it placed on https://poolworld-grillworld.com/ the Composite Image identified in ¶ 16 of the Complaint, which plaintiff contends includes the Work, that web page remained online unchanged, and that image continued to be visible there through the time period specified. Whether that continued visibility entailed a volitional act of publication or display in 2020 may be a contested legal issue in the case. .

6.    Admit that, from at least January 1, 2019 - December 31, 2019, the Work was published and/or displayed on the Website(s) in such manner that it was viewable to the public at large.

**RESPONSE:** Defendant objects to this request on the ground that "publish" and "display" are terms of art in copyright law. Subject to that objection, defendant denies that the Work was published or displayed in the sense defined by copyright law at any time during this period. Defendant also denies that the Work was ever published or displayed in any sense of those terms on any "Website(s)" other than https://poolworld-grillworld.com/. Defendant admits that, after it placed on https://poolworld-grillworld.com/ the Composite Image identified in ¶ 16 of the Complaint, which plaintiff contends includes the Work, that web page remained online unchanged, and that image continued to be visible there through the time period specified. Whether that continued visibility entailed a volitional act of publication or display in 2019 may be a contested legal issue in the case.

7.    Admit that, from at least January 1, 2018 - December 31, 2018, the Work was published and/or displayed on the Website(s) in such manner that it was viewable to the

1  public at large.

2  **RESPONSE:** Defendant objects to this request on the ground that "publish" and "display"
3  are terms of art in copyright law. Subject to that objection, defendant denies that the Work
4  was published or displayed in the sense defined by copyright law at any time during this
5  period. Defendant also denies that the Work was ever published or displayed in any sense
6  of those terms on any "Website(s)" other than https://poolworld-grillworld.com/. Defendant
7  admits that, after it placed on https://poolworld-grillworld.com/ the Composite Image
8  identified in ¶ 16 of the Complaint, which plaintiff contends includes the Work, that web
9  page remained online unchanged, and that image continued to be visible there through the
10 time period specified. Whether that continued visibility entailed a volitional act of
11 publication or display in 2018 may be is a contested legal issue in the case.

12      8.      Admit that, from at least January 1, 2017 - December 31, 2017, the Work was
13 published and/or displayed on the Website(s) in such manner that it was viewable to the
14 public at large.

15 **RESPONSE:** Defendant objects to this request on the ground that "publish" and "display"
16 are terms of art in copyright law. Subject to that objection, defendant denies that the Work
17 was published or displayed in the sense defined by copyright law at any time during this
18 period. Defendant also denies that the Work was ever published or displayed in any sense
19 of those terms on any "Website(s)" other than https://poolworld-grillworld.com/. Defendant
20 admits that, after it placed on https://poolworld-grillworld.com/ the Composite Image
21 identified in ¶ 16 of the Complaint, which plaintiff contends includes the Work, that web
22 page remained online unchanged, and that image continued to be visible there through the
23 time period specified. Whether that continued visibility entailed a volitional act of
24 publication or display in 2017 may be a contested legal issue in the case.

25      9.      Admit that, from at least April 11, 2016 - December 31, 2016, the Work was
26 published and/or displayed on the Website(s) in such manner that it was viewable to the
27 public at large.

28 **RESPONSE:** Defendant objects to this request on the ground that "publish" and "display"

---

1    are terms of art in copyright law. Subject to that objection, defendant denies that the Work

2    was published or displayed in the sense defined by copyright law at any time during this

3    period. Defendant also denies that the Work was ever published or displayed in any sense

4    of those terms on any "Website(s)" other than https://poolworld-grillworld.com/. Defendant

5    admits that, after it placed on https://poolworld-grillworld.com/ the Composite Image

6    identified in ¶ 16 of the Complaint, which plaintiff contends includes the Work, that web

7    page remained online unchanged, and that image continued to be visible there through the

8    time period specified.    Whether that continued visibility entailed a volitional act of

9    publication or display in 2016 may be a contested legal issue in the case.

10          10.    Admit that, from at least April 11, 2015 - December 31, 2015, the Work was

11   published and/or displayed on the Website(s) in such manner that it was viewable to the

12   public at large.

