# Exhibit W



CopyCat Legal PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065

T 877-HERO-CAT (877-437-6228)
E ██████@copycatlegal.com

## FRE 408 SETTLEMENT COMMUNICATION

March 18, 2024

## VIA FEDERAL EXPRESS AND ELECTRONIC MAIL (tanglewood@maine.rr.com)

Inn at Tanglewood Hall
Attn: Susan Wetzel and Andy Wetzel
611 York Street
York, ME 03909

*RE:* *Prepared Food Photos, Inc. v. Inn at Tanglewood Hall*

Dear Ms. And Mr. Wetzel:

This law firm represents Prepared Food Photos, Inc. Our client is in the business of licensing high-end, professional photographs for the food industry. Through its website (www.preparedfoodphotos.com), our client offers a monthly subscription service which provides access to/license of tens of thousands of professional images. The rights associated with these images are exclusively owned by our client, and it has spent countless hours and substantial monies in building a business that relies on such exclusive subscription service. The unauthorized use of our client's work deprives it of much-needed income and forces our client to incur substantial costs (monetary and time) in identifying violators and enforcing its rights.

In 1998, our client created a photograph titled "Lobster017" (the "Work"). A copy of the Work is exhibited below:



1 | P a g e

The Work was registered by our client with the Register of Copyrights on October 31 2016 and was assigned Registration No. VA 2-020-970. A true and correct copy of the Certificate of Registration pertaining to the Work is attached hereto as **Exhibit "A."**

To our knowledge, our client *did not* authorize you or your company to use and/or display the foregoing photograph(s). Notwithstanding this lack of authorization, our client has identified the subject photograph(s) appearing on the following URL: https://tanglewoodhall.com/activities




Captured by FireShot Pro: 13 March 2024, 14:02:41

A true and correct copy of screenshot(s) of the website, webpage, and/or social media page, displaying the copyrighted Work, is attached hereto as **Exhibit "B."**

If our client is mistaken or if you believe the photograph(s) was previously licensed through our client or some other party, please contact us immediately with evidence of the prior licensing. If we do not hear from you *within fourteen (14) days from the date of this letter*, we will be forced to assume that the photograph(s) was *not* properly licensed and will take appropriate legal action to enforce our client's rights.

If the above-described use of our client's photograph(s) was not properly licensed, please understand that such unauthorized use may constitute federal copyright infringement under 17 U.S.C. § 501. In such event, I encourage you to discuss the foregoing with your attorney and/or your insurance carrier as copyright infringement is a serious matter that potentially exposes you to substantial damages and other costs (such as retaining counsel to defend the lawsuit) if we are forced to file a lawsuit on behalf of our client.

2 | P a g e

Courts have not hesitated (where appropriate) to impose substantial damages against copyright infringers of Prepared Food Photos' intellectual property. The below courts have each accepted Prepared Food Photos' minimum $11,988.00/year licensing fee as a measuring stick for actual damages in awarding substantial damages based on the total number of years of infringement. See, e.g. Prepared Food Photos, Inc. v. 193 Corp., No. 1:22-cv-03832, 2022 U.S. Dist. LEXIS 205690 (N.D. Ill. Sep. 21, 2022) (awarding *$35,964.00* in actual damages, representing the $11,988.00 annual license fee for a 3-year use of a single photograph); Prepared Food Photos, Inc. v. Miami Beach 411 Corp., No. 22-23197-CIV-ALTONAGA/Damian, 2022 U.S. Dist. LEXIS 216003 (S.D. Fla. Nov. 28, 2022) (awarding *$35,964.00* in actual damages, representing the $11,988.00 annual license fee for a 3-year use of a single photograph); Prepared Food Photos, Inc. v. Chi.-Mkt.-Distrib., Inc., Civil Action No. 1:22-cv-03299-CNS-MEH, 2023 U.S. Dist. LEXIS 88407, at *2 (D. Colo. May 19, 2023) (awarding *$35,964.00* in actual damages, representing the $11,988.00 annual license fee for a 3-year use of a single photograph).

Please keep in mind both that the facts of these cases may be different than those here (thus militating in favor of a higher or lower award here) and that the above amounts do not account for taxable costs which are also recoverable under the Copyright Act. You should consult with an attorney to review the facts of *this* case, whether you have any defenses to the claims that Prepared Food Photos may bring, and what risk you may have in ignoring this letter.

Please note that Section 504 of the Copyright Act provides for the recovery of actual damages plus "any additional profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." Of course, if forced to litigate this matter, we will fully explore the damages issue.

While this is a serious matter, it is not particularly complex. The subject photograph(s) was either properly licensed or it was not. If it was, you should notify us immediately of such licensing so that we may inform our client of such. If it was not properly licensed, then the utilization of our client's work(s) without proper authorization constitutes copyright infringement. In that case, we will either resolve this issue in court (allowing a court to decide the matter) or privately between the parties. If the subject use was not authorized, our client hereby makes the following demand:

> *You shall pay Thirty Thousand Dollars ($30,000.00) within twenty-one (21) days of the date first written above and shall immediately cease and desist from any further use of our client's work(s).*

Please contact us within the above-stated period to either provide evidence of licensing or to discuss resolution of this matter. If confirmation of a license or payment is received as described above, we will forego the filing of a lawsuit. Otherwise, please be aware that our client does not shy away from enforcing its rights in court. It has done so many times before and (as demonstrated above) secured awards commensurate with the above examples.

