Max K. Archer, WSBA # 54081
Riverside Law Group, PLLC
905 W. Riverside Ave., Ste. 404
Spokane, WA 99201
mka@riverside-law.com
(509) 504-8714
*Attorney for Plaintiff*

Lauren Hausman, *pro hac vice*
CopyCat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
lauren@copycatlegal.com
(877) 437-6228
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PREPARED FOOD PHOTOS, INC. f/k/a ADLIFE MARKETING & COMMUNICATIONS CO., INC.,<br><br>Plaintiff,<br><br>v.<br><br>POOL WORLD, INC.,<br><br>Defendant. | Civil Action No. 2:23-cv-00160-TOR<br><br>**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO VOLUNTARILY DISMISS**<br><br>**September 30, 2024, 6:30 PM**<br><br>**Without Oral Argument** |

Plaintiff[1] hereby files this reply memorandum in further support of its Motion to Voluntarily Dismiss (the "Motion") [ECF No. 49], and states as follows:

---

[1]  Terms not defined herein shall have the meaning ascribed to them in the

1

# INTRODUCTION

Defendant's Corrected Memorandum in Opposition to Plaintiff's Motion to Dismiss this Action without Prejudice (the "Opposition Memorandum") [ECF No. 55] serves only to show why dismissal without prejudice is proper here. Its vitriolic tone is indicative of a case that has transformed from a simple question of whether Defendant infringed a photograph into the Inquisition with respect to Plaintiff's supposed business practices. In so doing, Defendant's counsel has lost sight of (or deliberately ignored) the actual factors relevant to the Court's inquiry and focused entirely on wholly irrelevant material. The sole question before the Court is, will *this Defendant* be prejudiced by Plaintiff being permitted to voluntarily dismiss this lawsuit without prejudice. The answer is resoundingly no.

# ARGUMENT

## I. Loss of Statute of Limitations Defense

The Motion addressed Defendant's statute of limitations defense, noting both that Defendant would not lose its defense by allowing dismissal without prejudice and that the defense appeared implausible given the Ninth Circuit's adherence to the 'discovery' rule for accrual under the Copyright Act. Curiously, the Opposition Memorandum does not seriously address Defendant's statute of limitations defense… indeed, the word "limitations" appears a total of seven (7) Motion.

times in the Opposition Memorandum which does not even cite a single case with respect thereto.

The speculative nature of Defendant's statute of limitations defense is best summarized by Defendant itself. Here, the Opposition Memorandum asserts that:

> Based on discovery obtained to date, and ***further disclosures that could emerge during depositions of PFP's witnesses***, as well as arguments described in detail to Judge Goeke in the mediation as well as to counsel for PFP in a meet and confer, ***Pool World expects to succeed*** on a motion for summary judgment on the limitations issue.[2]

***Nowhere*** in the Opposition Memorandum does Defendant support its confidence in succeeding on summary judgment with actual facts or legal authority. Rather, Defendant's 'prejudice' is supported only with vague allusions to "discovery obtained to date" and suppositions as to what witnesses "could" testify to. This is plainly insufficient in establishing actual prejudice given the stage of this lawsuit (where no summary judgment motion has been filed), the allegations of the Complaint (whereby Plaintiff alleges that, based on its ongoing diligent efforts to identify infringers of its works, it discovered this infringement in June 2022), and unequivocal legal authority that a plaintiff does not even have a general duty to police its copyrights. See, e.g., PK Music Performance, Inc. v. Timberlake, No. 16-CV-1215 (VSB), 2018 U.S. Dist. LEXIS 169652, at *23 (S.D.N.Y. Sep. 30,

---

[2] See Opposition Memorandum, at p. 18.

2018) ("Copyright owners do not have a general duty to police their copyrights."); Parisienne v. Scripps Media, Inc., 2021 U.S. Dist. LEXIS 154960, at *12 (S.D.N.Y. Aug. 17, 2021) ("Parisienne does not have a general duty to police the internet for infringements of his Photographs.  Nor has Scripps provided sufficient evidence or explanation for how Parisienne should have known about the alleged infringement, or been put on inquiry notice, between March 15, 2016 and September 21, 2016, when he retained counsel.  Thus, the Court cannot dismiss Parisienne's copyright infringement claim as time barred.") (internal citations omitted); Minden Pictures, Inc. v. Conversation Prints, LLC, No. 20-12542, 2022 U.S. Dist. LEXIS 179602, at *9 (E.D. Mich. Sep. 30, 2022) ("Copyright holders do not have a general duty to scour or police the internet to determine if their work has been infringed. The discovery rule has been met by Plaintiff since it discovered the infringement in 2019.").

