Max K. Archer, WSBA # 54081
Riverside Law Group, PLLC
905 W. Riverside Ave., Ste. 404
Spokane, WA 99201
mka@riverside-law.com
(509) 504-8714
*Attorney for Plaintiff*

Lauren Hausman, *pro hac vice*
CopyCat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
lauren@copycatlegal.com
(877) 437-6228
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PREPARED FOOD PHOTOS, INC. f/k/a ADLIFE MARKETING & COMMUNICATIONS CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> POOL WORLD, INC., <br><br> Defendant. | Civil Action No. 2:23-cv-00160-TOR <br><br> **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY** |

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff") hereby files this memorandum in opposition to defendant Pool World, Inc.'s ("Defendant") Motion to Compel Discovery (the "Motion") [E.C.F. No. 60].

## INTRODUCTION

Plaintiff asserts a single claim for copyright infringement against Defendant with respect to its alleged unauthorized display of a single photograph on its website. With respect to damages, Plaintiff has proffered a theory that its damages can be assessed by virtue of the annual license amount charged to Plaintiff's subscribers. Defendant, in turn, contends that Plaintiff's damages are limited to a 'few dollars' and/or cents. While the jury will ultimately decide which damages theory to accept (subject to the Court's instruction), Defendant once again approaches the Court with a motion to compel discovery that is grossly overbroad, unduly burdensome, and not proportional to the needs of the case. And while Defendant does (yet again) an impressive job in attacking Plaintiff and its business, it fails to set forth why the discovery it seeks to compel has any relevance to the issues herein or why a more reasonable limitation (which Plaintiff has already offered) is somehow unacceptable.

Defendant's document requests can be boiled down into two classifications: (1) to discover if any subscription agreements are the subject of a negotiated

settlement, Defendant wants to know; and (2), to obtain documents that are 'relevant' to Plaintiff's damage calculation. At first blush, Defendant's requests/arguments may seem sensical, but looking past the smoke and mirrors, Defendant requests documents that quickly (and fatally) fall into taboo discovery classifications – that being overbroad, unduly burdensome, and/or irrelevant. Defendant implores the Court to involve itself in a matter that is frankly redundant. Defendant already has the information relevant to its damages calculation, and therefore the Motion should be denied.

## BACKGROUND

1. On January 18, 2024, Defendant served its Third Set of Requests for Production of Documents (the "Third Request for Production").

2. On February 19, 2024, Plaintiff served its written responses to the Third Request for Production.

3. The Third Request for Production contains three (3) requests which Plaintiff objected to: Request Nos. 14, 15 and 16.

4. Defendant now seeks this Court to compel Plaintiff to produce documents responsive to Document Request Nos. 14, 15, and 16.

5. In the course of discovery, Plaintiff has produced/disclosed to Defendant all of its subscriber agreements, revenues generated from licensing/subscriptions, and revenue as a result of any other source (e.g., Plaintiff's previous relationship with iStock/Getty).


# ARGUMENT

## I.   Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…." Fed. R. Civ. P. 26(b)(1). "In general, the Federal Rules of Civil Procedure permit relatively broad yet tailored and proportional discovery of relevant material." See Rugo v. Hardwick, No. 2:16-CV-00444-SMJ, 2017 U.S. Dist. LEXIS 93485, at *5 (E.D. Wash. June 16, 2017). Discovery, however, "may not be used to conduct a fishing expedition in hopes that some fact supporting an allegation will be uncovered." Inst. for Wildlife Prot. v. Norton, 337 F. Supp. 2d 1223, 1226 (W.D. Wash. 2004).

## II.   Whether the Subscription Agreement is Resultant of a Negotiated Settlement

Request Nos. 14 and 16 seek ***all communications***, spanning over an unspecified number of years, with each of Plaintiff's subscribers. Here, Defendant ostensibly seeks to discover whether any of the subscription agreements were the subject of negotiated settlement agreements.  As a threshold matter, Plaintiff has already disclosed to Defendant that certain subscription agreements were entered into by alleged infringers (with Plaintiff's counsel previously disclosing the identity of multiple such subscribers).  Plaintiff has likewise offered – during the parties' attempt to meet and confer on the subject – to fully identify each and every subscriber that previously received (or whose customer previously received) an

infringement demand from Plaintiff that ultimately resulted in the subscription agreement. Plaintiff likewise offered to either produce such infringement demand letters or to disclose the dates thereof, the recipients thereof, the monetary demand made with respect to each, and which subscribers continued beyond the initial term of their agreements. Without conceding the relevance/admissibility of any such information, Plaintiff's offer would provide full light on Defendant's inquiry without individual review of ***tens of thousands*** of e-mails dating back to 2016.

