Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe Street
Spokane, Washington 99201
(509) 795-4863
kirby@kirbylawoffice.com

Phillip R. Malone (pro hac vice)
Juelsgaard Intellectual Property and Innovation Clinic
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
(650) 724-1900
pmalone@stanford.edu

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PREPARED FOOD PHOTOS, INC., f/k/a  ADLIFE MARKETING & COMMUNICATIONS CO., INC., a  Florida for profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>POOL WORLD, INC., a Washington for profit corporation,<br><br>Defendant. | No. 2:23-cv-00160-TOR<br><br>**REPLY SUPPORTING DEFENDANT'S MOTION TO COMPEL DISCOVERY**<br><br>Hearing December 2, 2024<br>6:30 PM |

Defendant Pool World, Inc., moved to compel plaintiff Prepared Food Photo, Inc. ("PFP") to provide documents needed to dispute the veracity of the contention in PFP's complaint and previous submissions that Pool World's allegedly infringing use of a single stock photo of vegetables on a grill cost PFP nearly $145,000 in actual damages.

PFP's main objection appears to be that producing the responsive documents

would be unduly burdensome and not proportional to the needs of the case. But PFP never raised these burdensomeness claims during the several meet-and-confers that preceded the motion. And its opposition supplies no **evidence** supporting the claim. Indeed, the opposition brief contains several inaccurate statements that lack any record support. Moreover, PFP's last-minute request that it be allowed to answer an interrogatory of its own design in lieu of producing relevant documents does not afford Pool World sufficient assurances of receiving important information that is highly relevant to PFP's claims. Nor does the suggested interrogatory offer Pool World protection against incomplete or deceptive answers, even though it is PFP's history of making false and deceptive statements about its subscription agreements that necessitated the document requests. The motion to compel should be granted

**The Claim of Undue Burden Is Baseless.**

Although relevance was the only ground for refusing to respond to the document requests that PFP raised when the parties met several times to confer about this motion to compel, the opposition is based mainly on a claim of burdensomeness and lack of proportion to the issues in the case. The alleged burden is PFP's purported need to hire an e-discovery vendor to perform a review of "tens of thousands of emails," but no affidavit or other evidence supports this contention, and it appears to be inconsistent with the record thus far. Pool World's document request is carefully limited to PFP's previous document production, which consisted of only

twenty-two (22) subscription agreements that PFP represented were the totality of the agreements between 2017 and 2023.  *See* Levy Fourth Affirmation ¶ 5.  Assuming that PFP's previous document production was complete, the claim that there are at least 20,000 emails ("tens of thousands of emails," according to PFP's opposition brief) amounts to the assertion that there were an average of nearly 1000 emails to, from and about each subscriber.  *Id.*  Without an affidavit establishing a credible basis for this unlikely factual assertion, the Court should not take it at face value.

Moreover, PFP employs "multiple full-time employees" to look for infringing websites, *e.g.,* Exh. AA, Jones Aff. ¶ 8 (page 39); indeed, it admitted in a deposition that copyright enforcement is its staff's main activity.  Levy Third Affirmation Exh. Z at 8-9 (DN 55-16 at pages 196-197).  CopyCat Legal similarly has several "research specialists" as well as paralegals.  *See* https://www.linkedin.com/company/copycat-legal/people/.  An affidavit in a recent case identifies three paralegals in the firm.  *See* https://storage.courtlistener.com/recap/gov.uscourts.cacd.868192/gov.uscourts.cacd.868192.201.1.pdf, ¶ 21.  There is no reason why these staff members cannot be deployed to search and review the emails.

