Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe Street
Spokane, Washington 99201
(509) 795-4863
kirby@kirbylawoffice.com

Phillip R. Malone (pro hac vice)
Juelsgaard Intellectual Property and Innovation Clinic
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
(650) 724-1900
pmalone@stanford.edu

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

PREPARED FOOD PHOTOS, INC.,
f/k/a ADLIFE MARKETING
& COMMUNICATIONS CO., INC.,
a Florida for profit corporation,

    Plaintiff,

v.

POOL WORLD, INC., a Washington for profit corporation,

    Defendant.

No. 2:23-cv-00160-TOR

**FOURTH AFFIRMATION OF PAUL ALAN LEVY**

Hearing December 2, 2024
6:30 PM

1. My name is Paul Alan Levy. I am lead counsel for defendant Pool World. I make this affirmation in support of defendant's reply memorandum in support of its motion to compel plaintiff Prepared Food Photos ("PFP") to produce documents.

2. My co-counsel and I conferred by phone with Daniel DeSouza and Lauren Hausman, counsel for PFP, about the issues raised by this motion to compel in February 2024 (before the case was stayed for mediation), in August 2024 (after the mediation

ended), and October 2024 (after PFP's motion to dismiss without prejudice was denied). On none of those occasions did counsel for PFP raise the issue of the alleged burdensomeness and lack of proportionality of the document request.

3. In fact, during the meet and confers about this motion, the only reason given for not complying with Pool World's discovery request was that the documents sought were not relevant (although the lack of relevance was never explained). On the afternoon of November 13, after having obtained an extension of time to respond to the motion to compel, and two days before PFP's response was due, Mr. DeSouza called me to discuss the motion, and proposed that his firm create an interrogatory addressed to the issues in the motion that his client could answer. Although he mentioned that this would avoid his having to look for and review documents, he did not suggest that reviewing the documents would be unduly burdensome. Nor was burdensomeness mentioned in the follow-up email setting forth the proposed interrogatory.

4. Because the claim of burdensomeness was thus raised for the first time in PFP's opposition brief, we were unable to address the concern or discuss how the level of burden could be moderated. Despite the last-minute nature of PFP's burdensomeness contention, we have written to PFP counsel, questioning the burdensomeness claim but asking for more information and offering to discuss the matter. PFP counsel have not responded.

5. PFP's opposition brief contends (without any supporting affidavit) that responding to the request would require the review of "tens of thousands of emails." That strikes us unlikely because PFP's 2023 document production included only twenty-two subscription

agreements entered after PFP moved in 2016 to a mandatory subscription model for licensing its images. Assuming that "tens of thousands" means at least 20,000 emails, that would mean that PFP would have to have exchanged an average of nearly 1000 emails with or about each subscriber.

6. Moreover, as explained in the motion to compel, at 3-5, the reason why Pool World needed to ask for documents, instead of sending more interrogatories, is that examination of the subscription agreements revealed the falsity of PFP's representations over the past several years, including in materials supplied to Pool World and filings submitted to this Court, that PFP only makes its photographs available to subscribers willing to pay at least $999 per month. Given that history, it was our conclusion that examining the documents about the negotiation of the subscription agreements and any renewals, and documentation of the actual subscription payments, was needed to ensure that we receive accurate information. In addition, we concluded that an answer to the interrogatory that PFP proposed would not address all of the facts (or omissions) that we expect to see in the emails. The perceived inadequacy is addressed below and in Pool World reply brief.

7. In addition to the unsworn assertions about $999 per month in the complaint, Initial Disclosures, and other papers filed last year, Rebecca Jones has repeatedly sworn to the minimum monthly rate of $999 in various affidavits filed in support of default judgment motions. An example is the affidavit which, along with PFP's accompanying memorandum of law, is attached as Exhibit AA (The lettering is sequential to my previous affirmations). Although this affidavit was filed in February 2022, the subscription agreement attached to

my Third Affirmation as Exhibit U shows that the national advertiser that entered that agreement in July 2021 was paying $750 per month.[1] Moreover, the memorandum of law submitted with that affidavit indicated that the minimum monthly payment for the period from 2018 to the date of the filing was $999, Memo at page 11, even though there were several subscription agreements during that time for far lower amounts. For example, the $99 per month subscription agreement that we have mentioned in previous papers, *e.g.*, Third Affirmation, ¶ 17, was entered in May 2019; and the $300 per month agreement was dated October 2019 by the subscriber and November 2019 by PFP. Jones attested to the minimum $999 figure in many subsequent default judgment affidavits, and PFP's default judgment memoranda repeated that misstatement, all within the three-year subscription period to which the $750 monthly rate applied. Pool World should, therefore, not be forced to rely on an interrogatory answer crafted by PFP and its counsel to establish the actual facts.

