Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe Street
Spokane, Washington 99201
(509) 795-4863
kirby@kirbylawoffice.com

Phillip R. Malone (pro hac vice)
Juelsgaard Intellectual Property and Innovation Clinic
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
(650) 724-1900
pmalone@stanford.edu

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PREPARED FOOD PHOTOS, INC., f/k/a ADLIFE MARKETING & COMMUNICATIONS CO., INC., a Florida for profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> POOL WORLD, INC., a Washington for profit corporation, <br><br> Defendant. | No. 2:23-cv-00160-TOR <br><br> **MOTION TO UNSEAL SUMMARY JUDGMENT PAPERS** <br><br> Hearing August 19, 2025 <br> 6:30 PM |

On July 11, 2025, defendant Pool World filed a motion for summary judgment and supporting papers. Pool World redacted from its filing information produced pursuant in discovery to a protective order. Pool World moves the Court for leave to file on the public docket largely unredacted versions of its summary judgment motion and supporting papers (leaving under seal only the names of companies charged with infringement that sought and secured confidentiality clauses in settlement

agreements), pursuant to the common law and First Amendment right of access to judicial records.

**STATEMENT OF FACTS**

On July 11, 2025, Pool World moved for summary judgment in this copyright case. DN 90. That motion for summary judgment relied, in part, on documents covered by an agreed protective order entered between the parties (DN 79-1) and approved by the Court (DN 82). That order requires Pool World and its counsel to keep confidential certain bank records that plaintiff Prepared Food Photos, Inc., ("PFP") furnished in discovery as well as a ledger of payments made to PFP's counsel, CopyCat Legal, both by subscribers to PFP's library of stock food photo and by other companies that made payments to PFP in settlement of its claims of copyright infringement. The order also protects the identities of companies that entered into subscription agreements where supplied after the date of the order.

The protective order provides that information that it designates as confidential pursuant to the protective order, if presented to the Court, must be submitted under seal, "unless the Court rules that the information may be disclosed publicly," DN 79-1 ¶ 7, and specifies as well that nothing in the protective order limits the Court's ability to determine that a specific record or piece of information should be unredacted. *Id.*

Pool World's summary judgment motion relies, in part, on data extracted from the bank records, payment ledgers and subscription agreements subject to the

protective order. DN 90 at 3, 22, 23. Pool World's motion cites those documents to support its contention that it would not be equitable to allow PFP to invoke an equitable exception (the "discovery rule") to Pool World's argument that PFP's copyright claim is barred by the Copyright Act's statute of limitations defense. That argument is grounded in PFP's unfair and inequitable actions toward Pool World in this case, which the evidence shows were part of a broader pattern of misconduct. In particular, the motion argues PFP has systematically exploited misrepresentations about its subscription agreements to exact infringement settlements far in excess of the legitimate market value of the allegedly infringed photo copyrights. In effect, PFP's copyright enforcement campaign has made each of its individual photos worth far more as the basis for infringement claims than as a reason for paid subscriptions.

In support of its argument about the case's equities, Pool World extracted data from documents obtained in discovery subject to the protective order to show that PFP's income derived from infringement claims far outstrips its income derived from paid subscriptions to its photo library. Annualized summaries of the financial data disclosed in bank records and payment ledgers appear in the Affirmation of Paul Alan Levy (DN 91-3 at ¶¶ 19, 21 and 25) and the Statement of Material Facts (DN 91-2 at ¶ 51). The names of some subscribers also appear in the Affirmation (DN 91-3 at ¶¶ 6, 8 and 9). The motion for summary judgment includes specific numbers drawn from the Statement of Material Facts (at pages 3, 22 and 23). Moreover, four of the exhibits to the Levy Affirmation include more specific data, as follows:

Exhibit OO contains the names of subscribers;[1]

Exhibit RR lists PFP bank record entries that appear to represent infringement claim settlement payments, including the names of payors and the amount paid, and shows the total amounts of apparent infringement payments per year;

Exhibit SS is the actual unredacted CopyCat Legal payment ledger, showing settlement payments from several hundred targets of PFP's infringement claims, including dates of payment, names of payors, and amounts of payments;

Exhibit S2 shows the monthly and annual amounts of payments reflected in Exhibit SS (the CopyCat Legal payments ledger).

