Max K. Archer, WSBA # 54081
Riverside Law Group, PLLC
905 W. Riverside Ave., Ste. 404
Spokane, WA 99201
mka@riverside-law.com
(509) 504-8714
*Attorney for Plaintiff*

Lauren M. Hausman, *pro hac vice*
Daniel DeSouza*, pro hac vice*
CopyCat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
lauren@copycatlegal.com
dan@copycatlegal.com
(877) 437-6228
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PREPARED FOOD PHOTOS, INC. f/k/a ADLIFE MARKETING & COMMUNICATIONS CO., INC., | Civil Action No. 2:23-cv-00160-TOR |
| Plaintiff, | |
| v. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO UNSEAL SUMMARY JUDGMENT PAPERS** |
| POOL WORLD, INC., | |
| Defendant. | |

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff") hereby files this memorandum in opposition to defendant Pool World, Inc.'s ("Defendant") Motion to Unseal Summary Judgment Papers (the "Motion to Unseal") [D.E. 93].

## **INTRODUCTION**

The Motion to Unseal seeks to strip confidentiality from certain categories of documents exchanged in this lawsuit – Plaintiff's financial/banking information, the identities of alleged infringers previously pursued by Plaintiff and the amounts paid by such alleged infringers in settlement of such disputes, and the identity of Plaintiff's customers/the amounts such customers pay to subscribe to Plaintiff's image library. Stripped of its suppositions and tiresome attacks on Plaintiff, the Motion to Unseal essentially argues that such documents should be public because: (a) the public has a right to know and (b) other alleged infringers should be able to use such information as leverage in responding to Plaintiff's settlement demands.

As set forth herein, there is no basis to make the subject documents public. First, Defendant itself seemingly forgets that it agreed such documents were categorically confidential pursuant to the parties' joint submission of a protective order in this lawsuit. Defendant now seeks to renege on that joint submission (while presumably continuing to demand confidentiality of its own financial records for which it required Plaintiff to consent was confidential). But even

without Defendant's prior agreement, there are compelling reasons to afford confidentiality to such records. As explained herein, Defendant seeks to make public trade secrets, confidential banking information, and documents for which Plaintiff owes contractual confidentiality obligations to alleged infringers.

## **ARGUMENT**

### I.    **Legal Standard**

Defendant is correct that there is a strong presumption of public access to court-filed documents. A party seeking to seal records related to motions that are dispositive or otherwise "more than tangentially related to the merits of a case" must "meet the high threshold of showing that 'compelling reasons' support secrecy." See Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1098-99 (9th Cir. 2016); Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1180 (9th Cir. 2006). "'[C]ompelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." Kamakana, 447 F.3d at 1179 (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978)).

## II.    The Motion to Unseal Should be Denied

### A.    *The Protective Order*

As a threshold matter, although the Motion to Unseal repeatedly references the Stipulated Confidentiality Agreement and Protective Order (the "Protective Order") [D.E. 79-1],[1] Defendant seemingly ignores the contents thereof.    The Protective Order contains a Schedule A for which "[t]he parties have agreed that the following documents and/or information should be treated as confidential under the agreement and order."  Relevant hereto, included in that Schedule A are the following categories of documents:

A.    The names of plaintiff's subscribers in documents disclosed pursuant to defendant's document requests.

E.    Plaintiff and/or Defendant's financial and/or accounting records, including but not limited to bank statements, tax returns, balance sheets, profit & loss reports, QuickBooks reports, or other records produced demonstrating revenue/income/expenses.

The Protective Order was negotiated by the parties over a substantial period of time – most of which transpired from early/mid February 2025 until April 8, 2025 when the parties filed their joint motion for adoption of the Protective Order. There are ***dozens*** of e-mails between counsel for the parties negotiating the specific

---

[1]    The Court adopted the Protective Order at D.E. 82.

language of both the Protective Order and Schedule A thereto (with counsel for Defendant insistent that Defendant's financial records, tax returns, vendor information, records relating to changes of ownership, etc. were all confidential and could not be publicly filed. Defendant's counsel had every opportunity – over a 2 month period of time – to reject the above-quoted categories of documents suggested by Plaintiff yet chose instead to include such in a joint submission to the Court with an agreement that these specific categories "should be treated as confidential."

Now, three (3) months later, Defendant is arguing that the names of Plaintiff's subscribers and financial information (i.e., monies received for licensing, monies received with respect to settlement of infringement claims, etc.) are not confidential and should be revealed to the world (yet presumably still taking the position that Defendant's information is confidential per the parties' agreement). The Court should not allow Defendant to now renege on its earlier agreement that certain categories were confidential (the very point of which was to avoid disputes such as these). See, e.g. Prodox, LLC v. Prof'l Document Servs., 341 F.R.D. 679, 685-86 (D. Nev. 2022) ("The Court will not countenance an attorney's attempt to renege on his prior agreement as a means to gain a litigation

advantage."); <u>In re Crosby LLC</u>, No. 17-5391, 2021 U.S. Dist. LEXIS 82178, at *9 (E.D. La. Apr. 29, 2021) ("Finally, the Court notes that by agreement counsel had previously agreed to conduct these depositions by remote means via Zoom. The Court will not allow Petitioners to now renege on its earlier agreement considering the totality of circumstances aforementioned."); <u>Taylor v. Prudential Ins. Co. of Am.</u>, 91 F. App'x 746, 747 (3d Cir. 2003) (affirming district court's conclusion "that the plaintiff should be bound by her agreement to keep the proceedings confidential. This contractual restriction was a bargained-for term that should be upheld because only private interests were involved.")

