Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe Street
Spokane, Washington 99201
(509) 795-4863
kirby@kirbylawoffice.com

Phillip R. Malone (pro hac vice)
Juelsgaard Intellectual Property and Innovation Clinic
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
(650) 724-1900
pmalone@stanford.edu

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

PREPARED FOOD PHOTOS, INC.,
f/k/a ADLIFE MARKETING
& COMMUNICATIONS CO., INC.,
a Florida for profit corporation,

    Plaintiff,

v.

POOL WORLD, INC., a Washington for profit corporation,

    Defendant.

No. 2:23-cv-00160-TOR

**REPLY IN SUPPORT OF MOTION TO UNSEAL**

Hearing August 19, 2025
6:30 PM

A.    The Protective Order Preserves the Right to Seek Unsealing. . . . . . . . . . . . . . . . . 1

B.    PFP Has Not Demonstrated the Required "Compelling Reasons" to Keep the Relevant Information Under Seal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Invoking the public's right of access to judicial records filed in connection with a dispositive motion, Pool World moved the Court for leave to unseal several numbers and related information extracted or aggregated from documents provided subject to the agreed protective order in this case and included in Pool World's summary judgment motion and its supporting papers. The Opposition from Prepared Food Photos' ("PFP") admits that Ninth Circuit law gives it the burden of submitting both evidence and argument that "meet the high threshold of showing that 'compelling reasons' support secrecy" of each item of redacted data. Opp. at 3. As shown below, neither the cases that PFP cites in support of continued sealing, nor the conclusory averments of Rebecca Jones, come close to making the requisite showing.

**A. The Protective Order Preserves the Right to Seek Unsealing.**

PFP first contends that Pool World's motion to unseal violates its agreement that certain documents should be treated as confidential under the protective order that was agreed by the parties and entered by the Court. Opp. at 4-6. This argument should be rejected for several reasons.

First, the agreed protective order never constituted an agreement by Pool World that material initially designated as confidential is, in fact, confidential, or that such a designation could not be challenged in court. Paragraph 5 of the protective order states, "The designation of, or acquiescence to, the designation of any documentation . . . or other information as 'CONFIDENTIAL' shall not . . . be construed as an admission the information is, in fact, confidential," and further provides that a "party shall not be obligated

to challenge the propriety of a 'CONFIDENTIAL' designation at the time made, and failure to do so shall not preclude a subsequent challenge." DN 79-1. Moreover, the order preserves to each party the right to ask the Court, pursuant to a motion to unseal, to address the confidentiality issue, *id.* ¶ 7, stating:

> [N]othing in this order shall limit the Court's ability, either sua sponte or in response to a motion to unseal, to determine that a particular record or piece of information should be unredacted. Nor shall anything in this order require that documents or information must be sealed from public disclosure at trial.

Second, the law is clear that treating a document as confidential in a protective order does not necessarily mean that this designation overrides the public's right of access to the document when filed in connection with a dispositive motion. "The reasons for granting a protective order to facilitate pre-trial discovery may or may not be sufficient to justify proscribing the . . . right of access to judicial documents." *Rushford v. New Yorker Mag.*, 846 F.2d 249, 254 (4th Cir. 1988) (cleaned up). Moreover, it is not uncommon for parties to dispute whether the reasons for a protective order at the discovery stage are sufficiently compelling to warrant sealing of materials filed in connection with a dispositive motion. *In re Avandia Mktg., Sales Practices and Products Liab. Litig.*, 924 F.3d 662, 668 (3d Cir. 2019); *Pintos v. P. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010). And none of the cases in PFP's string cite about holding parties to their agreements, Opp. at 5-6, had anything to do with the issue of whether a party could contest the propriety of sealing documents filed with a court after being disclosed under an agreed protective order.

Third, with one exception, Pool World seeks leave to unredact discrete bits of information extracted from documents that were provided pursuant to a confidentiality

agreement. Regardless of whether other portions of these documents may merit confidentiality, PFP's interest in confidentiality of these discrete items does not outweigh the public interest in access to judicial records.

Indeed, as the attached affirmation shows, Pool World made every effort to avoid filing the actual documents from which data has been extracted. First, Pool World asked PFP to stipulate to the accuracy of the data summaries attached as Exhibits to the Seventh Levy Affirmation and recited in the Statement of Material Fact, the Seventh Levy Affirmation, and the motion itself. Eighth Levy Affirmation ¶ 3. Then, when there was no response to most of those requests to stipulate, Pool World included the data summaries (Exhibits RR, TT and S1) and listed numbers in the Statement of Material Fact and Seventh Affirmation, without filing the banking records and other documents from which they had been extracted, in the hope that PFP's opposition to summary judgment would not make the filing of the actual records necessary to verify the numbers. *Id.* ¶¶ 4, 8. The only document provided in discovery that has been filed under seal is a listing of settlement amounts obtained by PFP's current law firm, CopyCat Legal (Exhibit SS). Because, in response to Pool World's request to stipulate the accuracy of the monthly and annual totals, PFP contended that the addition was wrong, Pool World submitted the document so that the Court can assess for itself whether Pool World has added the numbers correctly. *Id*. ¶¶ 4-7.

