Max K. Archer, WSBA # 54081
Riverside Law Group, PLLC
905 W. Riverside Ave., Ste. 404
Spokane, WA 99201
mka@riverside-law.com
(509) 504-8714
*Attorney for Plaintiff*

Lauren M. Hausman, *pro hac vice*
Daniel DeSouza, *pro hac vice*
CopyCat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
lauren@copycatlegal.com
dan@copycatlegal.com
(877) 437-6228
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PREPARED FOOD PHOTOS, INC. f/k/a ADLIFE MARKETING & COMMUNICATIONS CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> POOL WORLD, INC., <br><br> Defendant. | Civil Action No. 2:23-cv-00160-TOR <br><br><br> **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing &
Communications Co., Inc. ("Plaintiff") hereby files this memorandum in

opposition to defendant Pool World, Inc.'s ("<u>Defendant</u>") Motion for Summary Judgment (the "<u>Motion</u>") [D.E. 90].

## **INTRODUCTION**

The Motion is a house of cards built on a foundation of sand. This case ***should*** be a straightforward case of copyright infringement involving the display of a single photograph (the "<u>Work</u>"). If Plaintiff owns the copyright to the Work (it does) and Defendant was not authorized to display such on its website (it was not), liability is established and the sole question remaining is damages (whether $1.00 as Defendant contends or substantially more as Plaintiff contends). But the Motion ignores liability altogether and instead focuses exclusively on a statute of limitations defense predicated on a wild, unrecognized, and plainly contrary to governing law theory with respect to claim accrual under the discovery rule. In so doing, Defendant invites the Court to reject the discovery ***rule*** altogether, inject exceptions thereto that have never been recognized in any of the thousands of cases interpreting the discovery rule, and to both conflate and misinterpret principles of equitable tolling to reach absurd results. Defendant does all of this without having taken a ***single deposition*** in this case yet is nevertheless confident that its unilateral telling of facts and Plaintiff's intentions/business practices somehow is sufficient to sustain summary judgment in this matter. Suffice to say, Defendant's creativity and unabashed hubris in inviting the Court to reject Ninth Circuit precedent are

insufficient to show an absence of dispute as to the material facts and/or entitlement to judgment as a matter of law.

## ARGUMENT

**I.     The Motion Conflates the Discovery Rule with Principles of Equitable Tolling**

### A.     The Discovery Rule

As the Court knows, 17 U.S.C. § 507 provides that a lawsuit for copyright infringement must be commenced "within three years after the claim accrued." Courts have developed two methods for measuring claim accrual under the Copyright Act – an 'injury' rule whereby the claim begins accruing from the date of infringement or a 'discovery' rule whereby the claim begins accruing from the date the copyright holder knows or should have known of the infringement.  The Ninth Circuit – together with *every* other federal circuit to consider the matter – has adopted the discovery rule as the method of measuring claim accrual.  See Newell v. Inland Publ'ns Inc., No. 2:23-CV-00025-SAB, 2024 U.S. Dist. LEXIS 57005 (E.D. Wash. Mar. 28, 2024) ("There is no statutory or other directive mandating use of the injury rule, *the Ninth Circuit has recently indicated that it 'continue[s] to apply the discovery rule' for determining accrual 'in copyright cases,' and it has not limited its use to a certain types of copyright cases*. (emphasis added) (internal citation omitted); Starz Ent., LLC v. MGM Domestic Television Distrib., LLC, 39 F.4th 1236, 1240–41 (9th Cir. 2022) ("[A] claim

for copyright infringement may accrue when the copyright owner discovers, or reasonably should have discovered, the infringement.").[1]  It is worth noting that the United States Supreme Court has, in the last two (2) years alone, ***rejected*** petitions for certiorari in ***at least three (3)*** cases seeking to challenge application of the discovery rule in copyright infringement matters.  See Warner Chappell Music, Inc. v. Nealy, 601 U.S. 366, 144 S. Ct. 1135 (2024); Hearst Newspapers, L.L.C. v. Martinelli, 144 S. Ct. 2561 (2024); RADesign, Inc. v. Michael Grecco Prods., Inc., No. 24-768, 2025 U.S. LEXIS 2369 (June 16, 2025).

### B.    The Discovery Rule is a Rule of Accrual… Not a Suggestion

The discovery rule is not a novel concept in copyright jurisprudence – it has been uniformly applied in hundreds (if not thousands) of copyright cases across the country.[2]  The crux of the Motion, however, is that the discovery rule is an "equitable" exception to the 'injury' rule and inapplicable when the plaintiff has

---

[1] See Am. Bd. of Internal Med. v. Rushford, 841 F. App'x 440, 441 (3d Cir. 2020) (applying discovery rule); Sohm v. Scholastic Inc., 959 F.3d 39, 49–50 (2d Cir. 2020) (applying discovery rule); Chi. Bldg. Design, P.C. v. Mongolian House, Inc., 770 F.3d 610, 614–16 (7th Cir. 2014) (applying discovery rule); Graper v. Mid-Continent Cas. Co., 756 F.3d 388, 393 & n.5 (5th Cir. 2014) (applying discovery rule)

[2] See, e.g., D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc., 516 F. Supp. 3d 121, 132 (D.N.H. 2021); Chelko v. Does JF Rest., LLC, No. 3:18-CV-00536-GCM, 2019 U.S. Dist. LEXIS 121590, at *5 (W.D.N.C. July 22, 2019); Music v. Atl. Recording Corp., No. 1:18-cv-25474-RAR, 2021 U.S. Dist. LEXIS 43980, at *62 (S.D. Fla. Mar. 8, 2021); Wilson v. Kelly, No. 1:18-CV-05014-JPB, 2020 U.S. Dist. LEXIS 258889, at *16 (N.D. Ga. Mar. 5, 2020).

