Max K. Archer, WSBA # 54081
Riverside Law Group, PLLC
905 W. Riverside Ave., Ste. 404
Spokane, WA 99201
mka@riverside-law.com
(509) 504-8714
*Attorney for Plaintiff*

Lauren M. Hausman, *pro hac vice*
Daniel DeSouza, *pro hac vice*
CopyCat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
lauren@copycatlegal.com
dan@copycatlegal.com
(877) 437-6228
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PREPARED FOOD PHOTOS, INC. f/k/a ADLIFE MARKETING & COMMUNICATIONS CO., INC., <br><br>Plaintiff,<br><br>v.<br><br>POOL WORLD, INC.,<br><br>Defendant. | Civil Action No. 2:23-cv-00160-TOR <br><br> DECLARATION OF REBECCA JONES |

Rebecca Jones does hereby declare pursuant to 28 U.S.C. § 1746:

1.  I am over the age of 18 and otherwise competent to testify. I make the following statements based on personal knowledge.

1

2. I am the Director of Intellectual Property of plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff").

3. I submit this declaration in support of Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (the "Motion") [D.E. 90].

4. Plaintiff has a small staff consisting of both part-time and full-time employees.

5. To work diligently to protect Plaintiff's copyrights, most of the work done by Plaintiff's employees consists of protecting Plaintiff's intellectual property. However, Plaintiff's primary goal has always been, and remains to be attempting to license its library to willing subscribers.

6. From January 1, 2009 to December 31, 2016 Plaintiff had a contractual relationship with Getty Images (US), Inc./iStock ("Getty"). As a part of that relationship, Getty was permitted to offer/sell licenses for approximately 4,700 of Plaintiff's photographs (out of a total of approximately 18,000 photographs in Plaintiff's library).

7. The Work was amongst the photographs that Getty was permitted to license, and Getty did in fact sell some licenses with respect to the Work. When Getty sold licenses to Plaintiff's photographs, it would provide Plaintiff with an accounting showing the photograph name and the amounts received. However,

Getty would not, and will not, (despite multiple requests over the years) identify the licensees in any manner, claiming such to be Getty's trade secrets, confidential, or otherwise not subject to disclosure.

8. At the time this lawsuit was filed, Plaintiff's practice was to confirm with Getty whether Getty had any records of the respective defendant having a license through Getty. This case was no different. Plaintiff followed its standard process in this case and inquired with Getty whether Defendant had a license through Getty. Getty did not have any record of Defendant having a license to use the Work.

9. Plaintiff does not use sophisticated technology to search for infringements. Plaintiff generally searches for infringements by conducting manual reverse image searching.

10. Since 2017, Plaintiff has utilized Google reverse image searching (https://www.google.com/imghp?hl=en&authuser=0&ogbl) to search for potential infringements. This process entails manually uploading a photograph into the Google Images platform and searching therein for matching results. One of Plaintiff's employees then examines any matches to determine whether such was an authorized licensee of Plaintiff's photographs or potentially an infringer. The size of a business is not a factor in determining an infringement.

11. When Plaintiff discovers an infringement, Plaintiff's general practice is to send a cease and desist/demand letter to the infringer through its attorney, which seeks payment subject to its violation of the Copyright Act and removal of the infringement from the infringer's website.

12. Plaintiff searches its library to the best of its abilities. Plaintiff has approximately 18,000 photos in its library. The library is searched on a rotating basis. To conduct its searches, Plaintiff's staff reverse image searches every image within the library. Plaintiff searches for its photographs on Google (as described above). Plaintiff's staff performs these searches one-by-one for each and every photograph in Plaintiff's library, meaning that a reverse image search (and review of the results thereof) is performed for each image every 6 – 8 weeks. Every image in Plaintiff's library – including the Work – has been searched in this manner at least 6 – 7 times, every year, dating back to at least 2017… meaning Plaintiff's staff has itself searched for infringements of the Work at least 48 – 56 times during such time period.

13. And while Plaintiff's staff continued performing its own searches, it likewise utilized the services of third-party companies (such as ImageRights International) which use advanced algorithms to crawl the internet and search for matches of a copyright holder's photographs (24 hours/day, 365 days/year) and of

its former law firm (Higbee & Associates) which itself had access to similar crawling software.

14. Plaintiff first discovered Defendant's infringement of the Work on May 3, 2022. The infringement was discovered by David Higgins. Mr. Higgins is an employee of Plaintiff. One of his responsibilities, in an effort to protect Plaintiff's intellectual property, is to cycle through Plaintiff's library of photographs to search the web for infringements. Plaintiff's staff continuously searches its images for the specific purpose of diligently enforcing and protecting its copyrights. On June 3, 2022, within one month of discovering the infringement, Plaintiff escalated this matter to CopyCat Legal PLLC to attempt to resolve it prior to litigation.

15. Plaintiff maintains a log (an Excel spreadsheet) of each time it identifies a potential infringement of its photographs – which was produced to Defendant in discovery. The log only identifies when Plaintiff finds a potential infringement of one of its photographs – not each time Plaintiff performs a search and/or does not find an infringement. Given that Plaintiff has approximately 18,000 images in its library and searches each image 6 – 7 times per year, to log every search performed (irrespective of result) Plaintiff would thus need to log "no result" some 108,000 – 126,000 times per year, every year, for the searches that did not identify a potential infringement. As such, Plaintiff does not save searches

that yield no results and therefore does not have any documents to produce showing unsuccessful searches. Accordingly, Plaintiff only updates the subject spreadsheets when its researchers actually find a potential infringement so that it may be investigated further and pursued if necessary.

