

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

CASE NO. 2:23-CV-00160

**PREPARED FOOD PHOTOS, INC., F/K/A ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,
PLAINTIFF,
V.
POOL WORLD, INC.,
DEFENDANT.**

# EXPERT WITNESS REPORT

PREPARED BY:
**JOE G. NAYLOR
IMAGERIGHTS INTERNATIONAL, INC.**

## I. BACKGROUND AND SCOPE OF ASSIGNMENT

1. On June 2, 2023, Prepared Food Photos, Inc. ("PFP" or "Plaintiff") filed a Complaint against Pool World, Inc. ("Pool World" or "Defendant") in the United States District Court for the Eastern District of Washington, alleging copyright infringement under the Copyright Act, 17 U.S.C. § 501.

2. PFP, a Florida-based corporation, specializes in licensing professional photographs for the food industry through a subscription service on its website. The business model requires clients to pay a minimum monthly fee of $999 to access its extensive portfolio, which includes tens of thousands of copyrighted images. The copyrighted works are available only under non-transferable licenses for limited use by subscribers, and ownership rights remain exclusively with PFP.

3. The specific copyrighted work at issue in this case is a photograph titled "ProduceVegetableGrilled002" (the "Work"), created by PFP in 2001 and registered with the U.S. Copyright Office on September 29, 2016, under Registration No. VA 2-019-412.

4. PFP alleges that Pool World, a Washington-based corporation and a regional leader in pool and spa products, used the Work on its website, social media platforms, and other marketing channels without authorization. The Work was displayed on the Defendant's website, [https://poolworld-grillworld.com/](https://poolworld-grillworld.com/), to promote its grill products.

5. PFP asserts that Pool World never obtained a license or permission to use the Work and instead copied it from the internet for commercial use. PFP claims that its ongoing efforts to detect unauthorized uses of its copyrighted works revealed Pool World's infringement in June 2022. Despite notifying the Defendant of the unauthorized use, the parties were unable to reach a resolution, prompting the filing of this lawsuit.

6. I have been retained by Plaintiff's legal counsel, CopyCat Legal PLLC ("Counsel"), to provide expert testimony regarding:

    o The challenges and limitations in detecting copyright infringement online.

    o The application of industry-standard practices in monitoring and enforcing copyright protections.

## II. QUALIFICATIONS/BACKGROUND

I am the Founder and CEO of ImageRights International, Inc., a company I established in 2008 to address the challenges faced by photographers whose creative works were being used online without their knowledge or authorization.  ImageRights first launched its online image search service in 2009, the company now provides advanced copyright enforcement solutions, utilizing its proprietary image search platform designed to locate uses of our clients' images online as efficiently as possible for monitoring and enforcement purposes. Over the past 15 years, ImageRights has processed billions of sightings and assisted thousands of creators in asserting their intellectual property rights.

My background in engineering, including a B.S. in Electrical Engineering from the University of Texas at Austin, combined with my extensive experience in copyright and technology, positions me uniquely to

analyze the intersection of these fields. My technical expertise has been instrumental in developing innovative tools for copyright enforcement, while my deep understanding of copyright law ensures these solutions meet the needs of rights holders.

In addition to leading ImageRights, I am the President of the Digital Media Licensing Association (DMLA), which advocates for the licensing industry and addresses emerging challenges such as generative AI and online infringement. I also serve as a member of the Library of Congress Copyright Public Modernization Committee (CPMC), which focuses on improving copyright processes and fostering collaboration among stakeholders.

These roles reflect my commitment to advancing copyright protection and industry standards, providing me with a comprehensive perspective on the issues relevant to this case.

### III. DOCUMENTS/INFORMATION CONSIDERED

- Complaint filed on June 2, 2023
- Answer filed on June 26, 2023
- Plaintiff's Responses to Defendant's First Set of Interrogatories to Plaintiff filed on September 5, 2023
- Plaintiff's Responses to Defendant's Second Set of Interrogatories to Plaintiff filed on November 22, 2023

### IV. OPINIONS

1. It is unreasonable to expect a copyright holder to immediately detect every unauthorized use of their works due to the inherent limitations of current technology, the vast scale of the internet, the amount of images uploaded to the internet every day, and logistical constraints.

