Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe Street
Spokane, Washington 99201
(509) 795-4863
kirby@kirbylawoffice.com

Phillip R. Malone (pro hac vice)
Juelsgaard Intellectual Property and Innovation Clinic
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
(650) 724-1900
pmalone@stanford.edu

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| PREPARED FOOD PHOTOS, INC., f/k/a ADLIFE MARKETING & COMMUNICATIONS CO., INC., a Florida for profit corporation, | ) ) ) ) ) | No. 2:23-cv-00160-TOR |
| Plaintiff, | ) ) | **MOTION FOR SUMMARY JUDGMENT** |
| v. | ) ) | Hearing September 2, 2025 6:30 PM |
| POOL WORLD, INC., a Washington for profit corporation, | ) ) ) | |
| Defendant. | ) ) | |

**TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.     PFP'S CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS. . . . 6

    A.     The equitable "discovery rule" exception to the copyright statute of limitations is not available to PFP because of its extensive inequitable conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

        1.     PFP Has Acted Inequitably Toward Pool World. . . . . . . . . .  10

        2.     PFP's Inequitable Actions in This Case Are Part of a Broader Pattern of Inequitable Conduct. . . . . . . . . . . . . . . . 20

    B.     PFP Reasonably Should Have Discovered the Alleged Infringement Well Before June 2, 2020. . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**CASES**

*Adlife Marketing & Communications Co. v. Buckingham Brothers*,
    2020 WL 4795287 (N.D.N.Y. Aug. 18, 2020) . . . . . . . . . . . . . . . . . . . . . . 16

*Alberghetti v. Corbis Corp.*,
    713 F. Supp.2d 971 (C.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Andrews v. TRW, Inc.*,
    225 F.3d 1063 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bell v. Oakland Community Pools Project*,
    2020 WL 4458890 (N.D. Cal. May 4, 2020) . . . . . . . . . . . . . . . . . . . . . . . 7

*Bell v. Oakland Community Pools Project*,
    2020 WL 13695114 (N.D. Cal. Oct. 14, 2020) . . . . . . . . . . . . . . . 16, 17, 18

*Bucklew v. Hawkins, Ash, Baptie & Co.*,
    329 F.3d 923 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Fahmy v. Jay-Z*,
    835 F. Supp. 2d 783 (C.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Gabelli v. SEC*,
    568 U.S. 442 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Gaylord v. United States*,
    777 F.3d 1363 (Fed. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Holmberg v. Armbrecht*,
    327 U.S. 392 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Gardenhire*,
    209 F.3d 1145 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Oracle Corporate Securities Litigation*,
   627 F.3d 376 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Jarvis v. K2 Inc.*,
   486 F.3d 526 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Johnson v. UMG Recordings*,
   2019 WL 5420278 (C.D. Cal. Oct. 23, 2019) . . . . . . . . . . . . . . . . . . . . . . . 25

*Lixenberg v. Complex Media*,
   2023 WL 144663 (S.D.N.Y. Jan. 10, 2023) . . . . . . . . . . . . . . . . . . . . . . . . 26

*Mackie v. Rieser*,
   296 F.3d 909 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Michael Grecco Productions v. RADesign, Inc.*,
   112 F.4th 144 (2d Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*MyWebGrocer, Inc. v. Adlife Marketing & Communications Co.*,
   2019 WL 13177905 (D. Vt. Aug. 27, 2019) . . . . . . . . . . . . . . . . . . . . . . . . 21

*Nakada+Associates v. City of El Monte*,
   2017 WL 246997 (C.D. Cal. June 2, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*O'Connor v. Boeing North America*,
   311 F.3d 1139 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Oja v. U.S. Army Corps of Engineers*,
   440 F.3d 1122 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*On Davis v. The Gap, Inc.*,
   246 F.3d 152 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Oracle America v. Hewlett Packard Enterprise Co.*,
   971 F.3d 1042 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 25

*Oracle v. SAP AG*,
   765 F.3d 1081 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*Prepared Food Photos v. Hometown Publications II*,
   2023 WL 3439535, at *4 (E.D. Wis. May 12, 2023). . . . . . . . . . . . . . . . . . 14

*Prepared Food Photos v. Sharif Jaber & Nofal,*
   2025 WL 1025174 (E.D. Wis. Apr. 7, 2025). . . . . . . . . . . . . . . . . . . . . 13

*Railroad Telegraphers v. Railway Express Agency,*
   321 U.S. 342 (1944). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Silloway v. City & County of San Francisco,*
   117 F.4th 1070 (9th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Smith v. Davis,*
   953 F.3d 582 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*William A. Graham Co. v. Haughey,*
   646 F.3d 138 (3d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Wolf v. Travolta,*
   167 F. Supp. 3d. 1077 (C.D. Cal. 2016) . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 25

*Wolk v. Olson,*
   730 F. Supp. 2d 376 (E.D. Pa. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Woodall v. Walt Disney Company,*
   2024 WL 5329913 (C.D. Cal. Nov. 1, 2024). . . . . . . . . . . . . . . . . . . . . 25

**STATUTES AND RULES**

17 U.S.C. § 412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

17 U.S.C. § 504 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

17 U.S.C. § 504(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

17 U.S.C. § 507(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Rules of Civil Procedure

      Rule 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

      Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      Rule 56(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Rule 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pursuant to Federal Rule 56, defendant Pool World, Inc. moves for summary judgment and requests that the Court dismiss Prepared Food Photos, Inc.'s ("PFP") claim as barred by the Copyright Act's three-year statute of limitations.