13   **RESPONSE:** Defendant objects to this request on the ground that "publish" and "display"

14   are terms of art in copyright law. Subject to that objection, defendant denies that the Work

15   was published or displayed in the sense defined by copyright law at any time during this

16   period. Defendant also denies that the Work was ever published or displayed in any sense

17   of those terms on any "Website(s)" other than https://poolworld-grillworld.com/. Defendant

18   admits that, after it placed on https://poolworld-grillworld.com/ the Composite Image

19   identified in ¶ 16 of the Complaint, which plaintiff contends includes the Work, that web

20   page remained online unchanged, and that image continued to be visible there through the

21   time period specified.    Whether that continued visibility entailed a volitional act of

22   publication or display in 2015 may be a contested legal issue in the case.

23          11.    Admit that, from at least April 11, 2014 - December 31, 2014, the Work was

24   published and/or displayed on the Website(s) in such manner that it was viewable to the

25   public at large.

26   **RESPONSE:** Defendant objects to this request on the ground that "publish" and "display"

27   are terms of art in copyright law. Subject to that objection, defendant denies that the Work

28   was published or displayed in the sense defined by copyright law at any time during this

---

Defendant's Responses to Plaintiff's Requests for Admission      -5-      Case No. 2::23-cv-00160-TOR

period.  Defendant also denies that the Work was ever published or displayed in any sense of those terms on any "Website(s)" other than https://poolworld-grillworld.com/. Defendant admits that, after it placed on https://poolworld-grillworld.com/ the Composite Image identified in ¶ 16 of the Complaint, which plaintiff contends includes the Work, that web page remained online unchanged, and that image continued to be visible there through the time period specified.  Whether that continued visibility entailed a volitional act of publication or display in 2014 may be a contested legal issue in the case.

12.    Admit that, from at least April 11, 2013 - December 31, 2013, the Work was published and/or displayed on the Website(s) in such manner that it was viewable to the public at large.

**RESPONSE:** Defendant objects to this request on the ground that "publish" and "display" are terms of art in copyright law.  Subject to that objection, defendant denies that the Work was published or displayed in the sense defined by copyright law at any time during this period.  Defendant also denies that the Work was ever published or displayed in any sense of those terms on any "Website(s)" other than https://poolworld-grillworld.com/. Defendant admits that, after it placed on https://poolworld-grillworld.com/ the Composite Image identified in ¶ 16 of the Complaint, which plaintiff contends includes the Work, that web page remained online unchanged, and that image continued to be visible there through the time period specified.  Whether that continued visibility entailed a volitional act of publication or display in 2013 may be a contested legal issue in the case.

13.    Admit that, from at least April 11, 2012 - December 31, 2012, the Work was published and/or displayed on the Website(s) in such manner that it was viewable to the public at large.

**RESPONSE:** Defendant objects to this request on the ground that "publish" and "display" are terms of art in copyright law.  Subject to that objection, defendant denies that the Work was published or displayed in the sense defined by copyright law at any time during this period.  Defendant also denies that the Work was ever published or displayed in any sense of those terms on any "Website(s)" other than https://poolworld-grillworld.com/. Defendant

admits that, after it placed on https://poolworld-grillworld.com/ the Composite Image identified in ¶ 16 of the Complaint, which plaintiff contends includes the Work, that web page remained online unchanged, and that image continued to be visible there through the time period specified. Whether that continued visibility entailed a volitional act of publication or display in 2012 may be a contested legal issue in the case.

14.    Admit that, from at least February 8, 2011 - December 31, 2011, the Work was published and/or displayed on the Website(s) in such manner that it was viewable to the public at large.

**RESPONSE:** Defendant objects to this request on the ground that "publish" and "display" are terms of art in copyright law. Subject to that objection, defendant denies that the Work was published or displayed in the sense defined by copyright law at any time during this period. Defendant also denies that the Work was ever published or displayed in any sense of those terms on any "Website(s)" other than https://poolworld-grillworld.com/. Defendant admits that, after it placed on https://poolworld-grillworld.com/ the Composite Image identified in ¶ 16 of the Complaint, which plaintiff contends includes the Work, that web page remained online unchanged, and that image continued to be visible there through the time period specified. Whether that continued visibility entailed a volitional act of publication or display in 2011 may be a contested legal issue in the case.