Using the above cases as a guide, please keep in mind that our client exclusively operates on a subscription basis. This means that access to one (1) photograph costs the same as access to

3 | P a g e

the entire library of photographs. Our client makes its library available for a minimum of $999.00 per month (https://www.preparedfoodphotos.com/stock-photo-subscription/) (with the price ultimately depending on the number of 'end-users' a subscriber caters to) with a minimum subscription of twelve (12) months https://www.preparedfoodphotos.com/wp-content/uploads/PFP-Terms-of-Use-3-2023.pdf. Thus, irrespective of how long you utilized the subject photograph, the *minimum* license fee that would have been owed is $11,988.00 ($999.00 x 12 months).

You should provide a copy of this letter to your general liability insurance carrier (if one exists), notify them of our client's demand, disclose the identity of such insurer to us, and provide a copy of the subject insurance policy to us. If you believe we are mistaken as to the allegations of copyright infringement made herein, then we encourage you to provide us with copies of any license or other evidence supporting your authorized use of the subject work(s).

This letter further constitutes a demand that you immediately suspend any document destruction policy and preserve any and all documents (such as e-mails, text messages, social media pages/postings, copies of the work(s) at issue, etc.) that may be relevant to the claims or defenses in a forthcoming lawsuit. Please be aware that a federal court may impose significant sanctions if you fail to preserve relevant documents upon reasonable anticipation of litigation.

Finally, while removing the unlicensed photograph(s) from display is required, please understand that *removal alone is insufficient to end this matter*. If your use of the subject photograph is unauthorized and you do not contact us to discuss payment for your existing/past use of the photograph(s), a lawsuit *will* be filed and our client *will* pursue the above-described damages against you.

You should give this matter your immediate attention.

Very truly yours,

Meghan Medacier, Esq.
For the Firm

Encl.

**PretiFlaherty**



Sigmund D. Schutz
████@preti.com
207 █████████

Portland, ME

Augusta, ME

Concord, NH

Boston, MA

Washington, DC

April 19, 2024

<u>VIA E-MAIL AND FIRST CLASS MAIL</u>

Piero Ruiz Rodriguez
Legal Research Specialist
CopyCat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL  33065

Re.    <u>Susan & Andrew Wetzel d/b/a Inn at Tanglewood Hall</u>

Dear Mr. Rodriguez:

This law firm represents Susan & Andrew Wetzel d/b/a Inn at Tanglewood Hall, a tiny seasonal bed and breakfast ("B&B") in Maine, regarding your client's claim of copyright infringement arising from a single image of cooked Maine lobster posted to the B&B's website. On receipt of your client's demand letter, Su and Andy responded and explained that they immediately removed the allegedly infringing lobster image.  Because you have continued to contact them, they have referred the matter to me.

Su & Andy are 70 and live at and operate the B&B as a supplement to their social security income. You assert that they are liable for pre-registration copyright infringement because the image was displayed on their B&B's website next to a listing of nearby restaurants. The relevant page of the B&B's site offers links to nearby unaffiliated restaurants, does not advertise any services offered by the B&B and, therefore, did not and could not have generated any sales. Simply put, the B&B earned no income on account of the image.

A photograph of cooked Maine lobster like the image at issue has *de minimis* market value in Maine because lobster is readily available here, and any person can easily and without charge photograph lobster. The image itself is generic.  It depicts nothing particularly original or interesting. There is no market for selling images of this sort to similar small businesses in Maine.  As Su and Andy pointed out to you in their letter, similar images can be licensed at nominal cost.

According to your letter, the image was first created in 1998 and the copyright was first registered in October 2016. Because the B&B has confirmed that the image was first posted to its website by not later than eight years ago in January 2016, my clients are still seeking licensing and other information from the B&B website designer who over eight years ago helped convert their website to WordPress.  Due to the passage of time, it is quite possible that this information might never be discovered.  Because you are making demands so long after the expiration of the statute of limitations your client should bear

Preti Flaherty
Beliveau & Pachios LLP
Attorneys at Law    One City Center, Portland, ME 04101    |    PO Box 9546, Portland, ME 04112-9546    |    Tel 207.791.3000    :    www.preti.com
21735050.1

PRETI FLAHERTY

CopyCat Legal PLLC
April 19, 2024
Page 2

the burden of this uncertainty.

Your client has not demonstrated that it in fact registered the particular image in question or that it owns the copyright in that image. We are unable to locate the image on your client's searchable website as being among the images it offers for sale via its subscription service.[1] There also appear to be discrepancies between the image the B&B posted to its website and the image depicted in your demand letter.

Because the copyright in the image was not registered within three months after first publication, your client cannot recover statutory damages or attorneys' fees. *See* 17 U.S.C. § 412. Although actual damages are theoretically available, any damages would be de minimis under these circumstances. Your client could seek actual damages associated with the license fee for the one image at issue, not lost license fees for its *entire* catalogue: "What a willing buyer would have been reasonably required to pay a willer seller for [the] plaintiffs' work, . . . not what the owner would have charged." *Dash v. Mayweather*, 731 F.3d 303, 313 (4th Cir. 2013); *Hofmann v. O'Brien*, 367 Fed. App'x 439,442 (4th Cir. 2010) (unpublished). Other circuits follow the same approach. *Gaylord v. United States*, 777 F.3d 1363,1368 (Fed. Cir. 2015) ("court is not constrained to accept particular practices of the parties on either side"), *Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001). The cases you cite in your letter all involved default judgments, and therefore are not the result of an adversarial process. I am unaware of any contested case where your damages theory that a monthly subscription fee providing access to an apparently vast archive of images is a rational measure of actual damages associated with the use of just one single image. As a result, your proposal that we look to its subscription model as the measure of damages is unpersuasive.