While Defendant is correct that application of the discovery rule is a "fact-intensive inquiry,"[3] the Opposition Memorandum seems to miss the point of providing *any* facts that would call into question whether Plaintiff *should* have discovered the subject infringement earlier.  And while Defendant references the "hundreds of infringement actions"[4] to bolster the notion that Plaintiff is a

---

[3]    Id.

[4]    Id. at p. 10.

sophisticated entity that is somehow not entitled to the discovery rule, the Second Circuit very recently disposed of that very argument in holding there is no "sophisticated plaintiff" exception to the discovery rule. See <u>Michael Grecco Productions, Inc. v. RADesign, Inc.</u>, 2024 U.S. App. LEXIS 20745 (2d Cir. Aug. 16, 2024). Plaintiff is entitled to rely on the discovery rule for claim accrual just as any other plaintiff whose work was infringed may do so.

By failing to point to any fact, document, or legal precedent supporting its statute of limitations defense, Defendant cannot seriously argue that it would be prejudiced by a dismissal without prejudice that still preserves such defense in the event Plaintiff chooses to re-file its claim. The speculative nature of Defendant's statute of limitations defense, coupled with the wholesale lack of evidence proffered in support thereof, does not amount to legal prejudice sufficient to defeat voluntary dismissal here.

## II.    *Loss of Right to Seek Attorneys' Fees*

The substantial bulk of the Opposition Memorandum is dedicated to the notion that Defendant will suffer legal prejudice if its pro bono attorneys are precluded from seeking an award of attorneys' fees. On this point, the Opposition Memorandum sidesteps the prejudice issue and focuses instead on proffering an indictment of Plaintiff and its purported business practices… ironically reinforcing the very reason Plaintiff is seeking dismissal in the first place (Mr. Levy's apparent

obsession with/ire against Plaintiff). Here, the Opposition Memorandum complains ad nauseam that Plaintiff's damages theories are improper[5] and that Plaintiff is somehow 'preying' on innocent infringers by enforcing its exclusive rights under the Copyright Act. The Opposition Memorandum even attaches correspondence between Plaintiff's counsel and attorneys representing other alleged infringers, using such to demonstrate the notion that Defendant somehow sees itself as a champion for thousands of other alleged infringers.

All of this, however, is *irrelevant* to the issue of prejudice. Here, Defendant plainly acknowledges that it has not paid $.01 of fees to any of the attorneys representing it in this action. And while the Opposition Memorandum vaguely asserts that "thousands of dollars of out-of-pocket expense[s]"[6] have been incurred,

---

[5] It is unclear why Defendant focuses much of its Opposition Memorandum to Plaintiff's damages theories and/or the calculation thereof as such has nothing to do with whether dismissal under Rule 41(a)(2) should be granted. It is true that Plaintiff is limited to actual damages only in this lawsuit. Plaintiff's damages theory (which has been accepted by a number of federal courts) is that its subscription model pricing can be utilized to calculate actual damages whereas Defendant contends that Plaintiff's damages are less than $1.00. That is ultimately a decision for the factfinder to make. Whether a jury accepts Plaintiff's damages theories or Defendant's damages theories in this particular case realistically has no bearing on any other case (as any particular factfinder is not bound by the damages calculations of some other factfinder) or, more importantly, any prejudice that Defendant would suffer if dismissal was granted. Indeed, the only "prejudice" is to Mr. Levy who would be deprived of the opportunity to write yet another blog and/or solicit additional clients adverse to Plaintiff.

[6] See Opposition Memorandum, at p. 11.

the Opposition Memorandum and the attachments thereto are noticeably silent in identifying *any* expenses (fees, costs, or otherwise) that Defendant has actually incurred. Indeed, the Affirmation of Pat Flynn (the "Flynn Aff.") [ECF No. 53-18] states only that Defendant's staff has spent time dealing with this case. But that is the same for any defendant sued in any lawsuit. Here, the Opposition Memorandum plainly acknowledges that there are ***no taxable costs*** and no payment by Defendant of attorneys' fees, yet it still suggests that Defendant is somehow prejudiced by its pro bono attorneys being precluded from seeking to recover their fees.

To support its argument, Defendant reiterates that nothing precludes pro bono attorneys from seeking prevailing party fees and that Plaintiff's attorneys (who were retained on a contingency basis) regularly seek prevailing party fees on default judgments. Defendant is correct on those points but misconstrues the issue. The decision to award fees to a prevailing party in a copyright action is governed by the factors set forth in Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994). ***None*** of those factors concern the legal prejudice that is front and center to a Rule 41(a)(2) motion. The question here is whether Defendant can demonstrate some legal prejudice by virtue of its attorneys being precluded from seeking fees, and the Motion makes clear they cannot do so given that Defendant has not itself incurred $.01 of fees or costs in this action (with Plaintiff already agreeing to reimburse

Defendant for any actual taxable costs and to reimburse Defendant for its fees if this action is re-filed).