Defendant, however, rejected this proposal as it was "skeptical" and insists instead on reviewing ***every*** communication – whether internal or with Plaintiff's subscribers – with respect to ***every*** subscriber Plaintiff has had dating back to 2016. Here, Defendant's 'skepticism' is less fishing expedition and more accurately described as a witch hunt to unveil documents that Defendant's counsel can add to his blogging campaign against Plaintiff.[1] That Defendant's counsel is fishing for

---

[1]    See, e.g., https://www.citizen.org/litigation/prepared-food-photos-v-pool-world/; https://clpblog.citizen.org/is-prepared-food-photos-running-a-scam-not-just-a-scheme-to-extract-excessive-rents/; https://clpblog.citizen.org/prepared-food-photos-faces-financial-repercussions-from-copyright-trolling/; https://clpblog.citizen.org/new-trolls-on-the-block-prepared-food-photos-and-daniel-desouza-copycat-legal/.

new information to blog about, however, does not justify the incredibly overbroad and invasive discovery that Defendant is demanding due to its 'skepticism.'

Further, Request Nos. 14 and 16 are undoubtedly overbroad and unduly burdensome. See Gopher Media, LLC v. Spain, No. 3:19-cv-02280-CAB-KSC, 2020 U.S. Dist. LEXIS 215002, at *7 (S.D. Cal. Nov. 17, 2020) ("As a rule, requests for 'any and all' documents or communications (or testimony about those materials) are facially overbroad."); Painters Joint Comm. v. Emp. Painters Tr. Health & Welfare Fund, No. 2:10-cv-01385-JCM-PAL, 2011 U.S. Dist. LEXIS 112505, at *7 (D. Nev. Sep. 28, 2011) ("The court finds the subpoena issued to non-party B&H is overbroad on its face in requesting 'any and all documents' for a five-year period of time involving seven different individuals and entities."); Choquette v. Warner, No. 3:15-CV-05838-BHS-JRC, 2017 U.S. Dist. LEXIS 95889, at *13 (W.D. Wash. June 21, 2017) ("RFP No. 12 is overbroad and burdensome. Plaintiff requests production of all communications, research, reports and decisions pertaining to Gabapentin since January 1, 2012. This request does not meet the requirement of being reasonably targeted and specific. In addition, defendants' burden of producing many years' worth of communications relating to Gabapentin outweighs the likely benefits to plaintiff, and the cost required to produce such communications will harm defendants. Avoiding particularized harm to the party seeking protection constitutes 'good cause' for a protective

order. Thus, the Court grants defendants' motion for protective order as to plaintiff's RFP No. 12."). Notably, because the alleged infringement in this case commenced prior to Plaintiff's Copyright Office registration, Plaintiff may only recover its actual (not statutory) damages/disgorgement of profits. According to Defendant's theory, this amounts to "a few dollars at most."[2] If Defendant ultimately prevails on that theory, then the discovery it now seeks is certainly not proportional to the needs of this case as Plaintiff would be forced to expend thousands of dollars in hosting data with an e-discovery vendor and what is likely dozens if not hundreds of hours in attorney review time to sift through tens of thousands of e-mails for responsiveness.

Finally, Plaintiff seriously questions the relevance of how a subscription agreement is entered into is relevant to Defendant. It is a foundational principle of contract law – parties are free to contract.

## III. Relevance to Damages Calculation

Beyond seeking *all* communications (both internal and with subscribers), Defendant likewise seeks "any and all" records of payments received from subscribers. Such request is painfully overbroad for the same reasons (and same

---

[2]    See Motion, at p. 3; D.E. 21, at p. 4 (same); see also D.E. 54-1, at p. 2 (remarking that Plaintiff's damages are "some fraction of 95 cents").

legal authority) identified above. Here, Defendant believes that seeing every payment made by subscribers (another non-temporally limited request) will yield documents "showing that subscribers dropped their 'subscriptions' immediately at the end of the initial period [which] could help establish that marketplace access to the photos was not the real reason for the subscription."[3]

As discussed above, Plaintiff has already offered (and Defendant has already rejected) to identify subscribers whose agreements were preceded by an infringement allegation and to likewise identify subscribers who terminated such agreement after its initial term. In addition to this, Plaintiff has ***already produced*** (in response to prior document requests) all of the subscriber agreements, documents identifying Plaintiff's licensing revenue on an annual basis, and documents identifying Plaintiff's revenue from its previous business relationship with iStock/Getty (the entity on which the photograph at issue was available for license at the time of the alleged infringement). None of this, however, is apparently good enough for Defendant who (without outright saying so in the Motion) apparently believes a forensic audit of Plaintiff's overall financials are necessary with respect to its actual damages arising from Defendant's 1 infringement.