**PFP's Proposed Interrogatory Alternative Is Inadequate**.

The Court should not grant PFP's last-minute demand, made three weeks after the motion to compel was filed and two days before PFP's already-extended deadline to respond to the motion to compel, that PFP be allowed to substitute an answer to an interrogatory for the production of the documents on which that answer would have

to be based.  Levy Fourth Affirmation ¶¶ 3-4 and Exh. BB (page 46).  That alternative ignores the fact that one of Pool World's primary reasons for requesting documents about the subscribers and their payments is that review of the documents provided so far shows that PFP's officers, and the lawyers representing them, appear to have been misrepresenting both the prices charged to subscribers and what the subscribers were obtaining for their payments (that is, it appears that many subscribers were getting released from copyright claims, not future access to photos).  *See* Motion to Compel at 3-5; Levy Fourth Affirmation at ¶¶ 6-8.  Only an examination of the actual communications with subscribers, communications within PFP's ranks about those subscribers, and the income entries showing receipts from the subscribers, can provide Pool World with the assurance that it is getting accurate information about how subscriptions were obtained and what subscription payments were being accepted.  Pool World explained its skepticism before PFP filed its opposition brief, *id.* ¶ 9 and Exh. BB (filing package page 45), yet the opposition makes no effort to explain why that skepticism is unwarranted.

Moreover, the disclosures to which PFP proposes to limit itself using the interrogatory it has crafted would not produce the relevant evidence that Pool World needs to defend itself against PFP's novel and inflated actual damages claims, which is based on its alleged licensing model, for several reasons.  For example, although the proposed interrogatory would require PFP to state which subscriptions were renewed after the initial one-year term, PFP would not have to say at what rate they

were renewed.  Many of the subscription agreements contain an escalator clause, as in ¶ 5(a) of Exhibit U (page 149), enabling PFP to charge the "then-current preparedfoodphotos.com published rates."  Levy Fourth Affirmation ¶ 14 (page 18). Pool World needs to know, for example, whether the 2019 subscription agreement at $99 per month was or was not renewed, and if renewed whether at $99 per month; that is to say, Pool World needs to avoid the possibility of being surprised at trial by a possible claim that any renewal was at some higher rate.  If a renewal was at $99 per month, Pool World would be able to argue that, even if it does not obtain summary judgment rejecting PFP's subscription rate theory, then at the very least, the actual damages for the entire period of time of that PFP was accepting as little as $99 per month would be no more than $99 per month, not the $999 per month that PFP is claiming.  The same information is needed about the subscriptions at $300 per month, $499 per month, and other rates lower than $999.

Pool World also needs to discover not just whether a given subscriber renewed or declined to renew, but also what conversations PFP had with subscribers about any renewal decision, because, as PFP argues, Opp. at 9, mere failure to renew is not **alone** sufficient to show that the original subscription was for the purpose of avoiding a damages claim.  Documents showing renewal or non-renewal are not sought only because they, alone, would show that those subscribers agreed to pay only to avoid being sued for infringement.  To be sure, the communications between PFP and its subscribers, and communications within PFP about subscribers, **could**, depending on

their content, be alone enough to show the reason for a given non-renewal.  But, at the very least, the fact of non-renewal, or the communications about renewal or non-renewal, might provide indications of likely purpose and thus help further focus the third-party discovery.  The emails would also enable Pool World to identify which staff at the subscribers were involved in the negotiations, so that inquiries and if need be subpoenas can be directed to them.  Thus, the requests for those documents could plainly lead to the discovery of admissible evidence about whether specific subscriptions were entered for purposes other than securing future access to PFP's entire database of photos.

An interrogatory response is an inadequate substitute for document production for the additional reason that Pool World has reason to doubt that PFP's answer would be fully trustworthy.  PFP's staff would have an incentive to understate the number of subscribers who signed up after being threatened with suit, and PFP's past conduct suggests that it might well do so.  After all, PFP has given inaccurate information about the minimum monthly subscription payments it was willing to accept over the six-year period since it first obtained such subscribers under its new licensing model.  Because PFP portrays itself as being mostly in the business of selling access to its photos rather than mostly in the business of threatening to sue for damages, it would be in PFP's interest to maximize the number of subscribers that it describes as seeking only future access and minimize the number whose subscriptions were entered after a threat to sue.  But if, for example, PFP's officers were to misstate

the number of subscribers who voluntarily agreed to pay for monthly subscriptions without the threat of litigation, Pool World would have no way of knowing about the error unless it had access to the documents it seeks.[1]

Moreover, the interrogatory answers that PFP proposes to give would not require PFP to admit that any subscriptions were entered for the main purpose of avoiding an infringement action. Only by examining documents showing the course of the negotiations, and if necessary seeking testimony from a given subscriber, can Pool World ascertain the real reason for the subscription.