8. In addition, as explained in my Third Affirmation, our analysis of the post-2016 subscription annual income that PFP claimed in its responses to Interrogatories could not be reconciled with the monthly subscription income reflected in the subscription agreements

---

[1] Given that the case in which that affidavit was submitted, *PFP v. Patriot Foods*, was filed in November 2021, https://www.courtlistener.com/docket/61574357/prepared-food-photos-inc-v-patriot-fine-foods-llc/, the February 2021 date on which the affidavit purports to have been affirmed appears to be an error.

that PFP had produced in discovery. Hence, the fact that an interrogatory answer would be sworn was not a sufficient protection for Pool World's need to ascertain the true facts.

9. PFP's opposition brief refers in passing to the fact that undersigned counsel stated that we are "skeptical" about the sufficiency of the alternative offered by PFP's counsel. I attach as Exhibit BB the email that explained our skepticism, in response to the email from Ms. Hausman that included the proposed interrogatory. PFP has never responded to those concerns.

10. The opposition brief indicates that PFP's counsel had previously told Pool World's counsel that some subscribers had signed up after they had received threats of infringement litigation, and that PFP's counsel had indeed identified "multiple such subscribers" to Pool World's counsel (Page 4 lines 19-23, stating "As a threshold matter, Plaintiff has already disclosed to Defendant that certain subscription agreements were entered into by alleged infringers (with Plaintiff's counsel previously disclosing the identity of multiple such subscribers)."

11. This statement, made without supporting evidence, is not correct. It was Pool World's counsel that discovered, both by reviewing a spreadsheet of reverse image searches and by interviewing subscribers, that many of the subscribers had agreed to pay for subscriptions as a way of paying off claimed damages for infringement. Because we were not able to speak with all of the subscribers, we could not ascertain whether there were any subscribers who only wanted future access to PFP's database of photos. Pool World's counsel also discovered that, in the period before 2016 when PFP changed to a subscription-

only business model, several companies, some of which later became subscribers, had previously obtained PFP's photos from a company other than iStock, variously called Multi-Ad, Kwikee and other names, which made a large number of photos available for download for a bulk price. Apparently, unlike the licenses from iStock, the photos provided through Multi-Ad may not have been available "royalty free"; PFP took the position that, after it ended its relationship with Multi-Ad, the licenses provided by Multi-Ad were no longer effective. Moreover, those photos lacked copyright management information, so these companies had in their databases of photos many images whose copyrights PFP later registered, potentially making these companies unknowingly liable for infringement whenever they used some of the photos in their own databases.

12. It was only after I disclosed these discoveries to opposing counsel in the course of meeting and conferring about this proposed motion (also made in communications during the mediation), that PFP's counsel Daniel DeSouza admitted that several subscribers had signed up in these circumstances. He mentioned **one** of those subscribers by name. He did not identify "multiple such subscribers." However, in an effort to meet and confer about the burdensomeness issue, we have asked him to identify all the subscribers that he believes he mentioned to us.

13. PFP has never disclosed its income from Multi-Ad. When Pool World's counsel conferred with PFP's counsel on October 16, 2024 about this motion to compel, PFP agreed to provide the annual income received from Multi-Ad rather than have that issue included in the motion. Since that meet-and-confer, undersigned counsel have asked PFP's counsel

on several occasions to supply the information as promised. PFP's counsel have not responded to these reminders except that, when asking for an extension of time to respond to the motion to compel, its counsel stated, "PFP is working to determine whether the Multi-Ad financial information is obtainable so that we may produce that as discussed." See Exhibit CC. The information has still not been disclosed.

14. Another reason for needing these documents is the possibility that PFP may argue, as it often does in its submissions in support of default judgments, that even the infringement of the copyright in a single photograph could cost it monthly subscriptions to its entire database because of the nature of its relationships with monthly subscribers. The Jones Affirmation attached as Exhibit AA makes some representations about such facts; later affirmations do so in greater detail. If Pool World has to rebut this argument, it needs to see the communications with and about subscribers. When I asked Mr. DeSouza whether PFP plans to make that argument in this case, his answer was equivocal.

15. Exhibit U, the subscription agreement entered by a national advertiser providing for monthly payments of $750, contains an escalator clause stating that the monthly charge could be unilaterally raised by PFP after one year to match the monthly rate set forth on its website. Paragraph 5(a). Several other subscription agreements disclosed in discovery have similar clauses. This is one reason why Pool World's document requests sought documentation of the actual payments made by the subscribers.

Pursuant to 28 U.S.C. § 1746, I hereby certify under penalty of perjury that the foregoing is true and correct. Executed on November 22, 2024.

/s/ Paul Alan Levy

19