Pool World has tried to resolve the issues of confidentiality raised in this motion on an informal basis, as provided by paragraph 6 of the order, repeatedly asking PFP counsel to explain the need for confidentiality. The parties discussed the issues posed by this motion on July 18, 2025, but PFP was unwilling to agree to the removal of any of the redactions or to unseal any portion of any of three exhibits submitted entirely under seal. Accordingly, Pool World now files this motion to unseal the summary judgment motion, supporting affirmation, statement of material facts, and Exhibits OO, RR and S2 in their entirety, and to unredact the payment amounts shown in Exhibit SS, while leaving redacted the names of the payors.

---

[1] Although, pursuant to paragraph 4, the protective order does not bar disclosure of the names of the subscribers as listed in the agreements summarized in Exhibit OO because those documents were disclosed before the date of the protective order, Pool World has endeavored to comply with the spirit of the protective order, as well as its agreement with PFP entered before the protective order was finalized, by filing those names under seal.

**ARGUMENT**

The Supreme Court and the Court of Appeals for the Ninth Circuit have repeatedly upheld the public right of access to judicial records. *E.g., Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984); *Nixon v. Warner Communications*, 435 U.S. 589, 598 (1978); *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-1179 (9th Cir. 2006); *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003); *San Jose Mercury News v. United States District Court*, 187 F.3d 1096, 1102 (9th Cir. 1999); *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995).

> The general rule is that the record of a judicial proceeding is public . . . . Not only do such records often concern issues in which the public has an interest . . . but also the public cannot monitor judicial performance adequately if the records of judicial proceedings are secret.

*Jessup v. Luther*, 277 F.3d 926, 927 (7th Cir. 2002).

The burden is on PFP to provide proper justification for any continued redactions in this case.

> Unless a particular court record is one "traditionally kept secret," a "strong presumption in favor of access" is the starting point. . . . A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the "compelling reasons" standard. . . . That is, the party must "articulate[ ] compelling reasons supported by specific factual findings," . . ., that outweigh the general history of access and the public policies favoring disclosure, such as the "'public interest in understanding the judicial process.'"

*Kamakana,* 447 F.3d at 1178-1179.

In civil cases, *Kamakana* and other Ninth Circuit cases have relied on the common law as the basis for the public's right of access to judicial records in civil cases. Several circuits have also held that the First Amendment also creates a right

of access to judicial records in civil cases. *E.g.*, *Doe v. Public Citizen*, 749 F.3d 246, 265 (4th Cir. 2014); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120-121 (2d Cir. 2006); *Grove Fresh Distributors v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994), but the Ninth Circuit has not addressed that question. Pool World urges the Court to reach that question, if necessary, and for the reasons articulated by the Second, Fourth and Seventh Circuits, rule that the First Amendment, as well as the common law, supports access to unredacted summary judgment papers.

Because the sealed and redacted matter appears in a dispositive motion, and in attachments in support of that motion, the strong presumption in favor of disclosure applies. *Kamakana*, 447 F.3d at 1179, and PFP thus has the burden of offering admissible evidence supplying the basis for "specific factual findings" that support "compelling reasons" for secrecy that could outweigh the public interest in disclosure. With one possible exception, PFP cannot meet this test.

The overall monthly and annual numbers relating to PFP's income from settling infringement claims (included in the motion, the Seventh Levy Affirmation and the Statement of Material Facts, and in Exhibits RR and S2) implicate no protectable privacy interest. And although PFP posited at the outset of the case that identifying its subscribers (whose names appear in Exhibit OO and in the Seventh Levy Affirmation), could cause it competitive harm, PFP has provided no evidence to support that contention. In any event, because it has become apparent that many of the subscriptions were secured by threatening to sue for past alleged copyright

infringement, the claim that PFP would be harmed if its commercial competitors learned the names of subscribers secured by making legal threats lacks credibility. When the parties met to confer about this motion, PFP offered no explanation for maintaining the redactions beyond the existence of confidentiality clauses in agreements secured by CopyCat Legal, and a generalized concern about competitive harm from identification of its subscribers.