### B.    Defendant Seeks to Unseal Confidential/Trade Secret Information

Even if Defendant had not previously agreed that the documents at issue were confidential, there are compelling reasons for sealing each of the categories the Motion to Unseal seeks to make public. Here, Defendant seeks to unseal (a) Plaintiff's financial data extracted from its bank records, (b) the names of Plaintiff's subscribers, (c) the identity of alleged infringers who paid Plaintiff to settle claims and the amounts of such payments, (d) an unredacted payment ledger from Plaintiff's counsel identifying each alleged infringer who entered into a confidential settlement agreement with Plaintiff and the amounts paid by such

alleged infringer pursuant to such settlement agreement, and (e) a summary of the monthly/annualized receipt of settlement funds by Plaintiff's counsel.

As explained in the August 1, 2025 Declaration of Rebecca Jones (the "Jones Decl."),[2] there are compelling reasons for each of the foregoing categories to remain confidential/sealed.  First, with respect to documents identifying alleged infringers who entered into settlement agreements with Plaintiff and/or the amounts paid by such alleged infringers, all[3] such settlement agreements contain contractual confidentiality clauses requiring the terms of the settlement to be kept confidential.  Revealing such information on a public docket would constitute a breach of Plaintiff's obligations under each and every associated settlement agreement.

The confidentiality of such information protects both Plaintiff and the alleged infringer who has good reason to not reveal to the world that it utilized copyrighted material without a license and paid $xxxxx to settle such dispute, thereby inviting other copyright holders to pursue such alleged infringer and

---

[2]    A true and correct copy of the Jones Decl. is attached hereto as Exhibit "A."
[3]    The only scenario whereby Plaintiff would enter into a settlement agreement with an alleged infringer that does not contain a confidentiality clause would be if the alleged infringer was a state/government agency where state open records laws prohibit the inclusion of a confidentiality clause.  Upon review of the information in the ledgers/other documents Defendant seeks to unseal, it does not appear that any of the settlements at issue would fit such scenario and thus all are subject to confidentiality obligations.

leverage its prior settlements against it.  The same is true with respect to Plaintiff's

own interest in confidentiality.  Although Defendant criticizes Plaintiff for its

efforts in enforcing its copyrights, the grim reality is that Plaintiff's library of

approximately 18,000 photographs is regularly infringed on a mass level.  Plaintiff

is thus faced with a Hobson's choice: (a) do nothing to enforce its copyrights so

that the infringement continues to spread, legitimate licensing of copyrighted

works continues to dissipate, and defense counsel raise "laches" and "waiver"

defenses due to such lack of enforcement, or (b) continue to pursue alleged

infringers, demand the removal of Plaintiff's copyrighted works, and negotiate

settlements for such alleged violations.  Defendant does not hide its intentions in

seeking to unseal Plaintiff's settlement information – it directly states that it wants

to arm alleged infringers with otherwise confidential information to provide

leverage in responding to Plaintiff's settlement demands.  Defendant essentially

desires to create a scenario whereby an alleged infringer can argue 'but you settled

with XYZ alleged infringer for $_____ so why should I pay $____?'  As adeptly

discussed in Malibu Media, LLC v. Doe, No. 13 C 3648, 2014 U.S. Dist. LEXIS

77929, at *6–8 (N.D. Ill. June 9, 2014) (internal quotation marks and citation

omitted):

***It is certainly true that Malibu has filed a very large number of infringement suits in this district and in others. But that is what the holders of intellectual property rights do when they are faced with mass infringement.*** Courts in this district and elsewhere frequently get, for example, lawsuits by trademark owners against multiple websites that sell counterfeited products bearing the trademark owners' marks. By way of example, a review of the index of this district's filings reflects that Coach, Inc. which produces handbags, accessories, footwear, clothing, etc. bearing the company's trademarks, has filed 57 lawsuits in this district alone within the past four years, many of them naming dozens and indeed hundreds of entities as defendants. And a search of this district's index for suits naming "The Partnerships and Unincorporated Associations Identified on Schedule A," a term commonly used by trademark holders to sue multiple websites selling counterfeit products, reveals over 75 such lawsuits in the past year alone by various trademark holders.

As best as the Court can determine, not one of these has led to criticism of the intellectual property right holder for misusing its trademark, let alone to dismissal of a case for that reason. Presumably the reason is that although cases involving the doctrine of copyright misuse refer to suing on a copyright hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively, the predicate for a misuse defense is an attempt to use the copyright monopoly to control something the monopoly does not protect. That element is missing from Doe's affirmative defense. The Court is hard-pressed to see why Malibu Media's large-volume litigation should be treated differently from that of Coach or other intellectual property rights holders simply because Malibu's intellectual property rights involve pornographic films.