**B.    PFP Has Not Demonstrated the Required "Compelling Reasons" to Keep the Relevant Information Under Seal.**

Turning now to the merits of the unsealing motion, PFP does not argue that **all** of the

data that Pool World seeks to unseal merits confidential treatment. First, nothing in the Jones Declaration purports to show the need to maintain the confidentiality of the aggregated data derived from records provided in discovery and subject to the protective order, and not tied to any specific subscriber or accused infringer—for example, the monthly and annual totals of income that PFP derives from filing or threatening copyright infringement lawsuits, calculated in Exhibits RR and SS and set forth without any individualized detail in the Statement of Material Fact and Seventh Levy Affirmation, as well as in the Motion. For that reason alone, PFP has failed to provide a compelling reason why any of the numbers redacted from the summary judgment motion, from the Seventh Levy Affirmation, and from the Statement of Material Facts, should remain under seal. Similarly, many of the entries redacted from Exhibit RR simply identify law firms that forwarded infringements payments and state the amounts paid, or identify the general subject of an infringement claim, without naming the payor. None of Jones' averments purport to show a need to keep those law firm names, numbers and descriptions confidential.

As for the redactions that PFP **does** attempt to justify, PFP cites a series of cases noting that some confidential financial information can be properly protected against public disclosure if the evidence shows that it would place a company at a competitive disadvantage. Opp. at 12-13. But none of the cases involved efforts to seal financial information about settlement payments, and beyond that most of the sealing orders in those cases were unopposed. *Compeer Fin. ACA v. Graham,* 2025 WL 1116486, at *1 (E.D. Cal. Apr. 15, 2025) (unopposed motion to seal personal banking details individuals and

commercially sensitive information belonging to third parties); *Regis Metro Assocs v. NBR Co.*, 2022 WL 267443 , at *13-*14 (N.D. Cal., Jan 28, 2022) (parties had met and conferred to reduce sealing to a minimum); *Pulse Elecs v. U.D. Elec. Corp,*, 530 F. Supp. 3d 988, 1031 (S.D. Cal. 2021) (unopposed motions to seal customer information, financial information, or third parties' sensitive business information).[1] There is no showing that PFP is in commercial competition with other companies for the enforcement of its claimed copyrights.

Although PFP's opposition and the Jones Declaration repeatedly invoke the specter of disclosure of "trade secrets", "payment vendors," and "expense outlays," Opp. 3, 10, 11; Jones Decl. ¶ 9, no such data has been submitted with the summary judgment papers. The only financial data at issue is amounts that alleged infringers have paid PFP to settle PFP's

---

[1] Similarly, the long quote from *Malibu Media v. Doe*, 2014 WL 2581168, at *1 (N.D. Ill. June 9, 2014), Opp. at 8-9, is beside the point.  Pool World does not contest PFP's right to bring timely claims to enforce its copyright.  Moreover, unlike PFP, Malibu Media was not primarily in the business of making infringement claims. It had 50,000 paying subscribers to its website of pornographic movies paying $100 per year or more.  *Malibu Media v. Doe*, 950 F. Supp. 2d 779, 787 (E.D. Pa. 2013). PFP, by contrast, receives substantially greater income from enforcement than it does from competing in the marketplace to sell access to stock photos—the degree of difference revealed by the numbers is one fact that Pool World seeks to unseal.

infringement claims. PFP has no basis for arguing the disclosure of settlement figures would place it at a competitive disadvantage, and it has not attempted to provide one.

Instead, PFP contends that it is protecting the interests of the third parties from which it obtained settlements. But although Jones includes a conclusory averment that all of PFP's settlement agreements contain a confidentiality clause, and represents that such clauses protect accused infringers against harm to their reputations, her affidavit falls far short of justifying non-disclosure of settlement amounts and the names of settling targets of infringement claims. First, Jones does not aver that confidentiality was included at the behest of the accused infringers. Indeed, at least with respect to negotiations conducted by PFP's lawyers, nothing in the Declaration shows that she would have personal knowledge of such facts. Additionally, Pool World's investigation of the case produced information suggesting that PFP had imposed confidentiality agreements that were impeding Pool World's efforts to obtain affidavits in support of summary judgment. Seventh Levy Aff. ¶ 36, DN 90-3. But in response to a request to produce any confidentiality agreements with advertising companies that subscribed after they or their clients were accused of copyright infringement, PFP's counsel responded that no such confidentiality agreements existed. *Id*. Having denied that such confidentiality agreements exist in even one category of settled claims, PFP should not be heard to assert that **all** settlements required confidentiality, as a basis for opposing unsealing.