acted inequitably.  In such circumstances, the Motion argues that the 'injury' rule must be applied.  The obvious issue with Defendant's argument is that the discovery rule has **never** been applied in such manner – indeed, Defendant's argument flies in the face of binding 9th Circuit precedent and is contrary to the holdings in hundreds (if not thousands) of cases applying the discovery rule in copyright cases.  Despite citing thirty-five (35) cases throughout the Motion, Defendant has curiously failed to cite a **single** case supporting the notion that the discovery **rule** is permissive, a suggestion, or otherwise freely ignored under the right set of circumstances.  Defendant thus asks this Court to reject the Ninth Circuit's holding in Starz Ent., LLC and be the **first** court in the country to find an exception to the discovery rule.  The Court should not take Defendant up on its invitation.

Defendant argues that the discovery rule is founded on equitable principles, leapfrogs to the conclusion that the discovery rule is tantamount to equitable tolling, and posits that equitable tolling is only available to an equitable plaintiff.[3] But in so arguing, Defendant conflates two distinct legal principles while broadly misunderstanding both.  The discovery rule is a rule of **accrual** which is distinct and separate from principles of equitable tolling.  This point was recently made

---

[3] See Motion, at p. 9.

clear by the Second Circuit in <u>Michael Grecco Prods., Inc. v. RADesign, Inc.</u>, 112 F.4th 144, 151 (2d Cir. 2024):

> Although the district court claimed to apply the discovery rule, its calculation actually employed the injury rule; ....
> In essence, ***the calculation incorrectly reflected the discovery rule as an equitable extension and not the rule of accrual***.
>
> In the context of the Copyright Act's three-year limitations provision, ***the discovery rule is the rule of accrual, not an equitable tolling or estoppel doctrine. The discovery rule is not an exception to the injury rule that only applies to some infringement claims; it is not a benefit for which only some plaintiffs qualify.*** Rather, "the discovery rule, not the injury rule" determines, in the first place, when a copyright infringement claim accrues.[4]

In <u>RADesign, Inc.</u>, the Second Circuit reversed a district court dismissal of the copyright plaintiff's complaint on the basis that it was a 'sophisticated' entity, experienced with copyright enforcement, that should have discovered the infringement earlier.  Notably (as referenced above), the defendant filed a petition for certiorari to the U.S. Supreme Court (supported by multiple amicus briefs) arguing that the injury rule should be applied in copyright cases.  That petition was rejected, just as two other petitions asking the Supreme Court to find the same were likewise rejected in 2024.

---

[4] Emphasis added.

Importantly, courts in ***this*** Circuit have repeatedly identified the discovery rule and equitable tolling as separate, distinct principles from one another. <u>See, e.g.</u>, <u>Dolby Labs. Licensing Corp. v. Roku, Inc.</u>, No. 24-cv-04660-EJD, 2025 U.S. Dist. LEXIS 138148, at *13 (N.D. Cal. July 18, 2025) ("In addition to the discovery rule, Dolby argues equitable estoppel tolled the statute of limitation.").[5]

This, of course, makes an abundance of sense. While there is some overlap in the concepts, the discovery rule and equitable tolling ultimately involve distinct principles. Generally stated, the discovery rule generally involves a plaintiff's diligence (or lack thereof) in discovering an infringement whereas equitable tolling usually involves instances of inequitable conduct by the defendant to prevent the

---

[5] <u>See also</u> <u>Michael Grecco Prods. v. Livingly Media</u>, No. CV 20-0151 DSF (JCx), 2021 U.S. Dist. LEXIS 117652, at *32 (C.D. Cal. Apr. 16, 2021) (However, under the "discovery rule," a copyright infringement claim accrues — and the statute of limitations begins to run — when a party discovers or, with the exercise of diligence, reasonably should have discovered, the alleged infringement. To defeat a statute of limitations defense, **t**he plaintiff ***has the burden of proving the applicability of the delayed discovery rule <u>or</u> equitable tolling.***") (internal citations omitted) (emphasis added); <u>Bridgeport Music, Inc. v. Hummer Winblad Venture Partners (In re Napster Copyright Litig.)</u>, No. CMDL-00-1369MHP, 2005 U.S. Dist. LEXIS 57223, at *20–21 (N.D. Cal. Feb. 3, 2005) ("[T]he doctrine of equitable tolling, as it has been applied in copyright claims, has typically involved allegations of inequitable conduct by the defendant that prevented the plaintiff from discovering the infringement during the statutory period. To the extent that such equitable considerations are already taken into account by the "discovery rule" that the Ninth Circuit employs to determine when a cause of action for copyright infringement accrues, the court sees no reason for duplicating that analysis by applying the doctrine of equitable tolling to plaintiffs' claims.")

plaintiff from timely discovering its claim.  <u>See, e.g.</u>, <u>Flowers v. Interscope Records, Inc.</u>, No. 09-cv-4388 CW, 2010 U.S. Dist. LEXIS 155481, at *6 (N.D. Cal. Nov. 15, 2010) ("In copyright infringement cases, equitable tolling is typically limited to those instances of inequitable conduct by the defendant that prevented the plaintiff from discovering the infringement during the statutory period."); <u>Rubinstein v. Bank of Am., NA.</u>, No. 23-2410, 2025 U.S. App. LEXIS 10360, at *6 (3d Cir. Apr. 30, 2025) ("Equitable tolling requires active misleading by the defendant, which involves taking steps beyond the challenged conduct itself to conceal that conduct from the plaintiff.") (internal quotation marks omitted); <u>Balsewicz v. Kingston</u>, 425 F.3d 1029, 1034 (7th Cir. 2005) ("The doctrine of equitable estoppel applies to situations involving conduct by the defendant that prevents the plaintiff from suing within the statutory period.") (internal quotation marks omitted).