16. For example, Plaintiff – through its staff – could search for the photograph at issue "ProduceVegetableGrilled002" 1,000 times. If the search only yielded three infringement sightings that met the above explained criteria, there would only be three entries on Plaintiff's spreadsheet. No such document exists that would show the 997 unsuccessful searches. Additionally, there is no record kept of the numerous "visually similar" results which are returned by reverse image searching, which Plaintiff's researchers check for accuracy and determine are not matches.

17. Plaintiff's subscribers are generally larger grocery stores and/or advertising companies who design weekly ads/circulars. However, Plaintiff's photo library is available to and intended for anyone who wants to license the library, but Plaintiff's usual subscriber is as described above.

18. Plaintiff offers to license its library of food photography for a minimum of $999.00 per month. While Plaintiff does have certain legacy subscribers paying less than $999.00 per month (due to pre-existing and/or strategic relationships), Plaintiff has not entered into a new subscription after

January 1, 2020 for less than $999.00 per month. Given the number of Plaintiff's subscribers paying $999.00 per month or more, and the fact that Getty itself in 2010 offered Plaintiff's photographs for hundreds, if not thousands, of dollars (taking into consideration Getty's subscription and/or credit pricing), Plaintiff believes that the fair market value of its photographs is significantly higher than the $10-$12 asserted by Defendant.

19. Bad-Adz is a commonly owned sister company to Plaintiff. Bad-Adz is an ad agency which designs weekly ads and other advertisements for its customers. If a customer is a subscriber of Bad-Adz, that customer/subscriber would not have access to Plaintiff's library. Bad-Adz, however, does have access to Plaintiff's photo library to use such photographs for creating ads for the subject Bad-Adz customer.

20. At the demand stage of this matter, Plaintiff was unaware that this matter was a pre-registration infringement. The information pertaining to the date was not readily available, as there was no date associated with the infringing post (The website on which the infringement appeared (https://poolworld-grillworld.com/) does not have a date of publication thereon (as a blog article or Facebook page would have)). Given the amount of searches performed by Plaintiff's staff on an annual basis and the staggering number of infringements found, Plaintiff does not have the resources to review third-party sites such as the

Wayback Machine to determine whether historical screenshots of infringements exist – indeed, at the time of its discovery of this infringement, and to this day, utilizing the Wayback Machine was not, and is not, a part of Plaintiff's standard process.

21. While Plaintiff understand that internet archival systems exist (such as the Wayback Machine), Plaintiff did not utilize any internet archival system in 2022 at the time that the demand letter went to Defendant (nor does it utilize any such system currently). As describer above, Plaintiff simply lacks the time and/or resources to perform such searches given the substantial number of infringements it staff discover on an annual basis.

22. While Plaintiff has generally filed copyright lawsuits in the jurisdiction where the defendant is located, it has also filed lawsuits in Florida utilizing Florida's long arm statute. <u>See e.g.</u>, <u>PFP v. Patriot Fine Foods, LLC</u> (Case No. 9:21-cv-82129) (S.D. Fla.); <u>PFP v. Valley Meats LLC</u> (Case No. 9:21-cv-82154) (S.D. Fla.); <u>PFP v. Myrtle Beach VIP Party Bus LLC</u> (Case No. 6:23-cv-00122) (M.D. Fla.).

23. From January 1, 2021 through December 31, 2023, Plaintiff filed approximately 250 lawsuits for copyright infringement in courts across the country. In every case Plaintiff file, it intends to proceed to final judgment; however, not a single case was filed with the mindset that it would result in a

default judgment. That a defendant does not appear, or does appear and wishes to settle the matter, is not only beyond Plaintiff's control, but also is not a result that Plaintiff has ever predicted and/or planned for; and, the suggestion otherwise is dubious at best.

24. The majority of settlement agreements Plaintiff enters includes a confidentiality provision. This term is generally requested/wanted by both Plaintiff and the infringing party (or the attorney or insurance company on behalf of the infringer). Confidentiality of settlement agreement protect both Plaintiff and the alleged infringer who has good reason to not reveal to the world that it utilized copyrighted material without a license and paid $xxxxx to settle such dispute, thereby inviting other copyright holders to pursue such alleged infringer and leverage its prior settlements against it.

25. Plaintiff is under the belief that it has provided every document in its possession, and everything that complies with Defendant's previous requests.

26. Defendant's contention that it only used a part of the Work on its website is inaccurate. The entirety of the Work was displayed thereon:

| The Work | Cropped screenshot of Defendant's Website (https://poolworld-grillworld.com/) |
|---|---|
|  |  |





I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: 8/15/2025

Rebecca Jones
ID Bt8snhdSHuEuKS8SuLqvkncb

## eSignature Details

**Signer ID:**     **Bt8snhdSHuEuKS8SuLqvkncb**
Signed by:        Rebecca Jones
Sent to email:    rebecca@preparedfoodphotos.com
IP Address:       96.238.9.54
Signed at:        Aug 15 2025, 5:36 pm EDT