2. Even with the most advanced search technologies, no system can guarantee complete or immediate detection of all infringements. In fact, no company or organization even attempts to scan every image on the internet or can legitimately claim that they do.

3. Advanced AI-powered search technology, while effective in many cases, is inherently unable to guarantee immediate detection. This limitation accounts for reasonable delays and underscores the impracticality of imposing an expectation of immediate awareness of infringements.

4. Given that Google Image Search, widely recognized as the industry standard for online image search, had indexed only an estimated 136 billion photos on the internet as of 2023, while social media platforms alone receive approximately 3.2 billion new photograph uploads daily, it would be neither reasonable nor credible to suggest that PFP should have discovered any unauthorized use of their images sooner through Google Image Search, any other image search service, or even the combined capabilities of all available search services, than it did.

5. Due to numerous variables in search methodology and execution, multiple researchers may obtain varying results when conducting identical searches. Furthermore, the same researcher may receive different results when performing searches at different times or from different locations.

    These variations in search results could explain why certain unauthorized uses were not discovered earlier.

6. I reserve the right to update my report as additional information becomes available.

### V. BASIS FOR OPINIONS

1. **Technological and Statistical Constraints**
   Due to the vast scale of the internet and the statistical improbability of locating any specific image within a given timeframe, it is impossible to guarantee or predict when an infringement might be discovered. No image search technology, including ImageRights' advanced proprietary platform, can comprehensively scan the entire internet. These methods are constrained by both the costs of web crawling and the sheer magnitude of the internet, where users upload more than 3 billion new images daily.

2. **Limitations of Technology**
   Even companies with substantially greater resources than ImageRights, such as Google, cannot search for every image posted online or guarantee detection within any specific timeframe due to prohibitive costs. For context, Google has indexed an estimated 136 billion photos, representing only about 18% of the conservative estimate of total online imagery. This underscores the fundamental limitations all search technologies face in comprehensively identifying potential infringements.

   While ImageRights employs sophisticated technology, including 2,880 cloud servers supported by 176 verification servers and 10 optimized screenshot processors, the probability of discovering every instance of unauthorized image use remains effectively zero. This is especially true for smaller or less prominent websites, where detection is inherently more challenging.

3. **Discovery Improbability and Delays**
   The proportional relationship between the number of images managed by rights holders like PFP and the immense scale of the internet makes prompt discovery of every infringement statistically improbable. While ImageRights processes approximately 13.6 million web images daily, amounting to 4.98 billion annually, this represents only a fraction of the total online ecosystem. Given the continuous volume of new uploads and the inherent limitations of search algorithms, delays in detection or missed infringements are inevitable.

4. **Variability in Search Results**
   The results of the PFP researcher's searches could vary from researcher to researcher and from search to search.

   - *Search Engine Localization*: Search engines tailor results based on the user's geographic location, prioritizing locally relevant content. For instance, a user in Houston might see results emphasizing websites or businesses in Texas, while someone in Miami might encounter Florida-centric results.

   - *Algorithm Personalization*: Search engines customize outcomes based on individual user data, such as search history and preferences. Consequently, two users with different browsing histories may receive distinct results for the same image query.

- ***Data Center Variability:*** Search engines operate multiple data centers worldwide. Depending on which data center processes a query, there might be slight variations in results due to differences in data updates or indexing times.

- ***Timing of the Search:*** The timing of the search can influence results. Search engine indexes are continually updated; thus, an image added to the web between two searches might appear for one user and not the other.

## V. EXPERT COMPENSATION

I am being compensated at my standard rate of $450 per hour, billed against a $3,000 retainer. Should I need to testify at a deposition, court hearing, trial, or otherwise, my rate of $500 per hour will apply, plus reasonable travel expenses. My compensation is not contingent on the outcome of this litigation or the acceptance by the court of my opinion. The opinions expressed herein are my own.