**STATEMENT OF FACTS**

PFP has sued Pool World for allegedly infringing PFP's copyright when, in August 2010, a former Pool World employee placed a single composite image showing both shrimp on a grill and vegetables on a grill on a company website. Statement of Material Facts ("SMF") 4. PFP claims copyright in part of that image, the Grilled Vegetable Photo. In 2010, that photo was one of about 4700 photos that PFP was offering for licensing through iStock, a Getty Images subsidiary. SMF 8. At that time, iStock offered "royalty-free" licenses for the Grilled Vegetable Photo – licenses that allowed use for an indefinite amount of time, and not only by the licensees but also by clients of the licensees, for 95 cents and up; PFP's share of those license fees was 12 cents and up. SMF 6. Hundreds of such licenses were sold between 2010 and 2016. SMF 9. According to Pool World's expert witness, the market value of a license for the photo at that time was about a dollar; Expert Report of Jessica Teal, SMF 5; the current market value is roughly ten to twelve dollars. SMF 12. PFP licensed the Grilled Vegetable Photo this way from 2010 to 2016, the first six years that it was visible on Pool World's website. In each of those years, the

average **annual** royalty that iStock paid to PFP for **all** licenses to **all** 4700 photos was about $11,300.  SMF11.

In September, 2022, PFP sent Pool World a demand letter alleging that Pool World's single posting of the Grilled Vegetable Photo infringed PFP's copyright, and threatening to sue for infringement in Florida unless Pool World paid a $30,000 settlement within 21 days.  SMF 52.  In June 2023, PFP filed this suit against Pool World, saying in its Initial Disclosures that it sought nearly $144,000 in lost license fees.  SMF 84.

The basis for this extraordinary damages claim was the allegation in PFP's June 2023 complaint, ¶ 8, that it only makes licenses available for its entire database of 18,000 photos for the minimum monthly fee of $999 per month, *id.,* as well the representation in its demand letter that it does so with a minimum subscription period of one year.  SMF 57.  PFP says that it adopted this licensing model in 2016, after it withdrew all of its photos from third-party licensing services and began licensing them directly.  SMF 17-18.  PFP changed its business model because it had previously found that its images were being used without proper licenses, and planned to focus its efforts on making claims of copyright infringement.  *Id.*  PFP assigned several staff members and hired outside firms to conduct "reverse image searches," enabling it to find websites where its images appear and then to send demands based on claims of infringement.  SMF 21-22.

Searching for alleged infringements is most of what PFP's staff do.  SMF 23.

And infringement claims produce the great bulk of PFP's income. Under the post-2016 business model, PFP has entered into only a small number of subscription agreements that produces according to PFP's representations about its banking records, a modest monthly income of a few thousand dollars. SMF 35-36, 49-50. And many of those subscription agreements followed threats to sue for infringement and were apparently entered in settlement of infringement claims. SMF 30-31, 37. PFP's income from settling infringement claims—more than $50,000 per month in 2018 and 2019, and more than $100,000 per month in 2022, 2023 and 2024—has vastly exceeded its subscription income. SMF 51. PFP achieved these results by sending demand letters which, like the demand letter sent to Pool World, insist on payment of $30,000 within 21 days, and filing complaints like the one filed in this case, alleging that it only licenses its entire database of photos for the minimum monthly fee of $999 per month, thus (supposedly) entitling it to $11,988 per year of infringement. SMF 66.

Discovery in this case has established that the claims in PFP's demand letter and complaint about its subscription model were false, constituting inequitable conduct by PFP. PFP routinely threatens, as it did here, exorbitant statutory damages and attorney fees when PFP knows, or should know, that they are not legally available. Moreover, the undisputed facts from PFP's subscription agreements and bank records revealed that at no time has PFP ever had a $999 per month minimum, and for many years it accepted payments as low as $99 per month.

In addition, the damages theory on which this lawsuit was based—that the actual damages can be based on a licensing model that PFP unilaterally adopted more than six years after Pool World put the image on its website—runs squarely contrary to well-settled Ninth Circuit law, has never been adopted by a court after adversary litigation, SMF 87, and would be egregiously unfair to Pool World. This theory has been invoked only by several default judgments that PFP cited in its Initial Disclosures, and regularly cites in many demand letters sent to other targeted businesses. SMF 90-94. And those default judgments were obtained by the filing of briefs and affidavits that falsely claimed the $999 per month minimum, SMF 91-92, a falsity that was known to PFP when those papers were filed. SMF 80, 85, 92.

Following discovery showing that the complaint and damages claims in this case were based on these false allegations, Pool World served a Rule 11 motion on PFP, that started the running of Rule 11's 21-day safe harbor period. SMF 81. PFP then amended its complaint. *Id.* It removed the previous allegation that it only licenses uses of its photos as a recurring "subscription service" for its entire library of photos for a minimum monthly fee of $999. *Id.* Without those allegations, the lost license fee for its claimed infringement is between one dollar and twelve dollars.[1]

---

[1] Despite having amended its complaint to eliminate the factual basis for its claim of $11,988 in damages per year for twelve years, PFP persists in claiming $59,940 in damages—$11,988 per year from 2018 to mid-2022. SMF 103.