15.    Admit that Defendant caused the Work to be displayed on the Website(s).

**RESPONSE:** It is admitted on a date in 2010 which defendant does not recall precisely but was approximately September, defendant caused the Composite Iimage identified in ¶ 16 of the Complaint, which plaintiff contends includes the Work, to be displayed on poolworld-grillworld.com. It is denied that defendant caused that composite image to be displayed anywhere else.

16.    Admit that Defendant published and/or displayed the Work on the Website(s).

**RESPONSE:** It is admitted that on a date in 2010 which defendant does not recall precisely but was approximately September, defendant published and/or displayed the Composite Image identified in ¶ 16 of the Complaint, which plaintiff contends includes the Work, on

poolworld-grillworld.com. It is denied that defendant ever published and/or displayed that Composite Image anywhere else.

17.   Admit that the Website(s) is/are utilized to market and/or advertise Defendant's business.

**RESPONSE:** Admitted.

18.   Admit that Defendant has never been licensed to use or display the Work.

**RESPONSE**: Denied, on the basis of information and belief.  It has been Pool World's standard practice to use photos it obtains from its vendors, which allow Pool World to use the photos to market and promote their products.  Pool World relies on the assumption that its vendors have permission to use the photos that they make available for Pool World's use.  Moreover, Pool World knows that for many years before and after 2010, plaintiff was making its photos available to be licensed by stock-photo services, that the license to use the Work appears to have been bought from iStock, and that Pool World was not the only store selling grills that used the composite image identified in ¶ 16 of the Complaint.  Pool World believes that whoever created the Composite Image obtained each of the two photos that make up the composite image from a stock photo site on terms that included a license for it and others to use each stock photo.  Because it has been thirteen years since the Composite Image was placed on its website, by an employee who no longer works for Pool World, Pool World has neither the documents or any personal recollections to prove that it obtained the composite image from a vendor.  However, as best as Pool World can reconstruct, it believes that the composite image was obtained from a distributor of Weber grills as part of their available photos that Pool World could use pursuant to its relationship with such a distributor.

19.   Admit that, to Defendant's knowledge, no person or entity has ever been licensed to use or display the Work on the Website(s), the Facebook Page, and/or any other social media page controlled by Defendant.

**RESPONSE**: Denied, on the basis of information and belief.  Also denied to the extent that this request implies that the Work, or the Composite Image, ever appeared on any site

owned by Pool World other than poolworld-grillworld.com. It has been Pool World's standard practice to use photos it obtains from its vendors which give Pool World the right to use the photos to market and promote their products, as specified in their dealer agreements. Pool World relies on the assumption that its vendors have permission to use the photos that they make available for Pool World's use. Moreover, Pool World knows that for many years before and after 2010, plaintiff was making its photos available to be license by stock-photo services, and that Pool World was not the only company selling grills (including Webers) that used the composite image identified in ¶ 16 of the Complaint. Because it has been thirteen years since the composite image was placed on its website, and because the employee who did that is no longer in Pool World's employ, Pool World has neither the documents or any personal recollections to show that it followed that practice in this instance. However, as best as Pool World can reconstruct, it believes that the Composite Image was obtained from a distributor of Weber grills as part of their available photos that Pool World could use pursuant to its dealer agreement with them.

20.    Admit that Defendant located a copy of the Work on the internet and downloaded such copy for use on the Website(s).

**RESPONSE:** Denied to the extent that this request implies that the Work, or the Composite Image, ever appeared on any site owned by Pool World other than poolworld-grillworld.com. Subject to that correction, denied in part. Before receiving Exhibit A to the Answer, plaintiff had never possessed any copy of the Work. What plaintiff obtained, and then placed on poolworld-grillworld.com, was not the Work, as that term is defined above, but the composite image identified in ¶ 16 of the Complaint, which plaintiff contends includes the Work. It is most likely that the Composite Image was obtained from an online source provided by a Weber distributor.