Because this case is a bad candidate for a legal claim, any legal claim that your client may file will be vigorously defended and there are no discernible actual damages, I request that you confirm that the matter will not be further pursued. In that instance, I will close my file and would have no further questions. On the other hand, if your client wishes to pursue the matter, please provide the following documents and information:

1. Provide documentation regarding ownership of the copyright in the image. The registration information provided does not depict the actual images submitted for copyright registration.

---

[1] A similar but different photo appears on Prepared Foods' subscription site.
*See* https://www.preparedfoodphotos.com/downloads/lobster-in-white-dish-with-garnish-and-lemon-food-picture/ As illustrated by the difference in napkin fold and plate orientation in reference to the ramekin of butter and lobster tail, this is not the same photo. Other lobster photos on Prepared Foods site are even more different than the lobster photo on the B&B's website.

21735050.1

PRETI FLAHERTY

CopyCat Legal PLLC
April 19, 2024
Page 3

2. Provide the identity of the person who created the image, documentation showing transfers or assignments of rights in the image, and the documents that form the basis for your client's claim that it owns the image at issue. In this regard, I note that a significant question was raised in *MyWebGrocer, Inc. v. Adlife Mktg. & Commun. Co., Inc.*, No. 5:16-CV-310, 2019 WL 13177905, at *5 (D. Vt. Aug. 27, 2019) about the ownership of the copyright and the accuracy of the copyright registrations of photographs taken in the 1990's.

3. Provide documentation as to any licenses issued or authorized for use of the image during the period 1998 to January 31, 2016.  How was the image made available to the public as of and prior to January 2016?

4. Explain the process used by Prepared Foods to identify allegedly infringing images on the internet and the date the image in question was first identified by Prepared Foods, its predecessors, or its agents/contractors as potentially infringing. Is there any reason Prepared Foods could not have identified the image on or before 2016 when it submitted its copyright registration?

5. When did Prepared Foods start its subscription licensing service and how have the terms and pricing of the service changed since inception?

6. Because your client is using the subscription service as a basis for damages and the service is so expensive that virtually no small business in America (and certainly no B&Bs like the one my clients operate) could afford to pay for that service, provide information demonstrating that the subscription service is intended to actually function as a business and that it is not merely a façade to support damages claims in litigation. How many paid subscribers does Prepared Foods have, how much does each pay, how long has each subscriber been a subscriber, and which subscribers have been compelled to join the service under settlement agreements after having received a demand letter?

## Conclusion

Su and Andy have several defenses and many unanswered questions that may support additional defenses. They have done everything they reasonably can do to comply with your demand. They immediately and in good faith removed the image from their website. And they cannot afford to pay any amount—and certainly not $30,000—to license any image.

21735050.1

166

PRETI FLAHERTY

CopyCat Legal PLLC
April 19, 2024
Page 4


As mentioned above, please confirm that this matter is closed.

Very truly yours,


Sigmund D. Schutz


cc:    Susan & Andrew Wetzel

SDS:jac

21735050.1

**From:** Meghan Medacier <████████@copycatlegal.com>
**Sent:** Monday, August 26, 2024 3:01 PM
**To:** Schutz, Sigmund D. <███████@preti.com>
**Cc:** Piero Ruiz Rodriguez <████@copycatlegal.com>; Charron, Jean A. <███████@preti.com>;
Harriman, Alexandra A. <████████@preti.com>
**Subject:** RE: Prepared Food Photos, Inc. v. Susan & Andrew Wetzel d/b/a Inn at Tanglewood Halll

<u>Note:</u> *** **This email originated from outside of Preti. Please do not click on any links or open attachments unless you can verify the sender and content.** ***

Hello,

I am writing to follow up. Thank you.



Meghan Medacier, Esq.

Attorney
CopyCat Legal PLLC

3111 North University Drive,

Suite 301

Coral Springs, Florida 33065

T 877-HERO-CAT (877-437-6228)

E ▓▓▓▓@copycatlegal.com

www.copycatlegal.com

You Create.
Copycat Protects.™



---

**From:** Meghan Medacier
**Sent:** Friday, August 16, 2024 4:11 PM
**To:** 'Schutz, Sigmund D.' <▓▓▓▓@preti.com>
**Cc:** Piero Ruiz Rodriguez <▓▓▓@copycatlegal.com>; Charron, Jean A. <▓▓▓▓@preti.com>; Harriman, Alexandra A. <▓▓▓▓@preti.com>
**Subject:** RE: Prepared Food Photos, Inc. v. Susan & Andrew Wetzel d/b/a Inn at Tanglewood Halll

Good afternoon,

This matter is not closed.

**Statute of Limitations**

Under the discovery rule, I do not see how this matter is outside the statute of limitations. My client discovered your client's use in February of 2024. My client reverse images searches for its photographs, unfortunately, there is not rhyme or reason how the technology finds photographs. There may be results given today for photographs posted yesterday or ones posted years prior.

**Damages**

My factual claim that the use was unauthorized is that my client does not have a license for your client to use the photograph. If you can provide a license, I would be happy to pass that info along to my client.

**Conversion Paperwork**

2

Please find attached PFP's conversion paperwork. I am sending these documents for the purposes of settlement and understand that these documents are to be kept confidential. Regarding your question on Adlife/Prepared Food, the company (registered in Rhode Island) was named Adlife. A few years ago, they filed the required paperwork to change the name to Prepared Food Photos, and then converted to a Florida corporation at some point last year I believe. To my knowledge, they have filed lawsuits under the "Prepared Food" name since around June 2021. Hopefully, that clears things up on the name.

**Default Judgments**

At the end of the day neither you nor I know what a judge or jury will do. Overall, if this matter is to proceed, my client would provide its benchmark licenses as evidence of its damages. If your client wants to spend the resources to see how a judge/jury would rule, my client has no issue. Please understand, unfortunately, your client did not pay for a license from my client, or anyone else for that matter.