As noted in the Motion, the posture of this case is remarkably similar to Affordable Aerial Photography, Inc. v. Abdelsayed et al., (Case No.: 9:21-cv-81331-AMC).[7] As the transcript of the hearing therein reflects, Judge Cannon recognized that the defendants' pro bono counsel expended great effort, but the defendants *themselves* had not been put to considerable expense that could be deemed prejudicial by virtue of their nonpayment of fees and the plaintiff's agreement to reimburse any taxable costs. And even though that action had advanced to a point where multiple depositions had been taken, summary judgment motions had been filed, and trial was a mere 5 months away, Judge Cannon found that the relevant factors each supported dismissal without prejudice conditioned on the plaintiff's agreement to reimburse taxable costs/pay fees if that action was re-filed. While Mr. Levy, Mr. Malone, Mr. Kirby, and the Stanford Law Students have certainly been zealous advocates for which their pro bono work should be

---

[7] A true and correct copy of the complete transcript from the subject hearing in Abdelsayed is attached hereto as **Exhibit A.** The Opposition Memorandum complains that the transcript was not attached to the Motion and Defendant's counsel was instead directed to contact the court reporter for a copy thereof, but that is precisely what Plaintiff was forced to do upon receipt of Defendant's complaints. Undersigned counsel did not have a copy of the transcript at the time and was required to order (pay for) the transcript from the court reporter, which was only received on or about September 6, 2024.

commended, the fact remains that Defendant itself will not be prejudiced by dismissal.

Plaintiff does not seek dismissal due to any of Mr. Levy's conspiracy theories. Rather, Plaintiff is simply exhausted by engaging in a lawsuit that has been turned into a three-ring circus by Defendant's counsel. What was a simple, straight-forward matter of copyright infringement has turned into a witch hunt, whereby Defendant's counsel is walking a thin line of possible ethical violations.

That this case has been warped from a simple copyright matter into a persecution of Plaintiff at the behest of Mr. Levy is easily demonstrable. First, as noted in the Motion, Plaintiff has raised its concern about My. Levy soliciting clients, reaching out to Plaintiff's subscribers, and publishing numerous blogs – including about this case (a concern that was brought to counsel's attention). The Opposition Memorandum only further serves to prove that this lawsuit has become a personal matter for Defendant's counsel. This is demonstrated by Mr. Levy's inclusion of an email between Meghan Medacier and Sigmund Schutz, an attorney at Preti, Flaherty, Beliveau & Pachios, Chartered, LLP, on a <u>completely</u> unrelated matter. Mr. Schutz does not work at the same law firm as ***any*** of Defendant's attorneys, nor is the case at bar related in any way to the matter being handled between Ms. Medacier and Mr. Schutz – yet, somehow, and rather perplexingly, Mr. Levy appears to have these emails at the ready to attach to the Opposition

Memorandum as it is plainly his attention to litigate all of Plaintiff's infringement matters here.

Perhaps the most concerning/perplexing conduct by Defendant's counsel is the representation in the Opposition Memorandum that, "in two recent cases, it litigated for several months against lawyers who provided defense services on a contingent basis, and then entered into confidential settlements that concealed PFP's defeat."[8]  This representation is, *at best*, reckless.  The cases referred to in the Opposition Memorandum were resolved pursuant to confidential settlement agreements that Plaintiff cannot comment on.  Mr. Levy's remarks about "PFP's defeat" are belied by correspondence from Kelly Spann and Adrienne Love, the attorneys of record for those defendants, copies of which are attached hereto as **Exhibit "B"**.  Given that neither attorney informed Mr. Levy about the terms of those settlement agreements, it is difficult to imagine how Mr. Levy can fairly represent the outcome of those lawsuits to the Court.  Mr. Levy is unquestionably a fierce advocate for his client, but his conduct throughout this suit thus far stands for the proposition that this case has nothing to do with Defendant and everything to do with an ongoing, personal campaign against Plaintiff itself (with Defendant happening to be the perfect puppet for his escapades).

---

[8]    See Opposition Memorandum, at p. 22.

Dated: September 13, 2024.

Max K. Archer, WSBA # 54081
Riverside Law Group, PLLC
905 W. Riverside Ave., Ste. 404
Spokane, WA 99201
mka@riverside-law.com
(509) 504-8714
*Attorney for Plaintiff*
By: /s/ Max K. Archer
    Max K. Archer Esq.

Lauren Hausman, *pro hac vice*
CopyCat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
lauren@copycatlegal.com
(877) 437-6228
*Attorney for Plaintiff*

By: /s/ Lauren M. Hausman
    Lauren M. Hausman Esq.

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

/s/ Max K. Archer
Max K. Archer Esq.

/s/ Lauren M. Hausman
Lauren M. Hausman Esq.