---

[3] See Motion, at p. 7.

Defendant's theories, while novel, are frankly silly. Although Plaintiff has offered to identify subscribers who did not continue beyond an initial term (thus mooting the issue), the point remains that such information – standing on its own – has no bearing on the outcome of this case. A subscriber who terminates an agreement after the initial (or second, third, etc.) term can do so for a myriad of reasons – i.e., because it no longer needs access to a library of photographs, because its business model has changed, because its financial strength has changed, etc. Unless Defendant is prepared to offer rampant speculation at trial, the production of documents showing "any and all" payments to Plaintiff is not somehow going to make Defendant privy to business decisions made by each individual subscriber.

Defendant seeks irrelevant, burdensome, and overbroad information in a quest to 'dismantle' Plaintiff's damages calculation. Whether Defendant believes that it can do such on summary judgment or not ignores the flashing red light of Defendant's liability for the infringement.

Further, in support of its argument about relevance to damages calculations, Defendant cites to a singular case – <u>Jarvis v. K2, Inc.</u>, 486 F. 3d 536, 534 (9th Cir. 2007), quoting <u>On Davis v. The Gap, Inc.</u>, 246 F.3d 152, 166 (2d Cir. 2001) that damages are based on "not what the owner would have charged, but rather what is the fair market value." That Defendant cherrypicked the aforementioned one sentence is intriguing, as Defendant chose to ignore the entire preceding portion of

the paragraph from which the On Davis quote can be found. In totality, Jarvis says:

> Actual damages for copyright infringement are governed by § 504(b), which states that "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement," but does not elaborate on how the damages are to be calculated. We have held that in situations where the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are "'***what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work***.'" Frank Music Corp., 772 F.2d at 512 (quoting Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1174 (9th Cir. 1977)). Excessively speculative claims of damages are to be rejected, id. at 513, and the "market value approach is an objective, not a subjective, analysis," Mackie v. Rieser, 296 F.3d 909, 917 (9th Cir. 2002); see also On Davis v. The Gap, Inc., 246 F.3d 152, 166 (2d Cir. 2001) ("The question is not what the owner would have charged, but rather what is the fair market value.").

Jarvis, 486 F. 3d at 533–34 (emphasis added). Defendant ignores that actual damages contemplate what a willing buyer would have been required to pay a willing seller, and in lieu only presents to the Court that it does not matter what a copyright owner would have charged. To evaluate non-speculative damages, Plaintiff can (and has) produced subscription agreements. See Dash v. Mayweather, 731 F.3d 303, 318 (4th Cir. 2013) ("To survive summary judgment of an actual damages claim, a copyright holder must show that the thing taken had a fair market value. Evidence of the owner's prior sale or licensing of copyrighted work will satisfy this burden when it is sufficiently concrete." (cleaned up)).

In Request No. 15, Defendant requests **any and all documents** reflecting payments made pursuant to subscription agreements. However, the scope of discovery is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and ***proportional to the needs of the case***, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.…

Fed. R. Civ. P. 26(b)(1) (emphasis added). Defendant's request is not proportional to the needs of the case and is irrelevant. Defendant's request is unduly burdensome and duplicative of information Defendant already has. The notion that Defendant needs to see **any and all** payments being made to Plaintiff to calculate damages or support its damages theory is absurd.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (a) denying the Motion; (b) awarding Plaintiff its reasonable fees and expenses incurred in opposing the Motion pursuant to Fed. R. Civ. P. 37(a)(5)(B); and (c) for such further relief as the Court deems proper.

Dated: November 15, 2024.

Max K. Archer, WSBA # 54081
Riverside Law Group, PLLC
905 W. Riverside Ave., Ste. 404
Spokane, WA 99201
mka@riverside-law.com
(509) 504-8714
*Attorney for Plaintiff*

Lauren Hausman, *pro hac vice*
CopyCat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
lauren@copycatlegal.com
(877) 437-6228
*Attorney for Plaintiff*

By: /s/ Lauren Hausman
    Lauren Hausman Esq.

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

/s/ Lauren Hausman
Lauren Hausman Esq.