In addition, the documents sought in this motion are needed to confront the argument, often made by PFP when seeking default judgments in other cases, that the willingness of its potential subscribers to pay $999 per month might be adversely affected if they learn that some competitors are able to use photos without PFP's consent and without being forced to pay an equivalent monthly amount. *See* Levy Fourth Affirmation ¶14 and Exhibit AA, Jones Aff. ¶¶ 7, 21 (pages 39, 42). In spite of requests from Pool World's counsel, PFP has refused to rule out making such an argument in this case, Levy Fourth Affirmation ¶ 1 (although such facts were not

---

[1] The unsworn representation in the Opposition that PFP counsel have already identified "multiple . . . subscribers" who agreed to monthly payments only after being threatened with an infringement claim, Opp. at 4, is also incorrect. Levy Fourth Affirmation ¶¶ 11-12.

included in the Initial Disclosures, Exh. Q, as a basis for PFP's inflated damages

claims). Unless such an argument is precluded for failure to specify the underlying

facts in the Initial Disclosures, Pool World needs to scrutinize PFP's communications

with and about its subscribers to ascertain whether this is a genuine concern, and to

be prepared to respond with admissible evidence if it is.[2]

**PFP's Proportionality Argument Is Also Baseless.**

Finally, PFP also argues that, if Pool World succeeds in its argument that PFP's

subscription-rate theory of actual damages is contrary to governing Ninth Circuit

precedent about how actual damages must be assessed, and thus that PFP's actual

damages are limited to a few dollars for twelve years instead of $145,000, then the

_____

[2] Another false statement of fact in the Opposition, also unsupported by any

evidence, is the assertion that PFP has already "disclosed . . . revenue as a result of

any other source, e.g., Plaintiff's previous relationship with iStockGetty."  page 3

lines 24-25. In fact, Pool World's counsel discovered that, in addition to licensing

through iStock during the pre-2017 period, PFP also licensed access to photos via a

company called Multi-Ad (and various other names). Levy Fourth Affirmation ¶ 11.

The revenue from that licensing has never been disclosed. _Id._ ¶ 13. During the final

meet and confer before this motion was filed, PFP agreed to provide this information,

but since then it has failed to do so, ignoring repeated requests. _Id._  It appears that

an additional motion to compel will be needed.

effort required to review the documents sought by the requests at issue would be excessive compared to the financial stakes in this case. Opp at 7. But $145,000 is the amount of actual damages that PFP claimed and that it continues to pursue. Pool World needs to prepare for trial on the possibility that its argument against that theory will not prevail at the summary judgment stage (and PFP takes the position that the validity of its theory is a jury issue, Opp. at 1).

Ironically, when PFP argues in the default judgment context for a judgment in the mid-five figures, it complains that the defendant's failure to appear prevented it from taking discovery to show the extent of the infringer's profits that resulted from the infringement. *E.g.,* Exhibit AA, Motion for Default Judgment in *PFP v. Patriot Fine Foods*, at page 12 (filing page 33). PFP fully recognizes that actual damages claims far lower than what it seeks here can justify discovery into the defendant's financials. It does not suggest that such discovery would lack proportionality.

If, however, PFP is prepared to stipulate that it seeks actual damages equivalent only to the prices charged by iStock for "royalty-free" licenses for that very same photo, allowing perpetual use, then this entire line of discovery will not be needed.

## CONCLUSION

The motion to compel discovery should be granted.

Respectfully submitted,

1
2
3
4

/s/   Paul Alan Levy
Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

5
6
7
8

/s/ Stephen Kirby
Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe St.
Spokane, Washington 99201
(509) 795-4863
kirby@kirbylawoffice.com

9
10
11
12
13

/s/ Phillip R. Malone
Phillip R. Malone (pro hac vice)
Juelsgaard Intellectual Property
  and Innovation Clinic
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
(650) 724-1900
pmalone@stanford.edu

14

Attorneys for Defendant

15

November 22, 2024

16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that, on this 22nd day of November, 2024, I am filing this reply memorandum and the attached affirmation and exhibits by the Court's ECF system, which will effect service on counsel for plaintiff, Max Archer and Lauren Hausman.


/s/   Paul Alan Levy
Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

November 22, 2024