Pool World acknowledges the possibility that a cognizable privacy interest protects the names of the companies, revealed in Exhibit SS, which paid various sums in settlement of claims of infringement without also subscribing to PFP's database of photos. Counsel for PFP has represented that these settlement agreements required that the settlement be kept confidential. Assuming that PFP supports this representation with an affidavit sworn on personal knowledge, and assuming further that PFP can show that confidentiality was sought by the payors and not just by PFP, identifying the companies making the payments would implicate the interests of third parties. In that event, Pool World would agree that the names of companies making settlement payments pursuant to a promise of confidentiality should remain under seal. But that privacy interest does not require redaction of the amounts of payments when not identified with specific payor names.

With respect to the payment amounts reflected in the CopyCat Ledger (Exhibit SS), if PFP is able to present persuasive evidence supporting a legitimate interest in confidentiality, at the next stage of the analysis the Court should weigh that showing

against the interests in disclosure, so that it can decide whether the privacy interests are stronger.  On the side of disclosure is the general public interest in understanding the judicial process, and in particular an understanding of how the system of copyright infringement litigation can enable a repeat copyright litigant to extract payments for alleged infringement far in excess of the market value of the single copyrighted photo—a problem that copyright scholars have described as "overclaiming" that creates excessive incentives for enforcement and excessive settlement pressure on infringers.  Depoorter, *Copyright Enforcement in the Digital Age: When the Remedy Is the Wrong*, 66 UCLA L. Rev. 400 (2019); Samuelson and Wheatland, *Statutory Damages in Copyright Law: A Remedy in Need of Reform*, 51 Wm. & Mary L. Rev. 439 (2009).

The Court should also consider the interests of the thousands of small businesses across the country facing claims from PFP, similar to what Pool World has addressed in this litigation, resting on misrepresentations about its subscription agreements.  "[The Ninth Circuit] strongly favors access to discovery materials for individuals engaged in other litigation." *Cordero v. Stemilt AG Services*, 2025 WL 1902292, at *4 (9th Cir. July 10, 2025) (internal quotation marks omitted).  Courts have recognized the need to allow private parties dealing with claims similar to those at issue in litigation in a case subject to a protective order to gain access to protected documents, both to litigate their own cases, *e.g., Hammock by Hammock v. Hoffmann-LaRoche*, 662 A.2d 546, 560 (N.J. 1995); *Beckman Industries, Inc. v. Intl.*

*Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992), and to assess whether and how to settle similar claims. *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987).

Here, future targets of PFP's claims should be able to assess the arguments in this case, based on an open factual record, to decide how to respond when they are challenged. The companies that have already made settlement payments in large amounts based on PFP's deliberate misrepresentations about its subscriptions have an especial interest in learning how lucrative the misrepresentations have been because each of these companies has a potential claim to void its own settlement based on section 164 of the Restatement of Contracts. Knowing how many other companies are in the same situation, and knowing how much money those other companies have paid, could easily help the wronged accused infringers decide whether to retain counsel to pursue such claims, and whether to seek class action status to pursue such claims.

In sum, no private interest in confidentiality of the amounts of settlements extracted from small businesses by misrepresenting the factual basis for potential damages claims would outweigh the public interest in disclosure of the amounts paid by the targets of PFP copyright enforcement campaign. Accordingly, Pool World should be given leave to refile Exhibit SS with that information unredacted, as well as unredacted versions of its motion for summary judgment, Statement of Material Facts, Levy Affirmation, and Exhibits OO, RR and S2.

**CONCLUSION**

The motion for leave to unseal should be granted, in the form of the attached proposed order.

Respectfully submitted,

/s/   Paul Alan Levy
Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

/s/ Stephen Kirby
Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe Street
Spokane, Washington 99201
(509) 795 4863
kirby@kirbylawoffice.com

/s/ Phillip R. Malone
Phillip R. Malone (pro hac vice)
Juelsgaard Intellectual Property
 and Innovation Clinic
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 724-1900
pmalone@stanford.edu

Attorneys for Defendant

July 18, 2025

## CERTIFICATE OF SERVICE

I hereby certify that, on this 18th day of July, 2025, I am filing this reply memorandum and the attached affirmation and exhibits by the Court's ECF system, which will effect service on counsel for plaintiff, Max Archer Daniel DeSouza, and Lauren Hausman. (The unredacted papers filed under seal will be emailed to PFP's with consent).

/s/   Paul Alan Levy
Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

July 18, 2025