While Defendant's counsel has revealed his own personal agenda against Plaintiff through a multitude of fiery blog articles and invitations for alleged infringers to contact him for representation, that personal agenda does not justify divulging the names of alleged infringers and/or the terms – financial or otherwise – of such alleged infringers' settlements.

There is simply no legitimate basis for Defendant's argument.  Defendant is certainly free to argue that Plaintiff's income from infringement is greater than its licensing income (ironically due to the fact that substantially more businesses choose to infringe rather than legitimately license).  Whether such argument has any relevance to Defendant's untested theories and attempts to alter 9th Circuit precedent remains to be seen, but Defendant need not cast light on individual infringer names, amounts they paid, etc. for such argument to be made.

The same is true with respect to Plaintiff's confidential banking records/data.  In this lawsuit, Plaintiff produced (and designated as confidential) 5+ years of bank statements and other financial records (the same categories of documents that Defendant designated as confidential in the Protective Order with respect to its own records).  These records identify Plaintiff's payment vendors,

customers/subscribers who pay Plaintiff and the amounts thereof, Plaintiff's expense outlays, etc. – all of which is private/confidential information.

Finally, and related to Plaintiff's banking records, are those records pertaining to the identity of and payment terms with Plaintiff's customers/subscribers. Plaintiff's non-infringement income arises from its customers/subscribers who license Plaintiff's image library on an annual basis. Plaintiff, together with Bad-Adz (a commonly-owned ad agency who utilizes Plaintiff's image library to create weekly ads for grocery stores and other businesses), competes with dozens, if not hundreds, of other businesses/ad agencies offering similar services (image libraries, ad design, etc.) to the same subset of customers. The names of Plaintiff's subscribers, how long they have been customers of Plaintiff, and the payment terms of their contracts with Plaintiff are all trade secrets in a highly-competitive field fighting for the same customer business. If Plaintiff's competitors became aware of the pricing terms and identity of Plaintiff's customers, they would inevitably contact such customers and offer to undercut Plaintiff in an effort to steal away such customers. The secrecy of Plaintiff's subscriber list and the amounts paid by each provides Plaintiff a competitive advantage in staving off a sea of competitors who would gladly take

the same business from Plaintiff. Further, to the extent individual subscribers pay different amounts than other subscribers (whether due to being grandfathered into favorable pricing or other circumstances), public disclosure of what each individual subscriber is paying will inevitably cause discord between Plaintiff and its subscribers.

There is no basis for public disclosure of any of the information Defendant seeks to unseal. Even setting aside that Defendant already agreed such was confidential, there are compelling reasons for protecting the confidentiality of all such categories of documents. See, e.g. Zhuhai Dingfu Phase I Indus. Energy Conser. Inv. Fund, LP v. Liang Zhang, No. 8:23-cv-02059-MRA-IDE, 2025 U.S. Dist. LEXIS 144355, at *2 n.1 (C.D. Cal. July 16, 2025) ("Because the documents Petitioner seeks to seal contain confidential financial information, the Court agrees that compelling reasons exist to seal Petitioner's filings."); Pulse Elecs. Inc. v. U.D. Elec. Corp., 530 F. Supp. 3d 988, 1031 (S.D. Cal. 2021) ("[S]ources of business information that might harm a litigant's competitive standing may [ ] constitute a compelling reason to seal… such as a company's confidential profit, cost and pricing information[.]"); Regis Metro Assocs. v. NBR Co., LLC, No. 20-cv-02309-DMR, 2022 U.S. Dist. LEXIS 16032, at *38 (N.D. Cal. Jan. 28, 2022) ("All of the

documents contain sensitive business information or may be subject to confidentiality agreements."); <u>Compeer Fin. Aca v. Graham</u>, No. 1:25-cv-00049-JLT-SKO, 2025 U.S. Dist. LEXIS 71758, at *4 (E.D. Cal. Apr. 15, 2025) ("Courts in this district have routinely granted motions to seal parties' financial and banking account information and/or the personally identifiable information of third-party individuals under the compelling reasons standard."). That Defendants' counsel desires such information to be public so that he can continue his public criticism of Plaintiff and solicitation of new clients is not a valid basis to unseal any of the subject records.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (a) denying the Motion and (b) for such further relief as the Court deems proper.


Dated: August 1, 2025.                    RIVERSIDE LAW GROUP
                                          905 W. Riverside Ave.
                                          Suite 404
                                          Spokane, WA 99201
                                          Tel.: (509) 504-8714
                                          mka@riverside-law.com

                                          *Counsel for Plaintiff*

Max K. Archer, Esq.
Washington Bar No. 54081

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
lauren@copycatlegal.com
dan@copycatlegal.com

By: /s/ Daniel DeSouza
     Daniel DeSouza, Esq.
     Lauren M. Hausman, Esq.


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.


/s/ Daniel DeSouza
Daniel DeSouza, Esq.