Additionally, because PFP has a policy of destroying documents after four years, *see* Levy Fifth Aff. ¶ 5 (DN 69-1 at 13) and Exhibit EE DN 69-3 at 29-30*,* and has not preserved

any documents created by one of its previous law firms, whose efforts on its behalf ended more than four years ago, Seventh Levy Aff. ¶ 12, DN 90-3, PFP is unable either to review or produce the settlement agreements themselves from that period of time, which would be the best evidence of whether every settlement amount reflected in Exhibit RR contains a confidentiality clause. Moreover, in discovery in early 2024, PFP produced a detailed spreadsheet that identified thousands of companies that it had accused of infringing, and for many of those companies, the amounts of settlement payments that they had made to PFP. Eighth Levy Aff. ¶ 9. PFP supplied this document to Pool World without insisting that Pool World agree to keep the identities or amounts confidential. *Id.* Until the Court ordered disclosure of unredacted bank records this past spring, DN 75, PFP only insisted on confidentiality of the names of its subscribers.

In any event, PFP's professed concern to protect the identities of the companies that have made settlement payments cannot justify continued sealing of the amounts of each individual settlement

Moving on from its settlement payments, PFP argues that disclosing the names of its subscribers (reflected in Exhibit OO) and the terms of its subscription contracts would put it at a competitive disadvantage because it has many competitors in the business of supplying access to food photographs. Opp. at 11-12. This argument is wrong for several reasons. First, nothing in the protective order requires confidentiality of the terms of PFP's subscription agreements, or of the various monthly payments that they require, and several such agreements have already been filed in this case, without any objection from PFP, with

only the subscriber names redacted. Indeed, the complete terms of its subscription agreements are available for all to see on the PFP web site, https://www.preparedfood photos.com/wp-content/uploads/PFP-Terms-of-Use-3-2023.pdf, and the Internet Archive shows that previous versions of the subscription agreement have been posted to the Prepared Food and AdLife websites since 2017. *E.g.*, https://web.archive.org/web/20180818185031/ https://preparedfood photos.com/terms.of.use.php.

Second, PFP expresses concern that current subscribers might be poached by competitors. But that concern has no application to former subscribers, which make up many or even most of the subscription agreements at issue here. At the outset of the case, when Pool World requested disclosure of PFP's subscription agreements, it took at face value PFP's representation that public disclosure of the names of its subscribers could cause it competitive injury. But during discovery, Pool World learned that many of PFP's subscription agreements were secured by making threats to sue for copyright infringement, that many subscribers signed up not to secure future access to photos but to pay off claims of past infringement, and then stopped subscribing after the initial term of one year; hence, they are not current subscribers. This fact is evident from the existing record, because the Stripe spreadsheets of monthly payment records through 2024 that were produced in discovery, and filed in unredacted form at DN 70-3, Exhibit KK, show that even as of late 2024, most of the subscribers whose agreements were produced in discovery are **former** subscribers. The rows of zeroes at the top of the spreadsheets appear to show that former subscribers were no longer making monthly payments. *See also* Exhibit OO, noting

subscribers known not to have renewed. Moreover, although Pool World has not requested discovery of current subscribers, after the motion to unseal was filed, PFP revealed that at least one of its subscribers as of 2024, Company 12 in Exhibit OO, is no longer a subscriber. Eighth Levy Affirmation ¶ 10. Nor has PFP made any showing of which subscribers remain in August 2025. Because PFP has failed to show which of its subscribers are current subscribers, its argument that sealing is needed to prevent poaching of subscribers is unsupported and should be rejected.

Finally, apart from its failure to make an adequate showing of a compelling interest in sealing the data that Pool World seeks to unseal, PFP has not engaged at all with the countervailing public interests served by disclosure. See Pool World Motion to Unseal at pages 8-9. Because PFP has not countered that argument, it has not met its burden of showing that those interests are outweighed by any compelling interest in confidentiality.

## CONCLUSION

The motion to unseal should be granted.

Respectfully submitted,

      /s/   Paul Alan Levy
Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

      /s/ Stephen Kirby
Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe Street
Spokane, Washington 99201
(509) 795 4863
kirby@kirbylawoffice.com

      /s/ Phillip R. Malone
Phillip R. Malone (pro hac vice)
Juelsgaard Intellectual Property
  and Innovation Clinic
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 724-1900
pmalone@stanford.edu

Attorneys for Defendant

August 7, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 7th day of August, 2025, I am filing this memorandum and accompanying affirmation by the Court's ECF system, which will effect service on counsel for plaintiff, Max Archer Daniel DeSouza, and Lauren Hausman.

       /s/   Paul Alan Levy
Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

August 7, 2025