But even if the discovery rule and equitable tolling were not distinct concepts (they are), the above legal authority highlights one of the more glaring issues with the Motion… there is not a ***single*** court decision (whether under the discovery rule or equitable tolling) taking into account the equitable nature of the ***plaintiff's*** supposed conduct.  A plaintiff's diligence (or lack thereof) is certainly relevant under the discovery rule.  And a ***defendant's*** inequitable conduct in masking/hiding its infringement is certainly relevant when considering equitable tolling.  But those concepts have ***never*** been conflated and flipped upside down to

result in the principle that Defendant espouses here – namely, that the discovery rule and/or equitable tolling somehow depends on anything other than the *plaintiff's diligence* or the *defendant's inequitable conduct*.

Defendant is represented by experienced, competent counsel in this matter – including a Stanford Law School professor (the director of a legal clinic with 180+ full-time students per year)[6] and a public interest law firm which, by their own admissions, have dedicated hundreds of hours to litigating this case. The Motion makes clear that such attorneys have scoured PACER to dissect every lawsuit filed by Plaintiff and generally left no stone unturned in advancing Defendant's arguments. Yet… notwithstanding this Herculean effort, Defendant has not found a single case supporting the notion that a purportedly inequitable plaintiff is not entitled to the benefit of the discovery rule (or equitable tolling) in a copyright infringement matter.

To be clear, there is not a lack of copyright jurisprudence for Defendant to sample. Amongst the more notorious copyright plaintiffs are Malibu Media, LLC ("Malibu Media") and Stike 3 Holdings, LLC ("Strike 3"), each of which hold the copyrights to various pornographic films and pursue copyright infringement actions on a mass scale. Their tactics of suing 'John Doe' defendants, using subpoenas to ISPs to identify bittorrent users who downloaded their films, and then

---

[6] See https://law.stanford.edu/mills-legal-clinic/.

negotiating settlements with such users while using the threat of public exposure/embarrassment are well documented. A search on PACER shows that Strike 3 has filed 15,980 copyright cases since January 1, 2020 while Malibu Media has filed a paltry 6,384 copyright cases over a similar period from 2014 – 2019 (when it appears to have ceased filing new cases).[7]  Malibu Media and its attorneys were sanctioned under Rule 11 for the alarming practice of including in the Complaint the names of graphic pornographic films that were downloaded by the alleged infringer, even though Malibu Media did not own the copyrights thereto (allegedly in an effort to embarrass infringers and force them into an early settlement). See Malibu Media LLC v. Doe, Case No. 3:13-cv-00207 (W.D. Wis. Sept. 10, 2013).  Oft-sanctioned and ultimately disbarred copyright attorney Richard Liebowitz[8] filed over 2,000 copyright lawsuits on behalf of his clients. The point here is there are tens of thousands of copyright cases pursued by what can politely be referred to as unsavory characters who engaged in 'inequitable' conduct in some fashion… yet not a single case supporting the notion that any such plaintiff was not entitled to the discovery rule or somehow estopped from the benefit of equitable estoppel due to the plaintiff's own conduct.  It is not because

---

[7] See August 15, 2025, Declaration of Daniel DeSouza (DeSouza Decl.), ¶¶ 10, 11, attached hereto as **Exhibit "A"**.

[8] See https://petapixel.com/2024/03/22/hero-or-villain-prolific-copyright-troll-lawyer-disbarred-in-ny/; DeSouza Decl., ¶ 12.

there is a dearth of legal authority on the subject[9]… there is simply a dearth of cases (or more accurately, ***no cases***) supporting the proposition that Defendant would have this Court adopt.

Simply put, there is no recognized exception to the discovery rule.  In jurisdictions applying the discovery rule (such as the Ninth Circuit), such rule is applied ***universally*** to all copyright cases without exception.  And while the principle of equitable estoppel somewhat overlaps with the discovery rule, it is a distinct concept focused on the ***defendant's*** inequitable conduct.  Thus, the only question that ***should*** be before the Court is when Plaintiff knew, or should have known, about Defendant's infringement.

## II.    Application of the Discovery Rule as Adopted by the Courts

"[P]laintiffs can establish the applicability of the discovery rule by showing (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." Bluprint Clothing Corp. v. Chico's FAS, Inc., No. 2:23-cv-04226-JLS-BFM, 2024 U.S. Dist. LEXIS 136794, at *6 (C.D. Cal. July 23, 2024) (internal quotation marks omitted).  Notably, prior to filing the

---

[9] A search of PACER shows there were 5,204 copyright cases filed in 2025 (through August 14, 2025), 7,225 copyright cases filed in 2024, 6,599 copyright cases filed in 2023, 5,352 copyright cases filed in 2022, 4,217 copyright cases filed in 2021, and 3,162 copyright cases filed in 2020. See DeSouza Decl., ¶ 13 .  While Plaintiff does not have the resources or energy to scour the dockets of each such case (a feat apparently reserved for Defendant and its counsel), the point remains that at least 31,759 copyright cases have been filed since 2020 alone.

Motion, Defendant did not take a single deposition in this case – whether of Plaintiff's representatives or otherwise.   Thus, other than Plaintiff's written discovery responses, Defendant has not adduced a scintilla of evidence with respect to Plaintiff's discovery of the subject infringement and/or its diligence in doing so.   The Court is thus left exclusively with the sworn declarations of Plaintiff's representatives in applying the discovery rule to this case.