But before litigating the question of whether it is entitled to even these nominal damages, it must still meet its burden of showing that it is entitled to invoke the discovery rule as an exception to the otherwise clear-cut expiration of the three-year copyright statute of limitations for alleged infringement that occurred thirteen years before PFP filed suit. The undisputed facts show that PFP is not entitled to that exception. Based on those undisputed material facts, and for the reasons set forth below, the Court should grant summary judgment dismissing this action as untimely.

**ARGUMENT**

## I.   LEGAL STANDARD

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party is entitled to summary judgment when, "viewing the evidence in the light most favorable to the nonmoving parties and drawing all reasonable inferences in their favor, no genuine issues of material fact remain in dispute." *Silloway v. City & Cnty. of San Francisco*, 117 F.4th 1070, 1077 (9th Cir. 2024), citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Once the movant demonstrates the absence of a genuine issue of material fact, the opposing party must set forth specific facts showing a genuine issue that must be resolved at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at

252).  If the nonmoving party fails to make "a showing sufficient to establish the existence of an element essential to that party's case," then Rule 56(c) "mandates the entry of summary judgment." *Celotex Corp.*, 477 U.S. at at 322.

## II.  PFP'S CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS.

The Copyright Act prohibits claims for alleged infringement "commenced [more than] three years after the claim accrued."  17 U.S.C. § 507(b). PFP's June 2, 2023, copyright claim is based on the posting of the "Grilled Vegetable Photo" on Pool World's web site thirteen years earlier, in 2010, far outside the limitations period.  SMF 7. The undisputed facts in this case establish that, as a matter of law, PFP's infringement claims are barred by the statute of limitations.

Although the photo remained on Pool World's website until Pool World removed it after getting PFP's demand letter in 2022, the fact that an image remains online long after it was posted does not mean that a new copyright infringement occurs every day it is there, or every time someone views the image.  See *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1099 (C.D. Cal. 2016) ("The fact that the alleged infringing document—published in 2010, outside the relevant three-year window—remained on defendant's website through 2014 does not give rise to a discrete claim accruing within the three-year window."); *Nakada+Associates v. City of El Monte*, 2017 WL 246997, at *3 (C.D. Cal. June 2, 2017) (holding that a copyright claim accrued when the defendant first posted infringing video on YouTube); *Bell v. Oakland Community Pools Project*, 2020 WL 4458890, at *5 (N.D.

Cal. May 4, 2020) (collecting cases).

This conclusion follows from the single publication rule, a well-established principle holding that when an allegedly actionable statement has been made in a publication, the violation is committed at the time of first publication; there is no new violation for limitations purposes each time a new person accesses the statement. Under this rule, PFP's infringement claim, if any, accrued in 2010, when Pool World posted the Grilled Vegetable Photo to its website. SMF 7. The three-year statute of limitations expired in 2013.

Trying to avoid the single publication rule, PFP invokes the discovery rule, under which its claim of infringement is tolled for so long as it can prove that it both did not discover, and with reasonable diligence could not have discovered, Pool World's alleged infringement earlier than it did. *See Oracle America v. Hewlett Packard Enterprise Co.*, 971 F.3d 1042, 1047 (9th Cir. 2020) (applying the rule).

Because Pool World has establishes that PFP's claim is "time barred absent application of an equitable exception," PFP "bear[s] the burden of demonstrating the applicability of any such exception, including the delayed discovery rule." *Wolf v. Travolta*, 167 F. Supp. 3d at 1092 (applying the copyright discovery rule). *See O'Connor v. Boeing N. Am.*, 311 F.3d 1139, 1150 (9th Cir. 2002) (in a CERCLA case, stating that "[b]ecause Plaintiffs have the burden of proof at trial to establish that they are entitled to the benefit of the discovery rule, to defeat summary judgment they [are] required to come forward with evidence establishing a triable issue of fact

with regard to whether the discovery rule applies.")

On the undisputed facts of this case, PFP cannot carry its burden of showing that it has a triable case on its entitlement to invoke the discovery rule to justify filing suit thirteen years after the image was posted, for two separate reasons, either of which is sufficient to bar PFP's claims.[2]   First, the discovery rule is an equitable

---

[2] Although most commonly invoked in defamation cases, the single publication rule is a general principle of tort law, and the Ninth Circuit has applied it to a federal law claim sounding in tort.  *Oja v. U.S. Army Corps of Engineers*, 440 F.3d 1122, 1130 (9th Cir. 2006) (applying the single publication rule to a Privacy Act claim). Indeed, when the single publication rule, which aims to provide extra peace of mind to publishers, comes into potential conflict with the discovery rule, courts in other contexts have held that the single publication rule applies instead of the discovery rule. *See*, *e.g.*, *Wolk v. Olson*, 730 F. Supp. 2d 376, 379 (E.D. Pa. 2010); *Alberghetti v. Corbis Corp.*, 713 F. Supp.2d 971, 977 (C.D. Cal. *2010), aff'd in part, rev'd in part and remanded*, 476 Fed. Appx. 154 (9th Cir. 2012).  No court has considered how the application of the single publication rule in a copyright case relates to the discovery rule, but copyright claims sound in tort, *see Bucklew v. Hawkins, Ash, Baptie & Co.*,, 329 F.3d 923, 931 (7th Cir. 2003) ("Copyright infringement ... is an intentional tort"), and the reasoning of cases such as *Wolk* applies in this copyright case. On that ground alone, this action is untimely as a matter of law.

doctrine and PFP has engaged in a host of inequitable conduct.  This bad-faith conduct, which it pursued in this case specifically and in its widespread and abusive copyright enforcement operation generally, makes the discovery rule inappropriate for and unavailable to PFP here.  Second, PFP's extensive and sophisticated reverse image search operations reasonably should have led plaintiff to discover defendant's use of the Grilled Vegetable Photo long before June 2020 (three years before suit was filed).