21.    Admit that Defendant does not know what specific website it originally found the Work on.

**RESPONSE**: Denied to the extent that this request implies that it ever found the Work, as opposed to the Composite Image, anywhere. Denied in part. Before receiving Exhibit A to

the Answer, plaintiff had never possessed any copy of the Work. What plaintiff obtained, and then placed on poolworld-grillworld.com, was not the Work, as that term is defined above, but the Composite Image identified in ¶ 16 of the Complaint, which plaintiff contends includes the Work. Because it has been thirteen years since the Composite Image was placed on its website, and because the employee who did that is no longer in Pool World's employ, Pool World has neither the documents or any personal recollections to show where it obtained the Composite Image.

22.    Admit that, after receipt of the Demand Letter, Defendant removed at least five (5) photographs (other than the Work) from public display on the Website(s), the Facebook Page, and/or any other social media page controlled by Defendant.

**RESPONSE:** It is admitted that on dates after September 16, 2022, defendant removed "at least five" images from its various websites.

23.    Admit that, after receipt of the Demand Letter, Defendant removed at least ten (10) photographs (other than the Work) from public display on the Website(s), the Facebook Page, and/or any other social media page controlled by Defendant.

**RESPONSE:** Denied.

24.    Admit that, as of September 16, 2022, Defendant had never paid to license or display any photograph on the Website(s), the Facebook Page, and/or any other social media page owned by Defendant.

**RESPONSE:** Denied. Over the years, Pool World purchased clipart on floppy disks and CDs, and prepackaged license packs, for use in its advertising, including its early websites. In addition, pursuant to agreements with various vendors and their distributors, which Pool World was paying, Pool World was given access to online sites containing images, including photographs, that could be used to advertise the goods being purchased from those vendors for sale to the public, including on Pool World's various websites (a term that for these purposes includes web pages on social media platforms). In this regard, the license to make use of the images was compensated as part of the overall commercial relationship with the vendors.

25.    Admit that, prior to the date of these requests, Defendant was not licensed to use or display the following photograph, currently published at https://www.facebook.com/photo.php?fbid=754495776682521&set=pb.100063663155232.-2207520000&type=3.

**RESPONSE:** Denied. Pool World's vendor agreement with Spiceology provided for the latter to give Pool World a "digital package," but Pool World never received one. In lieu of that, per Pool World's conversations with Spiceology, Pool World used Spiceology's website and social media digital assets. Attached Exhibit 25 shows how this was done.

26.    Admit that, prior to the date of these requests, Defendant was not licensed to use or display the following photograph, currently published at https://www.facebook.com/PoolWorldInc/photos/pb.100063663155232.-2207520000/10167796678950370/?type=3:

**RESPONSE:** Denied. Pool World had permission to use this photo through its vendor Traeger and distributor Great Western Barbeque. Pool World accessed the photo through the site login for the distributor's media site for Traeger goods. Attached Exhibit 26 shows how this was done

27.    Admit that, at the time the Answer to the Complaint was filed in this lawsuit (June 2, 2023), Defendant was not aware of any facts evidencing or supporting that "Plaintiff's claims fare barred by the statute of limitations," as asserted in Defendant's First Affirmative Defense.

**RESPONSE:** Assuming that plaintiff meant "are" and not "fare," denied. Facts relating to this issue are set forth in response to plaintiff's Interrogatory 14 and are not repeated here. Not all the facts set forth in that answer were known to defendant on the date that the answer was filed.

28.    Admit that, at the time the Answer to the Complaint was filed in this lawsuit (June 2, 2023), Defendant was not in possession of any documents evidencing or supporting that "Plaintiff's claims fare barred by the statute of limitations," as asserted in Defendant's First Affirmative Defense

1  **RESPONSE:**   Assuming that plaintiff meant "are" and not "fare," denied.  Documents
2  relating to this issue are provided in response to plaintiff's Request for Production 25 and
3  are not enumerated here.  Not all the documents provided there were in defendant's
4  possession on the date that the Answer was filed.

5      29.   Admit that, at the time the Answer to the Complaint was filed in this lawsuit
6  (June 2, 2023), Defendant was not aware of any facts evidencing or supporting that
7  "defendant had permission to use the Work by way of a license from a stock photo service,"
8  as asserted in Defendant's Second Affirmative Defense.