Please let me know if your client has an offer I can take back to mine. Thank you.



**Meghan Medacier, Esq.**

You Create.
Copycat Protects.™



Attorney
CopyCat Legal PLLC

T 877-HERO-CAT (877-437-6228)

3111 North University Drive,

E ████████@copycatlegal.com

Suite 301

www.copycatlegal.com

Coral Springs, Florida 33065

**From:** Schutz, Sigmund D. <████████@preti.com>
**Sent:** Friday, July 26, 2024 4:39 PM
**To:** Meghan Medacier <████████@copycatlegal.com>
**Cc:** Piero Ruiz Rodriguez <████████@copycatlegal.com>; Charron, Jean A. <████████@preti.com>; Harriman, Alexandra A. <████████@preti.com>
**Subject:** RE: Prepared Food Photos, Inc. v. Susan & Andrew Wetzel d/b/a Inn at Tanglewood Halll

3

Meghan:

I've included responses below.  There is no provable actual damage here and if there were any damage it would be de minimis.  I note below a number of other issues/concerns with the claim regarding this image. My client has no ability to pay for any food image photos subscription and will not do so. Please confirm that this matter is closed.

Sig Schutz

**Sigmund D. Schutz**
**Preti**Flaherty

**From:** Meghan Medacier ███████@copycatlegal.com>
**Sent:** Monday, July 22, 2024 5:40 PM
**To:** Schutz, Sigmund D. <██████@preti.com>; Charron, Jean A. ██████@preti.com>
**Cc:** Piero Ruiz Rodriguez ██████@copycatlegal.com>
**Subject:** RE: Prepared Food Photos, Inc. v. Susan & Andrew Wetzel d/b/a Inn at Tanglewood Halll

<u>Note:</u> *** This email originated from outside of Preti. Please do not click on any links or open attachments unless you can verify the sender and content.***

Good afternoon,

I would like to follow up. Thank you.

CopyCat
LEGAL

**Meghan Medacier, Esq.**

Attorney
CopyCat Legal PLLC

3111 North University Drive,

Suite 301

Coral Springs, Florida 33065

**T** 877-HERO-CAT (877-437-6228)

**E** ██████@copycatlegal.com

www.copycatlegal.com

You Create.
Copycat Protects.™

4

**From:** Meghan Medacier
**Sent:** Friday, July 5, 2024 10:08 AM
**To:** ████████@preti.com; ████████@preti.com
**Cc:** Piero Ruiz Rodriguez ███████@copycatlegal.com>
**Subject:** Prepared Food Photos, Inc. v. Susan & Andrew Wetzel d/b/a Inn at Tanglewood Halll


Good morning,


Thank you for your patience and thank you for your response.


**Fair** Use

Regarding the page the image was displayed on, from our perspective, client is a B&B that was suggesting dining options in the area of its B&B. The photographs were used in a manner to illustrate and add visual interest to the article. The photographs themselves were not the subject of the story or commentary. The use of the photos was not transformative. Additionally, "a news reporting purpose by no means guarantees a finding of fair use." Swatch Grp. Mgmt. Servs. v. Bloomberg L.P., 756 F.3d 73, 85 (2d Cir. 2014). "*Legitimate news outlets* often license photos and videos to illustrate and add visual interest to their articles. It is alleged that the Egotist reproduced a substantial portion of Mr. Pickersgill's work, without paying any licensing fee, to generate income for itself and without adding anything new or meaningful to the consideration of the images. None of this justifies a finding of fair use." McGucken v. Newsweek LLC, 2022 U.S. Dist. LEXIS 50231, at *27-28 (S.D.N.Y. Mar. 21, 2022) (internal citations and quotations omitted) (emphasis added).


Further, your client's website has the sole purpose of booking rooms. Stross v. Stone Textile, No. 1:18-CV-454-RP, 2019 U.S. Dist. LEXIS 149424, at *12 (W.D. Tex. June 27, 2019) ("In the modern age, blogs and articles are often used by for-profit enterprises to build brand awareness and credibility among prospective consumers. Here, the blog is conducted under the auspices of Stone Textile's business, promoting Stone Textile's brand, rather than under a separate non-profit entity with purely journalistic or educational purposes. Indeed, the blog itself links to Stone Textile's commercial website. From this perspective, and viewed in a light most favorable to Stross, a reasonable jury could find that Stone Textile stood to profit from its use of Stross's photographs by including them on its blog."); Northland Family Planning Clinic, Inc. v. Ctr. for Bio-Ethical Reform, 868 F. Supp. 2d 962, 979 (C.D. Cal. 2012) (holding that "[g]enerating traffic to one's website... using copyrighted material is within the type of 'profit' contemplated" by the first fair use factor); Nunez v. Caribbean Int'l News Corp., 235 F.3d 18, 22 (1st Cir. 2000) (holding that website's use of copyrighted photographs was commercial in nature

5

because they "were used in part to create an enticing lead page that would prompt readers to purchase the newspaper.").

Moreover, there is no argument regarding the fact that your client copied the entirety of the photos. Regarding the market effect, if entities such as your client are allowed to use my client's photographs for free, such would destroy the motivation of legitimate news entities and others from paying for the photographs in the first place. My client has the right to sell his photographs, which he does. Your client did not have the right to use my client's photographs without authorization.

**RESPONSE: This claim involves a single photo of cooked lobster more than likely licensed by the professional website person who helped create the Inn at Tanglewood Hall website in 2016. This is not a news website or a blog. It was first published on a static web page outside the copyright claim statute of limitations.**

## Damages

Overall, unfortunately, your client used, without authorization, my client's photograph. Although there may be similar photographs for license at various amounts, your client did not choose to license a photograph. If this matter is to proceed, my client would provide its benchmark licenses as evidence of its damages to provide a basis for its damages.