### A.    Plaintiff's Relationship with Getty/iStock

From January 1, 2009 to December 31, 2016 Plaintiff had a contractual relationship with Getty Images (US), Inc./iStock ("Getty").[10] As a part of that relationship, Getty was permitted to offer/sell licenses for approximately 4,700 of Plaintiff's photographs (out of a total of approximately 18,000 photographs in Plaintiff's library).[11]   The Work was amongst the photographs that Getty was permitted to license, and Getty did in fact sell some licenses with respect to the Work.[12]   When Getty sold licenses to Plaintiff's photographs, it would provide Plaintiff with an accounting showing the photograph name and the amounts received… but Getty would not (despite multiple requests over the years) identify the licensee in any manner.[13]   Notably, Defendant alleges that Plaintiff "sent a

---

[10] See August 15, 2025, Declaration of Rebecca Jones (Jones Decl.), ¶ 6, attached hereto as **Exhibit "B"**.

[11] Jones Decl., ¶ 6.

[12] Jones Decl., ¶ 7.

[13] Jones Decl., ¶ 7.

demand letter and then filed suit against Pool World despite the fact that it had no records that would enable it to assess whether Pool World had a license…"[14]  This is, quite frankly, untrue.  Prior to filing any lawsuit involving photographs that were previously with Getty, Plaintiff confirms with Getty whether Getty has any records of the respective defendant having been sold/issued a license.[15] Plaintiff followed its standard process in this case and inquired with Getty whether Defendant had a license through Getty.[16] Getty did not have any record of Defendant having a license to use the Work.[17]

Curiously, the Motion proffers that "to the best of [Defendant's] knowledge… it obtained the image in 2010 from a vendor who had a license to use it."[18] Defendant further contends that "PFP simply does not know and cannot now demonstrate whether Pool World's use was licensed."[19]  Per Defendant's own sworn interrogatory responses,[20] the 'vendor' being referenced is either Traeger or Weber – each of which is a manufacturer/seller of grills/barbeque equipment.

---

[14] See Motion, at p. 18.

[15] Jones Decl., ¶ 8.

[16] Jones Decl., ¶ 8.

[17] Jones Decl., ¶ 8.

[18] See Motion, at p. 19.

[19] See Motion, at p. 20.

[20] See Defendant's Answers to Interrogatories from Plaintiff, dated November 28, 2023 (the "Pool World Interrogatory Responses"), a true and correct copy of which is attached hereto as **Exhibit C**, at Interrogatory No. 9.

Given Defendant's 'belief,' Plaintiff issued subpoenas to both Traeger and Weber for production of any documents indicating the license of the Work and/or communications with Defendant.[21]   Neither Traeger nor Weber had any records responsive to the subpoenas,[22] meaning Defendant's suppositions of being licensed simply rings hollow.  Getty (pre-suit) confirmed that Defendant was ***never*** licensed to display the Work, Getty was subpoenaed (by Defendant) in this lawsuit and confirmed the same to Defendant's counsel, and each of the vendors from which Defendant itself identified it may have received the Work likewise confirmed having no documents supporting the notion they provided the Work to Defendant. Throughout this lawsuit, Defendant has misled the Court into assuming Defendant was at one time licensed to display the Work… but the undisputed facts here are plainly contrary to any such assertion.  Defendant was ***never*** licensed to display the Work, and it has not adduced a shred of evidence suggesting otherwise.

### B.    *Discovery of Infringement*

Plaintiff was diligent in pursuing this matter and did not sleep on its rights. Plaintiff first discovered Defendant's infringement of the Work on May 3, 2022.[23] The infringement was discovered by David Higgins.[24] Mr. Higgins is an employee

---

[21] DeSouza Decl., ¶ 20.

[22] DeSouza Decl., ¶ 20.

[23] Jones Decl., ¶ 14.

[24] Jones Decl., ¶ 14.

of Plaintiff.[25] One of his responsibilities, in an effort to protect Plaintiff's intellectual property, is to cycle through Plaintiff's library of photographs to search the web for infringements.[26] Plaintiff's staff continuously searches images for the specific purpose of diligently enforcing and protecting its copyrights.[27] On June 3, 2022, within one month of discovering the infringement, Plaintiff escalated this matter to CopyCat Legal PLLC to attempt to resolve it prior to litigation.[28]

### C.    *Photo Library Searched to Best of Plaintiff's Ability*

Plaintiff searches its library to the best of its abilities.[29] Plaintiff has approximately 18,000 photos in its library.[30] The library is searched on a rotating basis.[31] To conduct its searches, Plaintiff's staff reverse image searches every image within the library.[32] Plaintiff searches for its photographs on Google.[33] Plaintiff's staff performs these searches one-by-one for each and every photograph in Plaintiff's library, meaning that a reverse image search (and review of the results

---

[25] Jones Decl., ¶ 14.

[26] Jones Decl., ¶ 14.

[27] Jones Decl., ¶ 14.

[28] Jones Decl., ¶ 14.

[29] Jones Decl., ¶ 12.

[30] Jones Decl., ¶ 12.

[31] Jones Decl., ¶ 12.

[32] Jones Decl., ¶ 12.

[33] Jones Decl., ¶ 12.

thereof) is performed for each image every 6 – 8 weeks.[34]   Every image in Plaintiff's library – including the Work – has been searched in this manner at least 6 – 7 times, every year, dating back to at least 2017… meaning Plaintiff's staff has itself searched for infringements of the Work at least 48 – 56 times during such time period.   And while Plaintiff's staff continued performing its own searches, it likewise utilized the services of third-party companies (such as ImageRights International) which use advanced algorithms to crawl the internet and search for matches of a copyright holder's photographs (24 hours/day, 365 days/year) and of its former law firm (Higbee & Associates) which itself had access to similar crawling software.