### A. The equitable "discovery rule" exception to the copyright statute of limitations is not available to PFP because of its extensive inequitable conduct.

Rules of equity bar PFP from receiving the benefit of the discovery rule given its extensive and lengthy pattern of inequitable conduct.  The discovery rule is founded on equitable principles, *e.g.*, *Andrews v. TRW, Inc.*, 225 F.3d 1063, 1066–67 (9th Cir. 2000) (unless Congress has legislated otherwise, "the equitable doctrine of discovery 'is read into every federal statute of limitations.' *Holmberg v. Armbrecht*, 327 U.S. 392 (1946)"), *rev'd on other grounds*, 534 U.S. 19 (2001).  *See also Wolf*, 167 F.Supp.3d at 1092 (describing the discovery rule as "an equitable exception"); *William A. Graham Co. v. Haughey*, 646 F.3d 138, 150 (3d Cir. 2011) ("The [discovery] rule is an exception to the usual principle that the statute of limitations begins to run immediately upon accrual . . . grounded in the notion that it is unfair to deny relief to someone who has suffered an injury but who has not learned of it and cannot reasonably be expected to have done so.")  *But see Michael Grecco*

*Productions v. RADesign, Inc.*, 112 F.4th 144, 151 (2d Cir. 2024) (discovery rule is not an equitable tolling or estoppel exception).  And when an equitable exception to the statute of limitations in invoked, the plaintiff may be denied use of the exception by its own failure to do equity.  *See In re Gardenhire*, 209 F.3d 1145, 1152 n.11 (9th Cir. 2000) (noting in a bankruptcy equitable tolling case "the time-honored maxim that '[h]e who seeks equity must do equity.'").

Like other equitable doctrines, the Court can decline to apply the discovery rule given the "unique circumstances and characteristics" of a case. *Cf. Smith v. Davis*, 953 F.3d 582, 590 (9th Cir. 2020) (deciding whether equitable tolling applies requires a case-by-case analysis).  Here, the undisputed material facts demonstrate extensive inequitable conduct by PFP, which has not "done equity" and therefore is not entitled to the benefit of the equitable discovery rule.  As a matter of law, the Court should refuse to apply the discovery rule in this case.

### 1.  PFP Has Acted Inequitably Toward Pool World.

PFP has acted inequitably throughout this case, beginning with PFP's demand letter, then the filing of a complaint and service of initial disclosures that contained false allegation**s**, and the pursuit of the false allegations until Rule 11 was invoked.

PFP began its course of inequitable conduct against Pool World in 2022, twelve years after the single Grilled Vegetable Photo was posted on Pool World's website, when it sent a demand letter filled with misrepresentations.  Answer, Exhibit A, page 1.

First, PFP's demand letter included three ominous paragraphs, with extensive explanations, threatening statutory damages of $35,964 for each year of alleged infringement, and claiming entitlement to statutory attorney fees (SMF 56, 60-62). One paragraph read, in part:

> Assuming our client prevails in court, 17 U.S.C. § 504(c)(1) provides our client the right to recover statutory damages [up to $150,000 per work, as well as] attorneys fees which are also recoverable under the Copyright Act.

PFP made these threats even though it knew or should have known at the time it sent its demand letter that its statements about statutory damages and attorneys fees were false. Such damages and fees were unavailable to it because it did not register copyright in the Grilled Vegetable Photo until 2016. SMF 63. For either statutory damages or attorney fees to be available, a work must be registered before the infringement or within three months of first publication, 17 U.S.C. §§ 412, 504. Moreover, the fact that Pool World's use began long before registration was readily discernible from the Internet Archive, a resource that PFP commonly used to **increase** the amount of damages it seeks. SMF 64-65. PFP cannot dispute that, as an experienced and high-volume copyright litigant that has pursued thousands of infringement claims, SMF 58, it was or should have been aware that neither statutory damages nor attorney fees were available to it.

Second, PFP's demand letter included significant misrepresentations about the actual damages PFP could pursue. The letter claimed that actual damages (which in turn are generally multiplied to fix statutory damages) would be calculated based on

PFP's supposed subscription model. The letter stated that PFP only licenses its images as a "library," for which it claimed to charge a minimum of $999 per month with a minimum subscription period of 12 months.  SMF 55.  If Pool World did not meet the demand by paying $30,000 within 21 days, Pool World would thus be liable for $999 for each month the Grilled Vegetable Photo appeared on Pool World's web site.  SMF 53-54.  The complaint repeated the false allegation about the supposed $999 per month minimum, DN 1 ¶ 8, and the Initial Disclosures repeated them as well.  SMF 56.

These statements were false on several levels. First, they misrepresented that PFP's supposed current licensing model (even if it was accurately described, which it was not—see below) and its huge cost for a single image somehow applied to Pool World's posting of that image in 2010, six years before PFP adopted that model, and at a time when PFP was licensing this photo under a very different model, when the image was available for perpetual use for under a dollar.