9  **RESPONSE:** Denied.  Facts relating to this issue are set forth in response to Plaintiff's
10  Interrogatory 15 and are not repeated here.  Not all the facts set forth in that answer were
11  known to defendant on the date that the answer was filed.

12      30.   Admit that, at the time the Answer to the Complaint was filed in this lawsuit
13  (June 2, 2023), Defendant was not in possession of any documents evidencing or supporting
14  that "defendant had permission to use the Work by way of a license from a stock photo
15  service," as asserted in Defendant's Second Affirmative Defense

16  **RESPONSE:** Denied.  Documents relating to this issue are set forth in response to
17  plaintiff's Request for Production 26 and are not enumerated here.  Not all the documents
18  provided there were in defendant's possession on the date that the Answer was filed.

1

2                                        /s/   Paul Alan Levy

3                              Paul Alan Levy (pro hac vice)

4                              Public Citizen Litigation Group

5                              1600 20th Street NW

6                              Washington, D.C. 20009

7                              (202) 588-7725

8                              plevy@citizen.org

9

10                                       /s/ Stephen Kirby

11                             Stephen Kirby

12                             Kirby Law Office, PLLC

13                             WSBA #43228

14                             1312 N. Monroe St.

15                             Spokane, WA 99201

16                             (509) 795 4863

17                             kirby@kirbylawoffice.com

18

19                             Attorneys for Defendant

20     November 28, 2023

21

22

23

24

25

26

27

28

---

Defendant's Responses to Plaintiff's Requests for Admission        -13-        Case No. 2::23-cv-00160-TOR

1

## CERTIFICATE OF SERVICE

2    I hereby certify that, on this 28th day of November, 2023, I am serving these

3  responses to plaintiff's Requests for Admissions on counsel for plaintiff, Max Archer and

4  Lauren Hausman at their respective email addresses.

5

6

7

8                                    /s/   Paul Alan Levy

9                               Paul Alan Levy (pro hac vice)

10                               Public Citizen Litigation Group

11                               1600 20th Street NW

12                               Washington, D.C. 20009

13                               (202) 588-7725

14                               plevy@citizen.org

15

16

17  November 28 , 2023

18

19

20

21

22

23

24

25

26

27

28

Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe St.
Spokane, WA 99201
(509) 795 4863
kirby@kirbylawoffice.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

PREPARED FOOD PHOTOS, INC.,
f/k/a  ADLIFE MARKETING
& COMMUNICATIONS CO., INC.,
a  Florida for profit corporation,

          Plaintiff,

       v.

POOL WORLD, INC., a Washington for
profit corporation,

          Defendant.

No. 2:23-cv-00160-TOR

**DEFENDANT'S RESPONSES
TO DOCUMENT REQUESTS
FROM PLAINTIFF**

Pursuant to the instructions and limitations set forth in Amended Requests for Production received from Plaintiff, Pool World, Inc. responds as follows:

1.     All communications (other than with your counsel) concerning or referring to the Work, this Lawsuit, the Demand Letter, and/or Plaintiff.

**RESPONSE:**

Communications from Copycat Legal to Pool World, and within Pool World after receipt of the demand letter but before the lawsuit was filed, are being produced. The remaining communications within Pool World, or to potential witnesses in the course of investigation of the case in preparation for litigation and at the behest of counsel, are being withheld as protected work product. A privilege log of these communications can be provided if requested. Exhibit A to the Answer is also a document described by this request (that is, the Demand Letter), but it is also not being produced because it was already provided to

---

        

1  plaintiff with the Answer.

2       2.       All communications (other than with your counsel), from September 16, 2022
3  through the present, concerning or referring to whether any of the photographs published
4  to and/or displayed on the Website(s), the Facebook Page, the Instagram Page, and/or any
5  other social media page controlled by Defendant were properly licensed and/or purchased.
6  **RESPONSE:**
7  Apart from documents being provided in response to Request No. 1, all documents covered
8  by this request were created in the course of investigating the case for the litigation after the
9  complaint was filed, either internally within Pool World or communicating with potential
10 witnesses, and at the behest of counsel.  These documents are being withheld under the work
11 product doctrine.  A privilege log of these communications can be provided if requested.