**RESPONSE: Please confirm the identity of all persons (including re-sellers or third-party websites) authorized to license use of the image since it was first created. What is the factual basis for your claim that the use was _un_authorized? The use originated apparently prior to the inception of Prepared Foods Photos, Inc. and/or prior to the acquisition of the image by Prepared Foods Photos. According to what you provided, the copyright owner was Adlife with a publication date of 1998. To substantiate your claim that the use was unauthorized please provide a list of all parties authorized to use Adlife images from 1998 to present.**

Here, we are only seeking actual damages based on your client's use of the photograph. Overall, my client has been relatively successful in establishing its licensing fees whether actual or statutory. See Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC, No. 1:22-cv-03832, 2022 U.S. Dist. LEXIS 205690 (N.D. Ill. Sep. 21, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of pre-registration usage of a single photo; Prepared Food Photos, Inc. v. Miami Beach 411 Corp., No. 22-23197-CIV-ALTONAGA/Damian, 2022 U.S. Dist. LEXIS 216003 (S.D. Fla. Nov. 28, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photo); Prepared Food Photos, Inc. v. Fat Daddy Co., No. 22-61671-CIV-SINGHAL, 2022 U.S. Dist. LEXIS 216004 (S.D. Fla. Nov. 29, 2022) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Perry Wings Plus, Inc., No. 22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *24 (S.D. Fla. Dec. 19, 2022) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for a 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Silver Star of Brooklyn / Brooklyn's Best Inc., No. 1:22-cv-04196-WFK-CLP, 2023 U.S. Dist. LEXIS 22037 (E.D.N.Y. Jan. 23, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Chi.-Mkt.-Distrib., Inc., Civil Action No. 1:22-cv-03299-CNS-MEH, 2023 U.S. Dist. LEXIS 88407 (D. Colo. May 19, 2023) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a

single photo); <u>Prepared Food Photos, Inc. v. Exec. Dining Club, Inc.</u>, No. 22-cv-9446 (ER), 2023 U.S. Dist. LEXIS 99676 (S.D.N.Y. May 25, 2023) (awarding Plaintiff $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. Shadowbrook Farm LLC</u>, No. 1:22-CV-00704 (LEK/ATB), 2023 U.S. Dist. LEXIS 110171 (N.D.N.Y. June 27, 2023) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. WaDaYaNeed, LLC</u>, No. 1:22-CV-01270 (LEK/ATB), 2023 U.S. Dist. LEXIS 110993 (N.D.N.Y. June 28, 2023) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. Exec. Dining Club, Inc.</u>, No. 22-cv-9446 (ER), 2023 U.S. Dist. LEXIS 99676, at *2 (S.D.N.Y. May 25, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. Mikey's Famous Marinades Corp.</u>, No. 23-CV-1484 (JMA) (AYS), 2023 U.S. Dist. LEXIS 132222 (E.D.N.Y. July 31, 2023) (awarding $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for 1-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. New Kianis Pizza & Subs, Inc.</u>, No. 1:23-CV-926-JRR, 2024 U.S. Dist. LEXIS 52023 (D. Md. Mar. 25, 2024) (rejecting report & recommendation to award $1,000.00 in statutory damages and instead awarding $47,952.00 in statutory damages, representing the $11,998.00 annual license fee for 2-year use with a 2x multiplier applied thereto).

## Default Judgements

I cannot provide you court rulings from contested cases because they don't exist (as nobody has thought it wise to litigate one of these to the end). I do understand that default judgments are only limited use; however, a judge does analyze the default before they sign their name and enter the order. In any case, cases like these generally are not taken all the way to trial because litigation is lengthy and costly. The closest I can provide is <u>Prepared Food Photos, Inc. v. New Kiani's Pizza & Subs, Inc.</u>, No. 1:23-CV-926-JRR, 2024 U.S. Dist. LEXIS 52023 (D. Md. Mar. 25, 2024) which is also a default judgment case but where a magistrate recommended only $1,000.00 in statutory damages be awarded. The district court rejected the magistrate's recommendation and awarded $47,000.00 in damages. PFP has numerous subscribers. Please see a handful of redacted subscriber agreements.

**<u>RESPONSE</u>: Because these are default judgments, we give them no weight as you acknowledge below (they are of "only limited use"). Similar images are available for free or at nominal charge, per below. This image generated zero provable actual damages and certainly did not have any possible affect on the market for your client's subscription food photo service which we are certain no similar business voluntarily would ever use.**

**If you search for "Lobster Dinner" images on iStock there are 6274 images. Here's an equitable example (they're both even titled on a wooden board/surface): <u>https://www.istockphoto.com/photo/red-lobster-on-wooden-cutting-board-gm960160820-262200673?searchscope=image%2Cfilm</u>**

**It's categorized as an ESSENTIAL image, which is a Basic subscription at $29/month for 10 Downloads or $2.90 a download:**

https://www.istockphoto.com/plans-and-pricing

## Statute of Limitations

Regarding statute of limitations, my client did not discover the infringement until February 21, 2024. Under to the discovery rule, I do not see a statute of limitations issue. It is your client's website; therefore, your client is responsible for what is up on its website. I do understand you need to gather information from the website designer. However, it is not my client's burden to *bear* any burden in regards to what is on your client's website and who put it there without authorization.

**RESPONSE: Please explain how exactly your client discovered the infringement and the nature and extent of your clients' steps taken in and after 1998 to identify potential infringement. We are aware of evidence that your client or its agents has engaged in due diligence for many years to attempt to identify infringing images.**

## Photograph Discrepancies

I do not see any discrepancies in the photograph. For your reference, please find attached my client's deposit material sent to the copyright office.