Notably, the Motion contends that Plaintiff "produced only spreadsheets showing that it conducted one search [for infringements of the Work] three years later than 2016, in 2019, and another in April 2020."[35]   Such contention highlights the problem with Defendant putting the proverbial cart before the horse in filing the Motion prior to taking a single deposition… Defendant flatly misinterprets the spreadsheets produced by Plaintiff and their contents.   Plaintiff keeps a log (the spreadsheets) of *each time it identifies a potential infringement* of its photographs… *not* each time it performs a reverse-image search.[36]   Given that

---

[34]Jones Decl., ¶ 12.

[35] See Motion, at p. 25 (emphasis added).

[36] Jones Decl., ¶ 15.

Plaintiff has approximately 18,000 images in its library and searches each image 6 – 7 times per year, Plaintiff would thus need to log "no result" some 108,000 – 126,000 times per year, every year, for the searches that did not identify a potential infringement.[37]  Doing so would be cost and time prohibitive, and thus Plaintiff only updates the subject spreadsheets when its researchers actually find a potential infringement so that it may be investigated further and pursued if necessary.[38]

### D.    *Plaintiff's Efforts Constitute the Requisite Diligence Under the Discovery Rule*

Somewhat ironically, Defendant on one hand criticizes Plaintiff for being overly-aggressive in searching for and pursuing infringers of its works while on the other hand argues that Plaintiff somehow 'should have' discovered Defendant's infringement earlier.  Plaintiff, however, cannot be overly-diligent and lack diligence at the same time.

Here, Defendant claims that "PFP's extensive and sophisticated reverse image search operations reasonably should have led plaintiff to discover defendant's use of the Grilled Vegetable Photo long before June 2020 (three years before suit was filed)."[39]  But Defendant does not offer any ***facts*** pointing to ***why*** or ***how*** Plaintiff could have discovered the infringement any earlier. Indeed, the

---

[37] Jones Decl., ¶ 15.

[38] Jones Decl., ¶ 15.

[39] See Motion, at p. 9.

notion that a sophisticated/experienced plaintiff is somehow under a greater duty to discover infringements of its work was squarely addressed by the Second Circuit in RADesign, Inc.:

> The district court dismissed the complaint as barred by the Copyright Act's three-year limitations period, reasoning that "sophisticated" copyright infringement plaintiffs cannot benefit from the discovery rule. In essence, the district court imposed an injury-based date of accrual to copyright infringement claims, and viewed the discovery rule as an exception not available to a sophisticated plaintiff. The district court then concluded that because MGP's complaint touted MGP's "sophistication" in discovering and litigating infringements, it was clear from the complaint that MGP should have discovered Ruthie Davis's alleged infringement within three years of when it began.
>
> We disagree. First, the discovery rule determines when an infringement claim accrues under the Copyright Act, regardless of a copyright holder's "sophistication" in detecting and litigating infringements. Second, a copyright holder's general diligence or allegations of diligence in seeking out and litigating infringements, alone, are insufficient to make it clear that the holder's particular claims in any given case should have been discovered more than three years before the action's commencement. There is no "sophisticated plaintiff" exception to the discovery rule, or to a defendant's burden to plead and prove a statute-of limitations defense.[40]

Defendant's belief that Plaintiff should have discovered the image sooner because of its sophistication is **_perplexing_** as the argument is **_squarely contrary_** to

---

[40] See RADesign, Inc., 112 F.4th at 147–148.  As discussed herein, a petition for certiorari review of the Second Circuit's decision in RADesign, Inc. was denied by the Supreme Court.

the law, which has concluded that no such exception/standard exists. "Further, courts in this circuit regularly find that filing other copyright infringement lawsuits does not put a party on more notice that an infringement has occurred." <u>Minden Pictures, Inc. v. The Excitant Grp., LLC</u>, No. CV 20-08146 PA (JPRx), 2020 U.S. Dist. LEXIS 247769 at *8 (C.D. Cal. Dec. 22, 2020).

Defendant relies on <u>Lixenberg v. Complex Media, Inc.</u>, No. 22-CV-354 (RA), 2023 U.S. Dist. LEXIS 4510 (S.D.N.Y. Jan. 10, 2023) to assert that the discovery rule is undermined (e.g., Plaintiff should have found Defendant's infringement sooner) where other copyright infringement actions relate to the Work at issue here. Simply stated, Defendant is incorrect. <u>Lixenberg</u> and its predecessor, <u>Minden Pictures, Inc. v. Buzzfeed, Inc.</u>, 390 F. Supp. 3d 461 (S.D.N.Y. 2019), are easily distinguishable. First, and significantly, both <u>Minden Pictures, Inc. v. Buzzfeed, Inc.</u> and <u>Lixenberg v. Complex Media, Inc.</u> found their footing in the idea of a 'sophisticated litigant' or 'seasoned litigator,' which was subsequently overruled by <u>RADesign, Inc.</u> Second, Ms. Jones' declaration and the expert report of Joe Naylor make clear that, just because Plaintiff has discovered other infringements of the Work, does not mean that Plaintiff could somehow discover Defendant's infringement any earlier.  That Defendant's infringement was ultimately discovered in 2022 does not mean that such would have appeared in earlier searches (it did not).