In fact, the hypothetical licensing negotiation approach used by courts to determine actual damages looks at each party's position at the time an infringement allegedly occurred, not what the copyright holder would charge at the time of litigation. *See Oracle v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014) (describing fair market value as "the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use").  Moreover,

Excessively speculative claims of damages are to be rejected, and the

"market value approach is an objective, not a subjective, analysis." *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir.2002); *see also On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir.2001) ("The question is not what the owner would have charged, but rather what is the fair market value.").

*Jarvis v. K2 Inc.*, 486 F.3d 526, 533-534 (9th Cir. 2007) (cleaned up)

This actual market value approach ensures that accused infringers are "protected against an unrealistically exaggerated claim." *On Davis*, 246 F.3d at 166.

Indeed, the theory of actual damages invoked in PFP's demand letter has never been adopted by a court in adversary litigation, but only in a series of default judgments. And one recent district court decision specifically rejected PFP's attempts to invoke its claimed subscription model as a basis for awarding its "excessively speculative claims of damages." *PFP v. Sharif Jaber & Nofal*, 2025 WL 1025174, at *12 (E.D. Wis. Apr. 7, 2025) (after jury awarded $200 in actual damages, rejecting PFP's argument that actual damages of $999 per month is clear as a matter of law because the court is not constrained to accept "what [owners] would like to have charged if unconstrained by reality") (quoting *Gaylord v. United States*, 777 F.3d 1363, 1368 (Fed. Cir. 2015)). Indeed. just a few weeks before PFP sued Pool World seeking $144,000 in actual damages, relying on its line of favorable default judgment rulings, a court rejected PFP's damage calculation on a default judgment motion and set a hearing. *PFP v. Hometown Publications II*, 2023 WL 3439535, at *4 (E.D. Wis. May 12, 2023), *vacated*, 2023 WL 11931194 (E.D. Wis. May 31, 2023). Rather than defend its damages theory, PFP dismissed that action.

Moreover, PFP's purported licensing model was not in existence when Pool World's alleged infringement occurred.  In fact, in 2010, PFP made the Grilled Vegetable Photo available on iStock Photo for licenses that could have been purchased for between $0.95 and $16.94, allowing perpetual use thereafter without any additional payments.  SMF 6.  And PFP's share of these fees was small, ranging from $.12 to just under three dollars.  SMF 10.  Pool World's expert witness, Jessica Teal, explains that the market value for the individual photo in 2010 was roughly one dollar, and that in the current market the value is about ten to twelve dollars.  SMF 12.  What PFP seeks to do here is precisely what the governing law forbids: a copyright owner cannot unilaterally increase the level of damages to an unrealistic level by changing its licensing practices after the alleged infringement, unconstrained by the market for the use of individual photos.  *Oracle*, 765 F.3d at 1087.

Third, in any event, the demand letter was false and inequitable because PFP misrepresented the specifics of its supposed subscription model. The letter claimed that PFP only licenses its photos for a minimum of $999 per month and requires a minimum 12-month commitment SMF 57.  PFP repeated this claim in its original Complaint, at ¶¶ 8-9 (Plaintiff "charges its clients . . . a minimum monthly fee of $999.00 for access to its library of professional photographs" and "does not license individual photographs or otherwise make individual photographs available for purchase . . . [but] relies on its recurring monthly subscription service.").  PFP continued to insist on this characterization of its licensing model throughout the

litigation, until it was forced by service of a Rule 11 motion to abandon its false claim and file an amended complaint that dropped it. SMF 79-86.

That occurred because undisputed facts emerged that demonstrate that PFP often charges far less for subscriptions. PFP's earliest subscription was in the amount of $499 per month, and payments at that rate continued through 2024. SMF 32. The roster of 22 subscription agreements produced in discovery showed several agreements below the supposed minimums, including one client paying a $99/month rate, another paying $300/month, and another with a 6-month commitment. SMF 32-37 and Exhibit OO. So, too, PFP's ledger of monthly payments for 2023 and 2024 showed several subscribers paying significantly less than $999 per month, including $95/month and $299/month. SMF 43.

Not only were PFP's claims about its uniform and "minimum" licensing terms false, the undisputed evidence shows that many if not most of the "subscription agreements" were not arms-length business agreements to license images between a "willing buyer" and a "willing seller," *Oracle*, 765 F.3d at 1087, but were entered in connection with the settlement of PFP's demands for damages for past alleged infringements. SMF 31-32, 37 and Exhibit OO. Every one of the subscribers that entered a subscription agreement in 2021 or later did so after receiving a threat of infringement litigation. SMF 37. Because PFP follows a policy of discarding documents after four years, SMF 38, PFP did not produce **any** of its communications with subscribers who entered agreements before 2021 (which the Court ordered

produced) that could have shown whether the rest were arms-length business agreements.  SMF 39.

PFP's falsely inflated damages threats to Pool World and to numerous others in other cases (see below) constitute inequitable conduct that disqualifies plaintiff from the benefit of the discovery rule.  *See Adlife Mktg. & Commun. Co., Inc. v. Buckingham Brothers*, 2020 WL 4795287 at *7-*8 (N.D.N.Y. Aug. 18, 2020) (imposing sanctions on PFP counsel, in part for demanding excessive damages payments for infringement of a stock photo); *Bell v. Oakland Community Pools Project*, 2020 WL 13695114, at *7-*8  (N.D. Cal. Oct. 14, 2020) (court finds bad faith purpose where plaintiff demanded an inordinate amount of damages, "suggesting that he is in the business of litigation, not protecting his copyrights or stimulating artistic creativity for the general public good) (cleaned up).  Similarly, here, PFP's assertion of unreasonably high damages claims supports denying PFP access to the discovery rule as an equitable exception to the statute of limitations.