12      3.       Documents sufficient to identify the date(s) on which the Work was published
13 or displayed to the Website(s), the Facebook Page, and/or any other social media page
14 owned by Defendant.

15 **RESPONSE**
16 Defendant objects to this request because Pool World never posted the Work alone, only the
17 Composite Image identified in ¶ 16 of the Complaint, and the Composite Image was posted
18 only to the home page of poolworld-grillworld.com.  Subject to that objection, the only
19 documents that Defendant has indicating when the Composite Image was published or
20 displayed are a screenshot of the file folder in which the Composite Image has been
21 retained, showing that it was acquired on August 30, 2010, and the whois for poolworld-
22 grillworld. com, showing the name was acquired on August 20, 2010.  The screenshot of the
23 file   folder   is   being   produced.     A   copy   of   the   whois,   viewed   online   at
24 https://www.whois.com/whois/poolworld-grillworld.com, is being produced.

25      4.       Documents sufficient to identify all sub-pages of the Website(s), the Facebook
26 Page, and/or any other social media page controlled by Defendant on which the Work was
27 published or displayed.
28 **RESPONSE**

Defendant objects to this request because Pool World never published or displayed the Work alone, only the Composite Image identified in ¶ 16 of the Complaint, and because the Composite Image was posted only to the home page of poolworld-grillworld.com. Subject to that objection, the poolworld-grillworld website had five subpages; copies of those five pages are being produced

5.    A native copy of the Work as it was published or displayed on the Website(s), the Facebook Page, and/or any other social media page controlled by Defendant.

**RESPONSE**

Defendant objects to this request because Pool World never posted the Work alone, only the Composite Image, and because the Composite Image was posted only to the home page of poolworld-grillworld.com. Subject to that objection, a copy of the Composite Image is being produced.

6.    A copy of any insurance policy under which any coverage for representation or payment of a judgment in this lawsuit may be provided.

**RESPONSE**

Defendant objects to this request because defendant has decided not to make a claim on any insurance policy, for reasons already explained to plaintiff, so the answer to this request as written is that there is no such policy. Subject to that objection, defendant has previously emailed to plaintiff copies of insurance policies on which defendant could have made a claim of coverage.

7.    All copies of the Work within Defendant's possession, custody, or control.

**RESPONSE**

The only copy of the Work standing by itself in Defendant's possession, custody, or control is the document that was produced by plaintiff in response to Defendant's discovery request. Copies of the Work were included in two other documents: the demand letter that was received from plaintiff's counsel, which was attached to the Answer as Exhibit A, which reproduced a copy of the Work, and, allegedly, the Composite Image identified in ¶ 16 of the complaint. The latter document is being produced. Another copy of Exhibit A to the

Answer can be supplied on request. The Work also appears in some search results that Pool World has conducted in the course of investigating this case (documents furnished in response to other document requests).

8.    Documents sufficient to identify all marketing, advertising, or other displays of the Work by Defendant.

**RESPONSE**

Defendant has no such documents. The Composite Image was removed from poolworld-grillworld.com after Exhibit A to the Answer was received.

9.    All documents within which the Work was published and/or displayed, including a copy of the Website(s), the Facebook Page, and/or any other social media page controlled by Defendant that displayed a copy of the Work.

**RESPONSE**

Defendant objects to this request because Pool World never published or displayed the Work alone, only the Composite Image identified in ¶ 16 of the Complaint, and because even the Composite Image was posted only to the home page of poolworld-grillworld.com. Subject to that objection, defendant has no such documents. The Composite Image was removed from poolworld-grillworld.com after the demand letter was received. The page without the Composite Image can still be seen online at poolworld-grillworld.com.

10.    Documents sufficient to identify all revenue and/or income generated from Defendant's use, publication, and/or display of the Work on the Website(s), the Facebook Page, and/or any other social media page controlled by Defendant.