**RESPONSE: We showed that this precise image was not available for sale on your website as of the time of your response.**

## Ownership

My client's photographs were taken by and for PFP and it owns its images.

**RESPONSE: Please provide documentation.  The records provided refer to Adlife.**

This matter is not closed. Please let me know if your client has an offer I can take back to mine. Thank you.



**Meghan Medacier, Esq.**

Attorney

8

175

CopyCat Legal PLLC          T  877-HERO-CAT (877-437-6228)

3111 North University Drive,   E ▓▓▓@copycatlegal.com

Suite 301                      www.copycatlegal.com

Coral Springs, Florida 33065

You Create.
Copycat Protects.™



**From:** Piero Ruiz Rodriguez <▓▓▓@copycatlegal.com>
**Sent:** Monday, April 22, 2024 2:33 PM
**To:** ▓▓▓@preti.com; ▓▓▓@preti.com
**Cc:** Meghan Medacier <▓▓▓@copycatlegal.com>
**Subject:** RE: Susan & Andrew Wetzel d/b/a Inn at Tanglewood Halll

Mr. Schutz and Ms. Charron,

I have made note of your appearance and response. Ms. Medacier, the attorney assigned to this case, is copied above.

Regards,



**Piero Ruiz Rodriguez**

Legal Research Specialist
Copycat Legal PLLC          T  877-HERO-CAT (877-437-6228)

3111 North University Drive,   E ▓▓▓copycatlegal.com

Suite 301                      www.copycatlegal.com

Coral Springs, Florida 33065

You Create.
Copycat Protects.™



9

*Research Specialists are non-attorney staff members who assist attorneys in attempting to resolve copyright claims prior to litigation.*

**From:** Charron, Jean A. <‌@preti.com>
**Sent:** Monday, April 22, 2024 2:22 PM
**To:** Piero Ruiz Rodriguez <‌@copycatlegal.com>
**Cc:** Schutz, Sigmund D. <‌@preti.com>
**Subject:** Susan & Andrew Wetzel d/b/a Inn at Tanglewood Halll

Mr. Rodriguez:

Please find attached Attorney Schutz's letter regarding Prepared Food Photos, Inc. | Inn at Tanglewood Hall.

Jean

**Jean A. Charron**
Legal Assistant to Sigmund D. Schutz and Michael D. Hanify
207.791.3164 Tel
‌@preti.com
LinkedIn | Twitter | preti.com

**Preti**Flaherty
One City Center
P.O. Box 9546
Portland, ME 04112-9546

This E-Mail may contain information that is privileged, confidential and / or exempt from discovery or disclosure under applicable law. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege. If you are not the intended recipient of this communication, and have received it in error, please do not distribute it and notify me immediately by E-mail at jcharron@preti.com or via telephone at 207.791.3000 and delete the original message. Unless expressly stated in this e-mail, nothing in this message or any attachment should be construed as a digital or electronic signature or as a legal opinion.

10

177

Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe Street
Spokane, WA 99201
(509) 795-4863
kirby@kirbylawoffice.com

PHILLIP R. MALONE (pro hac vice)
JUELSGAARD INTELLECTUAL PROPERTY
  AND INNOVATION CLINIC
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 724-1900
pmalone@stanford.edu

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF WASHINGTON

PREPARED FOOD PHOTOS, INC.,
f/k/a  ADLIFE MARKETING
& COMMUNICATIONS CO., INC.,
a  Florida for profit corporation,

        Plaintiff,

        v.

POOL WORLD, INC., a Washington for
profit corporation,

        Defendant.

No. 2:23-cv-00160-TOR

**AFFIRMATION OF
JUSTIN NYGARD**

1. My name is Justin Nygard.  I make this affirmation about communications I have had about a threat of litigation that I received from Daniel DeSouza on behalf of Prepared Food Photos, Inc.

2. My mother Kim Nygard received the attached letter in April of this year.  I called Mr. DeSouza's law firm and spoke to Fernando Baez.  I offered to pay $300 in settlement of the claim.  He said he would take my offer to his client.

---

Affirmation                                                    Case No. 2::23-cv-00160-TOR

3.  When I did not hear back, I sent an email to Mr. DeSouza to ask whether my counteroffer had been accepted. I did not hear anything more until Friday, May 24, when Mr. Baez called me and offered to settle for $25,000. I respond that we both know that one picture is not worth nearly that much, and that no court would order a small business to pay that much if the case had to be fought out between lawyers. He agreed with me but pointed to the payment schedule on the Prepared Food Photos website.

4.  After I told him that we both know that they have this price on their website so that they can push for large payments in the courts, he told me that he understood that I must be reading articles that Paul Levy posts online, and he admitted that their database subscription price is aimed at large businesses, not small businesses like Double D Meats.

5.  I told him that I had heard that other businesses like mine had paid $750 to resolve copyright claims. He said that he had not been around for those but he thought his client would go down to $11,988.

6.  I told him that my counteroffer was $750 as in the other cases. He said he did not think his client would accept that but that he would discuss it with the client.

7.  On May 28, Mr. Baez called back and declined my offer. He said that I should send the demand to our insurance carrier, because this is why businesses have insurance. I said I would not do that. He dropped his demand to $20,000.

8.  I will be mailing this affidavit to CopyCat Legal with our check in the amount of $750. I understand that Pool World will be providing a copy of this affidavit to CopyCat Legal at a mediation session next week.

Pursuant to 28 U.S.C. § 1746, I hereby certify under penalty of perjury that the foregoing is true and correct. Executed on June 4, 2024.