Importantly, "'multiple courts have held that [plaintiffs] do not have a general duty to police the internet for copyright infringements.'" See <u>Bluprint Clothing Corp.</u>, No. 2:23-cv-04226-JLS-BFM, 2024 U.S. Dist. LEXIS 136794, at *8 (quoting <u>Delano v. Rowland Network Commc'ns LLC</u>, 2020 U.S. Dist. LEXIS 81374, 2020 WL 2308476, at *3 (D. Ariz. May 8, 2020) (quotations omitted) (citing <u>Mackie v. Hipple</u>, 2010 U.S. Dist. LEXIS 82462, 2010 WL 3211952, at *2 (W.D. Wash. Aug. 9, 2010) and <u>Masi v. Moguldom Media Grp. LLC</u>, 2019 U.S. Dist. LEXIS 121733, 2019 WL 3287819, at *5 (S.D.N.Y. July 22, 2019)). And, even if the courts did require plaintiffs to police the internet for copyright infringements, Plaintiff has undoubtedly put forth every effort to police its 18,000+ photographs.  As concisely stated in <u>Design Basics, LLC v. Chelsea Lumber Co.</u>, 977 F. Supp. 2d 714, 725 (E.D. Mich. 2013:

> The Court… rejects Defendants' argument that Plaintiff was under a continuous duty to police its copyright and concludes that Defendants have not pointed to evidence of any ***storm warnings*** that would reasonably have put Plaintiff on inquiry notice of the claimed infringement more than three years prior to filing suit.[41]

Notably, situations where "storm warnings" have been found generally involve where the plaintiff was on inquiry notice of the infringement and failed to follow-up on such notice.  For example, in <u>Color Image Apparel, Inc. v. Jaeschke</u>, No. 2:21-cv-07187-SVW-MAR, 2022 U.S. Dist. LEXIS 101960 (C.D. Cal. June 7,

---

[41] Emphasis added.

2022), the court found that an infringement claim began to accrue when the defendant posted the infringing work on its Instagram account while 'tagging' the plaintiff's official Instagram account (thus sending notice of the post to the plaintiff).  Here, Defendant has not pointed to any 'storm warnings' that would have put Plaintiff on notice of its infringement.  Nor has Defendant put forth any evidence that Plaintiff's reverse-image searches or utilization of third-parties would have discovered the infringement any earlier than May 2022.  This is particularly true given the expert report of Joe Naylor who is the founder/CEO of ImageRights International.[42]  Mr. Naylor specifically opines that, even with he most advanced search technologies, no system can guarantee complete or immediate detection of all infringements and that searches using the same platform (i.e., Google) will likely show different results depending on the date, location, and other factors affecting the search.

Mr. Naylor was himself a key witness in an evidentiary hearing concerning a copyright plaintiff's diligence in discovering a 2017 infringement of its work approximately 5 years later in 2022.  See Affordable Aerial Photography, Inc. v. Prop. Matters United States, LLC, No. 22-cv-14296-Can, 2023 U.S. Dist. LEXIS 82962 (S.D. Fla. May 10, 2023) (report and recommendation adopted at 2023 U.S. Dist. LEXIS 115171 (S.D. Fla. July 5, 2023)).  There, the court found the plaintiff's

---

[42] See expert report of Joe Naylor ("Naylor Report")  attached hereto as **Exhibit "D"**.

efforts – which constituted searching its library of photographs approximately 1 – 2 times per year (compared to Plaintiff's 6 – 7 times per year) – met the diligence threshold under the discovery rule.  In concluding such, the court relied both on Mr. Naylor's testimony (consistent with his expert report here) and the plaintiff's testimony concerning its efforts (which did not include law firms searching on its behalf or the use of third-party crawling software, both of which Plaintiff also utilized).  Defendant has simply not pointed to any facts suggesting that Plaintiff was not diligent here.

## III.    Plaintiff's Purportedly Inequitable Conduct

Even if the Court was inclined to be the first to read an 'equitable plaintiff' requirement into the discovery rule (and thus create new law contrary to the Ninth Circuit and every other court to address the discovery rule), the Motion fails to identify any 'inequitable' conduct by Plaintiff that would justify application of an 'injury' rule here.  Here, Defendant primarily takes issue with Plaintiff's pre-suit demand letter (which requested $30,000.00 to settle Plaintiff's infringement claim) and its subscription model for pricing of its image library.

### A.    *Demand Letters (Locations/Amounts/Legal Counsel)*

Defendant first takes issue with Plaintiff's reference to the prospect of statutory damages/attorneys' fees in its pre-suit demand letter to Defendant notwithstanding that the Internet Archive's Wayback Machine shows a pre-registration save of the infringing webpage (and thus Plaintiff, as acknowledged in

its Complaint, would not be entitled to either form of relief under the Copyright Act). Defendant ignores, however, that Plaintiff was unaware at the demand stage that this matter was a pre-registration infringement.[43] The website on which the infringement appeared (https://poolworld-grillworld.com/) does not have a date of publication thereon (as a blog article or Facebook page would have).[44] Given the amount of searches performed by Plaintiff's staff on an annual basis and the staggering number of infringements found, Plaintiff does not have the resources to review third-party sites such as the Wayback Machine to determine whether historical screenshots of infringements exist – indeed, at the time of its discovery of this infringement, and to this day, utilizing the Wayback Machine was not, and is not, a part of Plaintiff's standard process.[45]

Simply put, the reference to statutory damages/attorneys' fees in the demand letter to Defendant was a mistake. For as long as Plaintiff's current law firm (CopyCat Legal PLLC) has been representing it, the standard practice has been to **_exclude_** references to statutory damages, fee awards under § 505, and/or judgments entered in post-registration cases when it is known that the infringement pre-dated Plaintiff's date of registration.[46] Had Plaintiff known that Defendant's

---

[43] Jones Decl., ¶ 20.

[44] Jones Decl., ¶ 20.

[45] Jones Decl., ¶ 20.