Fourth, PFP also engaged in inequitable conduct by repeatedly threatening defendant with high litigation costs if it defended this case.  The demand letter's explicit reference to the fact that Pool World would have to hire a lawyer to defend itself, SMF 69-70, made in light of the notoriously great expense of litigating copyright cases, Levy First Affirmation ¶ 26 and Exhibit J, DN 21-12, was part of its unfair effort to intimidate PFP into paying an unreasonable settlement.  PFP also inequitably threatened defendant with high and excessive litigation costs by stating

in its demand letter that, if defendant did not meet PFP's demands, it would be "forced to litigate" in federal court in the Southern District of Florida, far from defendant's Washington state business.[3]   Contrary to this threat, PFP normally files suit in the jurisdiction where the alleged infringer is located.  SMF 75.

In fact, during the course of this litigation, PFP's owner contacted Pool World's owner directly on several occasions, without including or seeking consent from defendant's counsel, to explicitly threaten the high cost of litigation as a reason that Pool World should accept PFP's settlement terms.  Early Affirmation, ¶¶ 3, 5, 6, and Exhibits E1, E3, E4.  PFP's threats to impose high litigation costs on defendants are credible because its retainer with its counsel, CopyCat Legal, provides for his firm to absorb all costs, taxable and non-taxable.  SMF 72.[4]

---

[3] Recipients of PFP demand letters generally have no reason to believe, before they receive the threat, that  the owner of a photo's copyright is in Florida, and hence cannot be said to have intentionally directed harm to Florida.  Thus filing in Florida would likely result in prompt dismissal for lack of personal jurisdiction.

[4] A related aspect of PFP's inequitable conduct is its effort to force Pool World to bring its insurance company into the case, apparently counting on that company to avoid litigation expense by paying an exorbitant settlement. SMF 102.   Pool World deliberately did not make an insurance claim because it did not want an extortionate settlement paid in its name.  SMF 101.  The Court in *Oakland Community Schools*

Fifth, PFP engaged in inequitable conduct by supporting its damages claims by citing ten default judgment rulings in its Initial Disclosures that were all obtained by relying on false allegations in the complaints, on PFP's briefs, and on false averments in the supporting affirmations of PFP officer Rebecca Jones, in those cases.  SMF 91-92.  In fact, none of the default judgments cited in the Initial Disclosures was ever collected, SMF 85; the only purpose for obtaining the default judgments appears to have been to secure judicial rulings that PFP could then use to further its inequitable operation to extract future settlements of excessive damages payments.

Sixth, the Court should find PFP's conduct inequitable and not extend it the equitable shelter of the discovery rule because it sent a demand letter and then filed suit against Pool World despite the fact that it had no records that would enable it to assess whether Pool World had a license to use the Grilled Vegetable Photo.  Worse, it alleged in its complaint (as an unequivocal fact, not on information and belief) that "Defendant is not and has never been licensed to use or display the Work." Complaint ¶ 18.  PFP's ignorance about whether Pool World's use of the image was licensed is the direct product of PFP's choice, back in 2010 when Pool World posted the photo, to allow the licensing of photos for "royalty free" use and not to maintain records that are critical to show whether users of its photos had in fact licensed those

_Project_ similarly took note of that plaintiff's strategy of demanding immediate settlements from insurance companies.   2020 WL 13695114, at *7.

uses, from plaintiff or its agent.  SMF 7.

Statutes of limitation are intended to "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Gabelli v. SEC*, 568 U.S. 442, 448 (2013) (quoting *Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348-49 (1944)).  Allowing PFP to invoke the discovery rule to permit a 13-year old alleged infringement claim to escape the limitations period, particularly when evidence about a possible license has been lost (and PFP chose not to maintain such records in the first place)  would be extremely inequitable to Pool World, a small business with no experience with copyright law.

To defend against PFP's claim, Pool World would need to have maintained clear records of how it obtained a single photo in 2010.  Pool World, to the best of its knowledge, believes it obtained the image in 2010 from a vendor who had a license to use it.  Levy Seventh Affirmation Exhibit WW, Answer to Interrog. Nos. 9-10.  However, the Pool World employee who created the webpage including the Grilled Vegetable Photo no longer works at the company, and, given the passage of time, defendant no longer has the records that could permit it to prove definitively that it had a license permitting its use of the image.  *Id.,* Response to Admis. Req. Nos. 18-19; Flynn Aff. ¶ 4 (DN55-17).

At the same time, PFP has not maintained licensing records of photos previously uploaded to iStock.  Despite being a sophisticated copyright owner

actively seeking litigation for many years now, the undisputed facts demonstrate that PFP did not maintain records of which of its photos could have been licensed for little cost through iStock. Because of its own failure to maintain records, PFP simply does not know and cannot now demonstrate whether Pool World's use was licensed.

The determination of whether to apply an equitable rule like the discovery rule requires balancing the plaintiff's benefit of an extended filing window against a defendant's harm in being required to produce exculpatory records so long after it could reasonably have expected to need them. The situation Pool World is being placed in—forced to try to prove the existence of a license without records from 15 years ago and with the employee who developed the website no longer working for defendant—is precisely what the statute of limitations seeks to avoid, and precisely why applying the equitable discovery rule here would be inequitable.