**RESPONSE**

Defendant objects because this request calls for defendant to engage in pure conjecture and speculation about what, if any, revenue was generated as a result of people seeing the Composite Image. Defendant further objects because the request presumes that the "Work" (or was used by itself, and that the Composite Image appeared in locations other than a single page on poolworld-grillworld.com. Subject to those objections, defendant does not believe that the use of the Composite Image allegedly containing the Composite Image

generated any revenue.  Indeed, the web page on which the Composite Image was never updated after it was created in 2010, even as information on the page became out of date, until 2022 when the Composite Image was removed.  Hence, no documents are produced in response to this request.

11.    Documents sufficient to identify the person(s) who published or caused the display of the Work on the Website(s), the Facebook Page, and/or any other social media page controlled by Defendant.

**RESPONSE**

Defendant objects to this request because Pool World never published or displayed the Work alone, only the Composite Image identified in ¶ 16 of the Complaint, and because even the Composite Image was posted only to the home page of poolworld-grillworld.com. Subject to that objection, the only individuals involved in the publication or display are Macy Franklin and Pat Flynn.  The initial disclosures and the answers to interrogatories are sufficient to identify them.

12.    All documents and communications evidencing or supporting the notion that Defendant was licensed to use or display the Work in any manner.

**RESPONSE**

This request is duplicative of Request 26.  The documents are being produced as part of the response to Request 26.

13.    Documents sufficient to identify the source from which Defendant obtained a copy of the Work.

**RESPONSE**

Defendant objects to this request because it implies that it obtained the Work rather than the Composite Image.  Defendant's reconstruction of the way in which it obtained the Composite Image is set forth in its responses to the Interrogatories.  Defendant is producing its digital copy of the Composite Image as its response to Request 5.

14.    For calendar year 2020, copies of at least five (5) license agreements, receipts, or any other document (irrespective of the date thereof) that were received by Defendant and

which relate to any photograph that was published and/or displayed by Defendant during such calendar year.  If you have less than five (5) of such documents, please produce all such documents.

**RESPONSE**

These documents are being produced in a single folder responsive to Requests 14, 15 and 16.

15.    For calendar year 2021, copies of at least five (5) license agreements, receipts, or any other document (irrespective of the date thereof) that were received by Defendant and which relate to any photograph that was published and/or displayed by Defendant during such calendar year.  If you have less than five (5) of such documents, please produce all such documents.

**RESPONSE**

These documents are being produced in a single folder responsive to Requests 14, 15 and 16.

16.    For calendar year 2022, copies of at least five (5) license agreements, receipts, or any other document (irrespective of the date thereof) that were received by Defendant and which relate to any photograph that was published and/or displayed by Defendant during such calendar year.  If you have less than five (5) of such documents, please produce all such documents.

**RESPONSE**

These documents are being produced in a single folder responsive to Requests 14, 15 and 16.

17.    State and federal tax returns filed by Defendant and any attendant forms and filings, which contain information which may establish the total sales, taxable income, expenses, deductions, and distributions of Defendant's business for the years 2020, 2021, and 2022.

**RESPONSE**

These documents for 2020 and 2021 will be produced once the parties have finalized a

---

1 protective order and it has been issued by the Court. The 2022 tax returns are still in the
2 process of revision; they will be produced when that process is completed.

3    18.    Documents provided to any individual or entity that prepared Defendant's tax
4 returns for the years 2020, 2021, and 2022.

5 **RESPONSE**

6 This request is vastly overbroad  and unduly burdensome, seeking production of several
7 boxes of documents, most of which would have no relevance to this litigation. The claimed
8 relevance relates to plaintiff's desire to seek the disgorgement of the "profits" allegedly
9 produced by the publication in 2010 of an image consisting in part of a photograph of
10 vegetable skewers on a website devoted exclusively to a small part of Defendant's business,
11 the sale of grills.  That aspect of the business produced less than 3% of Defendant's gross
12 revenue, and a profit of less than $4000, for fiscal years 2020, 2021 and 2022.  Plaintiff is
13 invited to meet and confer on a narrower request.

14    19.    Documents evidencing any sale of the assets and/or stock of Defendant and/or
15 any change of ownership of Defendant, such as, but not limited to, any purchase agreement
16 evidencing such.