CopyCat Legal PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065

T 877-HERO-CAT (877-437-6228)
E dan@copycatlegal.com

## FRE 408 SETTLEMENT COMMUNICATION

### April 19, 2024

## VIA FEDERAL EXPRESS AND ELECTRONIC MAIL (doubleddmeats@gmail.com)

Double D D Meats, Inc.
Attn: Kim Nygard
5602 232nd St. SW
Suite 104
Mountlake Terrace, WA 98043

*RE:*    *Prepared Food Photos, Inc. v. Double D D Meats, Inc.*

Dear Ms. Nygard:

This law firm represents Prepared Food Photos, Inc. Our client is in the business of licensing high-end, professional photographs for the food industry. Through its website (www.preparedfoodphotos.com), our client offers a monthly subscription service which provides access to/license of tens of thousands of professional images. The rights associated with these images are exclusively owned by our client, and it has spent countless hours and substantial monies in building a business that relies on such exclusive subscription service. The unauthorized use of our client's work deprives it of much-needed income and forces our client to incur substantial costs (monetary and time) in identifying violators and enforcing its rights.

In 1999, our client created a photograph titled "CornedBeefDinner001" (the "Work"). A copy of the Work is exhibited below:



The Work was registered by our client with the Register of Copyrights on August 5, 2016 and was assigned Registration No. VA 2-012-581. A true and correct copy of the Certificate of Registration pertaining to the Work is attached hereto as **Exhibit "A."**

To our knowledge, our client *did not* authorize you or your company to use and/or display the foregoing photograph(s). Notwithstanding this lack of authorization, our client has identified the subject photograph(s) appearing on the following URL:
https://www.facebook.com/photo/?fbid=805461544941737&set=pb.100064336951369.-2207520000



A true and correct copy of screenshot(s) of the website, webpage, and/or social media page, displaying the copyrighted Work, is attached hereto as **Exhibit "B."**

2 | P a g e

181

If our client is mistaken or if you believe the photograph(s) was previously licensed through our client or some other party, please contact us immediately with evidence of the prior licensing. If we do not hear from you *within fourteen (14) days from the date of this letter*, we will be forced to assume that the photograph(s) was *not* properly licensed and will take appropriate legal action to enforce our client's rights.

If the above-described use of our client's photograph(s) was not properly licensed, please understand that such unauthorized use may constitute federal copyright infringement under 17 U.S.C. § 501. In such event, I encourage you to discuss the foregoing with your attorney and/or your insurance carrier as copyright infringement is a serious matter that potentially exposes you to substantial damages/attorneys' fees if we are forced to file a lawsuit on behalf of our client. Keep in mind that attorneys' fees include those you will be forced to incur to mount a defense (if any) *and* potentially the attorneys' fees/costs we will incur to pursue the matter (which may be awarded) if our client prevails in court. It is important that you are cognizant of that exposure in deciding how to respond to this letter. Assuming our client prevails in court, 17 U.S.C. § 504(c)(1) provides our client the right to recover statutory damages (for *each work* that was infringed) "in a sum of not less than $750 or more than $30,000 as the court considers just." Further, if the infringement was committed "willfully," the court may increase the award of statutory damages (for *each work* that was infringed) "to a sum of not more than $150,000."

Courts have not hesitated (where appropriate) to impose substantial statutory damages against copyright infringers of Prepared Food Photos' intellectual property. The below courts have each accepted Prepared Food Photos' minimum $11,988.00/year licensing fee as a measuring stick for actual damages and then proceeded to apply a 2x multiplier thereto in calculating statutory damages. *See, e.g.* Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC, No. 21-82129-CV, 2022 U.S. Dist. LEXIS 205649, at *4 (S.D. Fla. Mar. 22, 2022) (awarding *$23,976.00* in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Fat Daddy Co., No. 22-61671-CIV-SINGHAL, 2022 U.S. Dist. LEXIS 216004 (S.D. Fla. Nov. 29, 2022) (awarding *$23,976.00* in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Perry Wings Plus. Inc., No. 22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *24 (S.D. Fla. Dec. 19, 2022) (awarding *$71,928.00* in statutory damages, representing the $11,988.00 annual license fee for a 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Silver Star of Brooklyn / Brooklyn's Best Inc., No. 1:22-cv-04196-WFK-CLP, 2023 U.S. Dist. LEXIS 22037 (E.D.N.Y. Jan. 23, 2023) (awarding *$71,928.00* in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Trip Rest. LLC, No. 1:22-cv-07953-ER, 2023 U.S. Dist. LEXIS 68835, at *25 (S.D.N.Y. Apr. 14, 2023) (awarding *$47,952.00* in statutory damages, representing the $11,988.00 annual license fee for 2-year use with a 2x multiplier applied thereto).

Please keep in mind both that the facts of these cases may be different than those here (thus militating in favor of a higher or lower award here) and that the above amounts do not account for attorneys' fees/taxable costs which are also recoverable under the Copyright Act. You should

3 | P a g e

consult with an attorney to review the facts of *this* case, whether you have any defenses to the claims that Prepared Food Photos may bring, and what risk you may have in ignoring this letter.

Please note that Section 504 of the Copyright Act provides for the recovery of statutory damages (as explained above) or (at our client's election) actual damages plus "any additional profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." Of course, if forced to litigate this matter, we will fully explore the damages issue and make an election that is most beneficial to our client.