[46] DeSouza Decl., ¶ 7.

infringement was pre-registration, the demand letter would have been sent in the same format as other alleged pre-registration infringements.

Because only a small percentage of alleged infringements ultimately result in the filing of a lawsuit, Plaintiff's current attorneys (who represent hundreds of clients other than Plaintiff) do themselves utilize (prior to drafting a Complaint for filing) the Wayback Machine and other resources to determine, as best as possible, the date of alleged infringements to determine whether statutory damages/attorneys' fees are available under the Copyright Act. But given the volume of alleged infringements discovered by Plaintiff and the hundreds of other clients represented by CopyCat Legal, Plaintiff's attorneys generally limit the use of such resources until it is determined that a lawsuit is necessary and/or in connection with discovery in those pending lawsuits. In this case, a Wayback Machine search was conducted by Daniel DeSouza, Esq., prior to filing the lawsuit in accordance with his firm's general practice, as to ensure that due diligence was exercised with respect to the allegations in the Complaint.[47] For this matter, it was CopyCat Legal PLLC that figured out that this matter was a pre-registration infringement by utilizing the Wayback Machine.[48]

---

[47] DeSouza Decl., ¶ 8.

[48] DeSouza Decl., ¶¶ 8, 9.

Defendant also complains that Plaintiff's pre-suit letter informed Defendant that it would have to hire a lawyer to defend itself, disregarding that appearance through counsel has been a fundamental principle of corporate law for the better part of 200 years. See Local Rule 83-2.2.2 ("No organization or entity of any other kind (including corporations, limited liability corporations, partnerships, limited liability partnerships, unincorporated associations, trusts) may appear in any action or proceeding unless represented by an attorney permitted to practice before this Court under L.R. 83-2.1."); Rowland v. Cal. Men's Colony, 506 U.S. 194, 201–02 (1993) ("It has been the law for the better part of two centuries … that a corporation may appear in the federal courts only through licensed counsel.").

Defendant next complains that the pre-suit letter indicated that litigation of this matter – should it not be resolved – would occur in the United States District Court for the Southern District of Florida. Such statement was not made in bad faith but rather in reliance on well-established legal authority interpreting Florida's long-arm statute in copyright infringement matters.[49]

---

[49] See, e.g., Prepared Food Photos, Inc. v. Myrtle Beach VIP Party Bus., LLC, No. 6:23-cv-122-RBD-LHP, 2023 U.S. Dist. LEXIS 227774, at *7 (M.D. Fla. Dec. 21, 2023) ("The Court also has personal jurisdiction over Defendant because Defendant's alleged copyright infringement against Plaintiff, 'a corporation organized and existing under the laws of the State of Florida with its principal place of business located in Broward County, Florida' (see id. ¶ 1), constitutes a tortious act covered under Florida's long-arm statute, Fla. Stat. § 48.193.") (collecting cases) (report and recommendation adopted at 2024 U.S. Dist. LEXIS 13140 (M.D. Fla. Jan. 25, 2024)); Vallejo v. Narcos Prods., LLC, No. 1:18-cv-23462-KMM, 2019 U.S. Dist. LEXIS 198109, at *5 (S.D. Fla. June 14, 2019) ("Copyright

Finally, Defendant takes issue with Plaintiff's pre-suit $30,000.00 settlement demand to resolve its infringement claim. As discussed above, at the time the demand letter went out, Plaintiff assumed that this was a post-registration infringement, and thus eligible for statutory damages (which range from $200.00 - $150,000.00 under § 504). There is simply nothing unreasonable about Plaintiff selecting a number along the range of available damages as its initial demand for purposes of negotiating with an alleged infringer. See, e.g., Harrington v. Dugar, No. 2:22-cv-08230-HDV(Ex), 2024 U.S. Dist. LEXIS 87439, at *2 (C.D. Cal. May 14, 2024) (excluding evidence of settlement demands made to defendant as irrelevant in copyright infringement lawsuit). Defendant was certainly free to accept, ignore, or counter Plaintiff's settlement demand. See id, at * 9 (C.D. Cal. Aug. 27, 2024) ("A party's willingness to accept or reject a settlement offer is entirely their prerogative…."). But even if Plaintiff knew it was limited to actual damages at the time of its September 16, 2022 demand letter (it did not), at least one court (on a default judgment motion) had accepted Plaintiff's damages theory

---

infringement is a tortious act, and the Florida long-arm statute confers jurisdiction if the effects of the infringement were felt in the state. Here, it is undisputed that Plaintiff is a resident of Florida, and as such the effects of any alleged copyright infringement would be felt in Florida.") (citing Roberts v. Gordy, No. 13-24700-CIV, 2015 U.S. Dist. LEXIS 180644, 2015 WL 11202580, at *2 (S.D. Fla. Apr. 14, 2015)); Roof & Rack Prods., Inc. v. GYB Inv'rs, LLC, No. 13-80575-CV, 2014 U.S. Dist. LEXIS 92334, at *2 (S.D. Fla. July 8, 2014) ("Copyright infringement is a tortious act, and a person who infringes upon a copyright whose owner resides in Florida causes injury inside the state.").

with respect to its $999.00/month subscription model as of that time.  See Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC, No. 21-82129-CV, 2022 U.S. Dist. LEXIS 205649, at *10 (S.D. Fla. Mar. 22, 2022).  In the months that followed, several other courts likewise accepted the damages model – whether in pre-registration or post-registration infringement cases.[50]  As a result, there was nothing inequitable about Plaintiff's demand – especially given that both the Ninth Circuit and now the Supreme Court have unequivocally held that a plaintiff is not limited to any 'lookback' period with respect to calculating damages under the Copyright Act.  See Warner Chappell Music, Inc. v. Nealy, 601 U.S. 366, 371–72 (2024); see also  Starz Ent., LLC, 39 F.4th at 1240–41.