### 2.    PFP's Inequitable Actions in This Case Are Part of a Broader Pattern of Inequitable Conduct.

The undisputed facts show that PFP's inequitable conduct toward Pool World is of a piece with a broader pattern of unfair conduct toward accused infringers more generally. PFP's September 2022 demand letter to Pool World was but one example of a form letter sent to other targets of PFP's copyright enforcement campaign. SMF 66. As of late 2023 that form letter had been sent to 1800 separate companies, *id.* each containing statements known to PFP to be false and carefully calculated to produce anxiety in their mostly unsophisticated recipients and hence produce rapid

payment of inflated settlements.  The expert report of Aaron Arce Stark, who represents individual photographers but also specializes in representing the recipients of demand letters from repeat copyright litigants such as PFP, explains the impact of letters like the one sent here.  And PFP has filed hundreds of copyright infringement complaints like this one, SMF 96.  Since 2021, when PFP's current counsel took charge of PFP's copyright enforcement scheme, those complaints have repeatedly alleged, in violation of Rule 11, the existence of a $999 minimum fee.  PFP had been perpetrating this fraudulent claim on both courts and the recipients of demand letters through its previous attorneys as well.  See *MyWebGrocer, Inc. v. Adlife Mktg. & Commun. Co.*,, 2019 WL 13177905, at *8 (D. Vt. Aug. 27, 2019), where a judge stated, based on PFP's false assertions, "it is undisputed that AdLife has charged clients a minimum subscription fee of $999 per month for access to its food photography library," and Exhibit A3 to the Affirmation of Curt Archambault, showing that in 2019 attorney Mathew Higbee cited the purported $999 per month minimum as a reason why Archambault should pay the demanded settlement amount.

And yet the undisputed record shows that PFP seeks to avoid adversary litigation of its claim to an entitlement to damages on the theory threatened in its demand letters.  When its enforcement targets respond by counsel, or without counsel but showing that they understand the law and are ready to stand on their rights, PFP accepts the response and does not file suit.  *See* the affirmations of Richard Rimer, Curt Archambault, Debbie Lingerfelt, and Justin Nygard.  The Rimer Affirmation

shows PFP's deliberate exploitation of the high cost of a legal defense—PFP counsel told Rimer that because his client would have to pay at least $15,000 to litigate, Rimer had to offer more than $15,000 to avoid having his client sued. Rimer Aff. ¶¶ 4-5. And when the infringement target sends a check for $750—the minimum possible award of statutory damages—but does not agree to PFP's standard settlement providing for confidentiality, PFP not only does not file suit but also does not cash the check. In this way PFP confirms, as its attorney Megan Medacier said to one of its enforcement targets, "court rulings from contested cases don't exist as no one has thought it wise to litigate one of these things to the end." Levy Fifth Affirmation Exhibit W, at page 174 (cleaned up), DN 55-13. PFP has maintained its ability to bully targets of its demand letters by not filing suit when it knows it will have to litigate. This pattern of conduct confirms that PFP, as expert witness Stark says in his report, sues over a single photo only when it thinks there will be no opposition.

And PFP's tactics have been exceptionally effective. The undisputed evidence is that in 2018 and 2019, when PFP's own records show that it was receiving an average of about $85,000 per year in "subscription fees" (much of it, as noted above, in subscriptions that appear to have been entered to resolve infringement claims rather than as arms-length licensing transactions), PFP was pulling in an average of more than $700,000 per year in infringement settlements. And between 2022 and 2024, when PFP's average annual subscription fees were down under $70,000, again including many subscriptions that were secured by threatening infringement

litigation, the model demand letter developed by PFP's current counsel, and sent to thousands of others, had increased the return from infringement claims to an annual average of more than $1,800,000.

Indeed, PFP's average annual income between 2010 and 2016 from the one-by-one licensing of the entire corpus of 4700 photos, of which the Grilled Vegetable Photo was a part, was barely more than $11,000. SMF 11. Yet PFP regularly demands that targets of its threats pay $30,000 to avoid being sued over a single photo, and it regularly collects settlements of several thousand dollars based on those threats, *see generally* Exhibit SS. Indeed, PFP has admitted that it recovered $10,000 in settlement for one or more claims of infringement of its copyright in the Grilled Vegetable Photo. SMF 104.

Plainly, PFP's threats and invocations of unsupportable damages claims based on false representations and a legally indefensible damages theory has proved to be a very successful business model. But it is unequitable conduct that should deprive PFP of the benefit of the equitable exception of the discovery rule when it seeks to pursue a claim based on a fifteen-year old alleged infringement.

### B.   PFP Reasonably Should Have Discovered the Alleged Infringement Well Before June 2, 2020.

PFP cannot invoke the discovery rule for a second reason: the statute of limitations prevails in this case because PFP should have discovered the Grilled Vegetable Photo on Defendant's website long before it sent Pool World its September

2022 demand letter and long before it filed suit. Because PFP filed this action on June 2, 2023, PFP is required to show that it could not with the exercise of reasonable diligence have found Pool World's alleged infringement before June 2, 2020. On the undisputed facts, PFP cannot make that showing.

Under the discovery rule, a claim accrues when the plaintiff had "constructive knowledge"—that is, "enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the [claim]." *Oracle America*, 971 F.3d at 1047. The Ninth Circuit imputes to a plaintiff the knowledge that would have emerged from such a reasonably required investigation, even if none was actually undertaken. *Id.* at 1048 (summary judgment was appropriate because plaintiff's search for infringing material was not reasonable and plaintiff did not produce evidence or authority creating a triable issue on the question).