17 **RESPONSE:**

18 As noted in response to the Interrogatories, there has been no sale of assets, but one of
19 Defendant's owners died in 2021 in a freak bicycle accident and his estate is still being
20 settled.  To the extent that Defendant has papers related to the passing of shares in the
21 course of the administration of his estate, they will be produced if requested, subject to a
22 protective order to protect the personal privacy of his widow.

23    20.    From September 16, 2022 through the present, if you have removed any
24 photographs from public display on the Website(s), the Facebook Page, and/or any other
25 social media page controlled by Defendant (other than the Work), please produce a copy of
26 any such photograph.

27 **RESPONSE:**

28 Screenshots of the photographs that Pool World still has are being produced.  Removed

1  photos that are no longer in Pool World's possession can be seen on the Wayback Machine

2  at    https://web.archive.org/web/20170322212219/http://poolworld-community.com/

3  Spokane%20Humane%20Society.htm and https://web.archive.org/web/ 20170322210239

4  /http:// poolworld-community.com/Splash%20for%20CF.htm

5      21.    Other than the Demand Letter, copies of any other notice of copyright

6  infringement and/or letter alleging infringement of any photograph that was received by

7  Defendant.

8  **RESPONSE:**

9  None.

10     22.    Documents sufficient to identify all lawsuits filed against Defendant, at any

11  time from January 1, 2015 through the date of your responses to these document requests,

12  in which any allegation of copyright infringement or trademark infringement is alleged.

13  **RESPONSE:**

14  None.

15     23.    All contracts/agreements with and/or invoices issued by any third-party

16  responsible for publishing or causing the display of the Work on the Website(s), the

17  Facebook Page, and/or any other social media page controlled by Defendant.

18  **RESPONSE:**

19  None

20     24.    All communications with any third-party responsible for publishing or causing

21  the display of the Work on the Website(s), the Facebook Page, and/or any other social media

22  page controlled by Defendant.

23  **RESPONSE:**

24  None

25     25.    All documents and communications (other than with your counsel) evidencing

26  the factual basis for your First Affirmative Defense, that "Plaintiff's claims fare barred by

27  the statute of limitations."

28  **RESPONSE:**

1  Assuming that plaintiff meant "are" and not "fare," the documents referenced in the

2  response to Interrogatory 14, to the extent not produced in response to other discovery

3  requests and not submitted with the papers on defendant's motion to compel, are being

4  produced.

5       26.    All documents and communications (other than with your counsel) evidencing

6  the factual basis for your Second Affirmative Defense, that "defendant had permission to

7  use the Work by way of a license from a stock photo service."

8  **RESPONSE**

9  The documents referenced in the response to Interrogatories 9 and 15, to the extent not

10  produced in response to other discovery requests, are being produced.

11

12                 /s/ Paul Alan Levy

13              Paul Alan Levy (pro hac vice)
            Public Citizen Litigation Group

14              1600 20th Street NW
            Washington, D.C. 20009

15              (202) 588-7725
            plevy@citizen.org

16                 /s/ Stephen Kirby

17              Stephen Kirby
            Kirby Law Office, PLLC

18              WSBA #43228
            1312 N. Monroe St.

19              Spokane, WA 99201
            (509) 795 4863

20              kirby@kirbylawoffice.com

21  November 28, 2023         Attorneys for Defendant

22

23

24

25

26

27

28

---

1

## CERTIFICATE OF SERVICE

2  I hereby certify that, on this 28th day of November, 2023, I am serving these Answers

3 to Requests to Produce on counsel for plaintiff Max Archer and Lauren Hausman at their

4 email addresses, mka@riverside-law.com and lauren@copycatlegal.com.

5

6         /s/ Paul Alan Levy

7         Paul Alan Levy (pro hac vice)
          Public Citizen Litigation Group

8         1600 20th Street NW
          Washington, D.C. 20009

9         (202) 588-7725
          plevy@citizen.org

10

11 November 28, 2023

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant's Responses to Plaintiff's Document Requests   -10-   Case No. 2::23-cv-00160-TOR

88