While this is a serious matter, it is not particularly complex. The subject photograph(s) was either properly licensed or it was not. If it was, you should notify us immediately of such licensing so that we may inform our client of such. If it was not properly licensed, then the utilization of our client's work(s) without proper authorization constitutes copyright infringement. In that case, we will either resolve this issue in court (allowing a court to decide the matter) or privately between the parties. If the subject use was not authorized, our client hereby makes the following demand:

> *You shall pay Thirty Thousand Dollars ($30,000.00) within twenty-one (21) days of the date first written above and shall immediately cease and desist from any further use of our client's work(s).*

Please contact us within the above-stated period to either provide evidence of licensing or to discuss resolution of this matter. If confirmation of a license or payment is received as described above, we will forego the filing of a lawsuit. Otherwise, please be aware that our client does not shy away from enforcing its rights in court. It has done so many times before and (as demonstrated above) secured awards commensurate with the above examples.

As stated above, the facts and circumstances of each case are different. However, you should know that "[s]tatutory damages serve the dual purposes of compensation and deterrence: they compensate the plaintiff for the infringement of its copyrights; and they deter future infringements by punishing the defendant for its actions." Broad. Music. Inc. v. George Moore Enters., Inc., 184 F. Supp. 3d 166, 171-72 (W.D. Pa. Apr. 25, 2016). To further the punitive/deterrent nature of statutory damages, courts generally award plaintiffs "statutory damages of *between three and five times the cost of the licensing fees* the defendant would have paid." See Broad. Music. Inc. v. Prana Hosp'y, Inc., 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016); see also Joe Hand Promotions, Inc. v. Alburl, No. 5:18-cv-1935-LCB, 2020 U.S. Dist. LEXIS 29309, at *16-17 (N.D. Ala. Feb. 20, 2020) ("Courts have generally upheld awards of three times the amount of the proper licensing fee as an appropriate sanction to ensure that the cost of violating the copyright laws is substantially greater than the cost of complying with them."); Broad. Music. Inc. v. N. Lights, Inc., 555 F. Supp. 2d 328, 332 (N.D.N.Y. 2008) ("[T]o put infringers on notice that it costs less to obey the copyright laws than to violate them, a statutory damage award should significantly exceed the amount of unpaid license fees. As such, courts often impose statutory damages in an amount more than double unpaid licensing fees where the infringement was not innocent.").

4 | P a g e

Using the above cases as a guide, please keep in mind that our client exclusively operates on a subscription basis. This means that access to one (1) photograph costs the same as access to the entire library of photographs. Our client makes its library available for a minimum of $999.00 per month (https://www.preparedfoodphotos.com/stock-photo-subscription/) (with the price ultimately depending on the number of 'end-users' a subscriber caters to) with a minimum subscription of twelve (12) months https://www.preparedfoodphotos.com/wp-content/uploads/PFP-Terms-of-Use-3-2023.pdf. Thus, irrespective of how long you utilized the subject photograph, the *minimum* license fee that would have been owed is $11,988.00 ($999.00 x 12 months).

You should provide a copy of this letter to your general liability insurance carrier (if one exists), notify them of our client's demand, disclose the identity of such insurer to us, and provide a copy of the subject insurance policy to us. If you believe we are mistaken as to the allegations of copyright infringement made herein, then we encourage you to provide us with copies of any license or other evidence supporting your authorized use of the subject work(s).

This letter further constitutes a demand that you immediately suspend any document destruction policy and preserve any and all documents (such as e-mails, text messages, social media pages/postings, copies of the work(s) at issue, etc.) that may be relevant to the claims or defenses in a forthcoming lawsuit. Please be aware that a federal court may impose significant sanctions if you fail to preserve relevant documents upon reasonable anticipation of litigation.

Finally, while removing the unlicensed photograph(s) from display is required, please understand that *removal alone is insufficient to end this matter*. If your use of the subject photograph is unauthorized and you do not contact us to discuss payment for your existing/past use of the photograph(s), a lawsuit *will* be filed and our client *will* pursue the above-described damages against you.

You should give this matter your immediate attention.

Very truly yours,

Daniel DeSouza, Esq.
For the Firm

Encl.

5 | P a g e

184

**From:** Marshall Black
**Sent:** Wednesday, June 12, 2024 10:41 AM
**To:** Public Citizen Litigation Group <pclg@citizen.org>
**Subject:** Copy Cat/PFP Shakedown in rural southwest Alabama

Paul,

I wanted to share this with you. I found your blog yesterday after a dear friend received the attached shakedown package from CopyCat Legal. My friend, Robbin Chandler, owns and operates Chandlers Grocery in Frisco City, AL, a small farming community in rural southwest Alabama. You will see his purported offense in the attachment (An employee used a photo of raw chicken gizzards, lol, for a sale ad that was posted on Facebook) Robbin's family has been in the grocery business for at least 30-40 years. He, his mother, his father and his uncle have all independently owned stores and pooled their resources as a buying group to be able to purchase foodstuffs at discounted rates. Today Robbin owns and operates the last one of those stores. (Since NAFTA passed all of the communities in our county have been shrinking). Either way I wanted to thank you for the content posted in your blog. It helped me to show Robbin that he was a victim of a scam and that he would NOT be going out of business on account of this. I forwarded your blog to an attorney friend of mine who has agreed to help. (Think Atticus Finch being paid in collard greens and hickory nuts, which, coincidentally, is an interesting thought because Monroe County, where Frisco City is located, is the home of To Kill A Mockingbird author Harper Lee and my hometown, Monroeville, is the setting of the fictional "Maycomb") I wanted to share because I believe you'd like to keep this in your file. Perhaps you will find some small change in their tactics that will aid in your continued work against these crooks. If you would like to contact me or my friend please do not hesitate to reach out. My personal cell number is

Warm regards,
mb


Marshall Black
Vice President

Monroeville, Alabama
Phone
Fax


This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged. This e-mail message and any files transmitted with it contain confidential information intended only for the person(s) to whom this e-mail message is addressed. If you have received this e-mail message in

1