### B.    Plaintiff's 'Inflated' Damages/Subscription Model

As yet another example of Plaintiff's 'inequitable' conduct, Defendant repeatedly asserts that Plaintiff has 'inflated' its damages/misrepresented its subscription model.  It has not.  As set forth in the Jones Decl., Plaintiff offers to license its library of food photography for a minimum of $999.00 per month.  And while it is true that Plaintiff does have certain legacy subscribers paying less than $999.00 per month (due to pre-existing and/or strategic relationships), Plaintiff has not entered into a new subscription after January 1, 2020 for less than $999.00 per

---

[50] See, e.g., Prepared Food Photos, Inc. v. 193 Corp., No. 1:22-cv-03832, 2022 U.S. Dist. LEXIS 205690 (N.D. Ill. Sep. 21, 2022); Prepared Food Photos, Inc. v. Miami Beach 411 Corp., No. 22-23197-CIV-ALTONAGA/Damian, 2022 U.S. Dist. LEXIS 216003 (S.D. Fla. Nov. 28, 2022).

month.  Nor does Plaintiff generally leverage infringement allegations with offers to subscribe to its library.    Indeed, while the Motion references certain subscriptions that followed infringement allegations, it neglects to mention that those alleged infringers ***themselves insisted on becoming subscribers*** to Plaintiff's library.[51]  Plaintiff has not inflated its damages – it has merely proffered a damages theory that, while accepted by over a dozen courts across the country, remains a theory that any court and/or jury remains free to reject/disregard.  It is up to the jury to weigh the evidence and issue a damages award consistent with such evidence – Defendant's arguments that Plaintiff's damages are somehow 'inflated' is wholly improper in support of some 'inequity' argument.  <u>See, e.g.</u>, <u>Malibu Media, LLC v. Peterson</u>, No. 16-CV-786 JLS (NLS), 2017 U.S. Dist. LEXIS 66170, at *14-16 (S.D. Cal. May 1, 2017) (striking affirmative defense that "[t]he measure of damages sought by Plaintiff is unconstitutionally excessive").

Notably, Defendant cites <u>Adlife Mktg. & Communs. Co. v. Buckingham Bros., LLC</u>, No. 5:19-CV-0796 (LEK/CFH), 2020 U.S. Dist. LEXIS 148755 (N.D.N.Y. Aug. 18, 2020) for the proposition that Plaintiff's former counsel (Richard Liebowitz) was sanctioned "in part for demanding excessive damages payments."[52] Defendant misses the mark.    In <u>Buckingham Bros., LLC</u>, Mr.

---

[51] DeSouza Decl., ¶ 5.

[52] <u>See</u> Motion, at p. 16.

Liebowitz was sanctioned (as he had been in various other cases for other clients with respect to the same issue) for failing (or declining) to offer any evidentiary support for his requests for damages.  Mr. Liebowitz continued the practice of refusing to disclose his clients' licensing practices, purported actual damages, etc., and the court admonished him for such behavior.    Mr. Liebowitz was understandably sanctioned for failing to comply with the court's repeated requests to provide some factual basis for an award of damages in the amounts requested.

### C.    Plaintiff's Litigation Activities

In addition to the above, the Motion is replete with misrepresentations that appear to be included solely to tarnish Plaintiff's reputation rather than have any relevance to summary judgment.  For example, Defendant asserts that Plaintiff has never collected on any of its default judgments and that the only purpose for obtaining such "appears to have been to secure judicial rulings that PFP could then use to further its inequitable operation to extract future settlements of excessive damages payments."[53] Beyond being factually untrue (as Plaintiff **has** collected on several default judgments),[54] Defendant's representation is nonsensical.  Plaintiff has filed approximately 250 lawsuits for infringement of its photographs, and not a single one was filed with the mindset it would result in a default judgment.[55]

---

[53] See Motion, at p. 18.

[54] DeSouza Decl., ¶ 15.

[55] Jones Decl., ¶ 23.

Plaintiff files cases with the anticipation they will be litigated and/or resolved between the parties, and Plaintiff has never shied away from litigating the merits of its claims. For example, following denial of the parties' respective summary judgment motions and as trial was quickly approaching, Plaintiff recently resolved a lawsuit that has been pending since January 2022 (with some 342 docket entries). See Prepared Food Photos, Inc. v. Epic Solutions LLC, Case No. 3:22-cv-00037 (W.D. LA). Plaintiff submitted another lawsuit to jury trial last year. See Prepared Food Photos, Inc. v. Nofal LLC, Case No. 2:22-cv-00642 (E.D. Wis.). It has litigated summary judgment motions, taken discovery, engaged in dispositive motion practice, etc. in dozens of lawsuits across the country. That a defendant does not appear, and ultimately defaults, is not a result that Plaintiff has *ever* predicted and/or planned for… and the suggestion otherwise is dubious at best.[56]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (a) denying the Motion and (b) for such further relief as the Court deems proper.

---

[56] Jones Decl., ¶ 23.

Dated: August 15, 2025.

RIVERSIDE LAW GROUP
905 W. Riverside Ave.
Suite 404
Spokane, WA 99201
Tel.: (509) 504-8714
mka@riverside-law.com

*Counsel for Plaintiff*

Max K. Archer, Esq.
Washington Bar No. 54081

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
lauren@copycatlegal.com
dan@copycatlegal.com

By: /s/ Daniel DeSouza
    Daniel DeSouza, Esq.
    Lauren M. Hausman, Esq.


## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.


/s/ Daniel DeSouza
Daniel DeSouza, Esq.