Indeed, copyright infringement actions accrue, and the three-year limitations period begins to run, as soon as copyright holders suspect that their work is being used without authorization. *Wolf*, 167 F. Supp. 3d. at 1102; *Johnson v. UMG Recordings*, 2019 WL 5420278, at *3 (C.D. Cal. Oct. 23, 2019) ("The discovery rule does not require 'absolute certainty' for a cause of action to accrue."); *see Woodall v. Walt Disney Company*, 2024 WL 5329913, at *2 (C.D. Cal. Nov. 1, 2024) ("[T]he statute of limitations for Plaintiff's trade secret misappropriation claims began to run when Plaintiff suspected misappropriation.") (emphasis added). The discovery rule is further undermined where the plaintiff has already identified potential infringement

involving the same work. *See Lixenberg v. Complex Media*, 2023 WL 144663, at *3 (S.D.N.Y. Jan. 10, 2023) (finding the plaintiff's discovery of potential infringement involving the same work militates against application of the discovery rule); *see also Fahmy v. Jay-Z*, 835 F. Supp. 2d 783, 790 (C.D. Cal. 2011) (finding the plaintiff's claims barred despite the discovery rule because plaintiff was aware of similar acts of infringement).

Here, PFP admits that it was on notice as early as 2016 that images in its library were being infringed. SMF22. It began conducting reverse image searching that year. SMF 24. PFP's records show that PFP found a possibly infringing use of the Grilled Vegetable Photo on September 30, 2016. SMF 30. PFP thus had "constructive knowledge" of the existence of online infringements of this specific image (including by a company such as Pool World) at that time.

PFP must show, therefore, that it persistently and diligently searched before June 2, 2020 for infringing uses of this image. But in response to Pool World's requests for documentation of those searches, PFP produced only spreadsheets showing that it conducted one search three years later than 2016, in 2019, and another in April 2020. SMF31. PFP has no records of any other searches for infringements of the Grilled Vegetable Photo before June 2020.

Given these undisputed facts, PFP had actual knowledge that the Grilled Vegetable Photo was being infringed as early as 2016 and reasonably should have discovered Pool World's public and easily accessible posting of it well before June

2023.  PFP is a sophisticated and highly experienced repeat copyright litigant with an extensive enforcement operation. Starting at least seven years before PFP sued Pool World, PFP had been scouring the internet seeking out infringement.  It has filed hundreds of copyright lawsuits and sent thousands of demand letters since August 2016. SMF 20-23, 58. 96.  To focus on enforcing its copyrights, PFP created a team including a dedicated paralegal and seven other employees, as well as four third-party firms. SMF 25.  Since 2016, this sophisticated enforcement team had been constantly "search[ing] the entirety of Plaintiff's image library via google reverse image search to identify" potential infringers. *Id.*  Indeed, looking for infringement is most of what its employees do.  SMF 23.

Although the Second Circuit recently ruled that seasoned litigators are not **categorically** barred from invoking the discovery rule, and hence their claims cannot be dismissed on the face of the complaint, *Michael Grecco Productions v. RADesign, Inc.*, 112 F.4th 144, 154 & n.8 (2d Cir. 2024), it left open the question whether, after a careful analysis of the facts after discovery, the sophisticated character of the copyright owner could properly be part of the discovery rule analysis.[5]  Here, the

---

[5] *Grecco* acknowledged that a "sophisticated plaintiff may well discover an infringement sooner than their less practiced neighbor," 112 F.4th at 152, but considered the sophisticated character of the plaintiff to be just one part of a broader factual analysis of whether it acted with "due diligence" in discovering the

undisputed facts of PFP's 2016 awareness of widespread infringement of works in its "library," its 2016 discovery of a posting of the Grilled Vegetable Photo, and its extensive enforcement apparatus coupled with the failure to conduct searches for that photo for six years before 2016 and another three years before 2019, plus one more before June 2020, demonstrate that PFP reasonably should have discovered Pool World's infringement more than three years before filing its complaint in June 2023.

## CONCLUSION

The undisputed facts demonstrate that PFP is not entitled to invoke the equitable exception of the discovery rule because of its inequitable conduct and that, even if it were entitled, the discovery rule claim fails because PFP reasonably should have discovered the alleged infringement more than three years before it filed its complaint. The motion for summary judgment should be granted.

Respectfully submitted,

---

infringement, an analysis that was not sufficient at the motion to dismiss stage.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16   July 11, 2025

17

18

19

20

21

22

23

24

25

26

27

28

/s/   Paul Alan Levy
Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

/s/ Stephen Kirby
Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe Street
Spokane, Washington 99201
(509) 795 4863
kirby@kirbylawoffice.com

/s/ Phillip R. Malone
Phillip R. Malone (pro hac vice)
Juelsgaard Intellectual Property
 and Innovation Clinic
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 724-1900
pmalone@stanford.edu

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that, on this 11th day of July, 2025, I am filing this reply memorandum and the attached affirmation and exhibits by the Court's ECF system, which will effect service on counsel for plaintiff, Max Archer Daniel DeSouza, and Lauren Hausman.  (The unredacted papers filed under seal will be emailed to PFP's with consent).

/s/   Paul Alan Levy
Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

July 11, 2025