Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe Street
Spokane, Washington 99201
(509) 795-4863
kirby@kirbylawoffice.com

Phillip R. Malone (pro hac vice)
Juelsgaard Intellectual Property and Innovation Clinic
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
(650) 724-1900
pmalone@stanford.edu

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

PREPARED FOOD PHOTOS, INC.,
f/k/a  ADLIFE MARKETING
& COMMUNICATIONS CO., INC.,
a  Florida for profit corporation,

        Plaintiff,

        v.

POOL WORLD, INC., a Washington for
profit corporation,

        Defendant.

No. 2:23-cv-00160-TOR

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Hearing September 2, 2025
6:30 PM

**TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

A.  PFP's Failure to Do Equity Defeats Its Invocation of the Discovery Rule.. . . . 1

B.  PFP Reasonably Should Have Found Pool World's Use Before June 2020.. . . 7

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Design Basics v. Lexington Homes*,
    858 F.3d 1093 (7th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

*Jarvis v. K2 Inc.*,
    486 F.3d 526 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Klinger v. Conan Doyle Estate*,
    761 F.3d 789 (7th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Licciardello v. Lovelady*,
    544 F.3d 1280 (11th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Live Face on Web v. Cremation Society of Illinois,*
    77 F.4th 630 (7th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Malibu Media v. Doe*,
    950 F. Supp. 2d 779 (E.D. Pa. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Malibu Media v. Doe*,
    2015 WL 4092417 (S.D.N.Y. July 6, 2015) . . . . . . . . . . . . . . . . . . . . . . . 3

*Michael Grecco Productions v. RADesign, Inc.*,
    112 F.4th 144 (2d Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*On Davis v. The Gap, Inc.*,
    246 F.3d 152 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Oracle v. SAP AG*,
    765 F.3d 1081 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Philpot v. L.M. Communications II of South Carolina*,
    2020 WL 2513820 (E.D. Ky. May 15, 2020) . . . . . . . . . . . . . . . . . . . . . . . 3

*Revell v. Lidov*,
    317 F.3d 467 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ryan v. Editions Ltd. West*,
    786 F.3d 754 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wood v. Santa Barbara Chamber of Com.*,
705 F.2d 1515 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**MISCELLANEOUS**

Sag, *Copyright Trolling, an Empirical Study*,
100 Iowa L. Rev. 1105 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**A. PFP's Failure to Do Equity Defeats Its Invocation of the Discovery Rule.**

Pool World's motion for summary judgment presented a legal issue of first impression: that Supreme Court, Ninth Circuit and Third Circuit authority treating the discovery rule as an equitable exception to the statute of limitations implicates the long-standing principle that a party invoking equity must do equity. Pool World presented a series of 104 undisputed facts, based on affidavits and exhibits, which showed that the demand letter and lawsuit by Prepared Food Photos ("PFP") against Pool World are part of a long history of extortionate conduct that relies on false statements about PFP's subscription program, on damages claims that are barred by clear circuit precedent in the Ninth Circuit and elsewhere, and on deliberately threatening targets with the high cost of litigation, in an effort to secure settlement payments far higher than it could reasonably expect to win in court.

The undisputed facts show that PFP has made millions of dollars using this strategy, many times the revenue it earns from its database of old stock photos worth no more than a few dollars each. Courts across the country have denounced the use of such tactics by companies that are in the business of copyright enforcement, not the business of creating valuable content, using tactics that one court compared to the figurative "troll under the bridge." *Design Basics v. Lexington Homes*, 858 F.3d 1093, 1097 (7th Cir. 2017). That court added, "This business strategy is far removed from the goals of the Constitution's intellectual property clause . . .." *Id.*

PFP's response contains several elements, none of them valid. First, it argues

at length that Pool World is asking the Court to "reject the discovery rule altogether. Opp. 2-5. Pool World is not making that argument. To the contrary, Pool World acknowledged that the discovery rule is an exception to the three-year statute of limitations, an exception that copyright plaintiffs bear the burden of proving. But the exception does not apply because of PFP's inequitable conduct. Motion at 9-23.

Second, PFP notes that Pool World has not cited any cases adopting its analysis. PFP cites no cases rejecting the argument, and Pool World is aware of none. As Pool World has said from its first brief in this case, this equitable argument presents an issue of first impression. DN 21, at 5.

Courts have expressed in a number of other contexts concern about the sort of coercive tactics presented by undisputed facts in this case. For example, courts have cited copyright plaintiffs' coercive tactics in declining to allow premature discovery, *Malibu Media v. Doe*, 2015 WL 4092417, at \*1, \*3 (S.D.N.Y. July 6, 2015). They have also considered coercive tactics in assessing whether there is sufficient quantum of evidence to create a genuine issue of fact at the summary judgment stage:

> "The essence of trolling is that the plaintiff is more focused on the business of litigation than on selling a product or service or licensing their IP to third parties to sell a product or a service. The paradigmatic troll plays a numbers game in which it targets hundreds or thousands of defendants, seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim."

> *Design Basics*, *supra*, 858 F.3d at 1097, quoting Sag, *Copyright Trolling, an Empirical Study*, 100 Iowa L. Rev. 1105, 1108 (2015).

*See also Live Face on Web v. Cremation Socy. of Ill.,* 77 F.4th 630, 634 (7th Cir.

2023) (reversing denial of fees to defendant where "this suit bears all the hallmarks of a copyright troll at work"); *Philpot v. L.M. Commun. II of S.C.*, 2020 WL 2513820, at *4 (E.D. Ky. May 15, 2020) (denying fee award to prevailing perceived copyright troll). The Court should invoke considerations of equity to recognize that PFP is not entitled to the benefit of the discovery rule on the extreme facts of this case.

In arguing against considering equity, PFP compares itself favorably with two companies that have filed thousands of infringement actions over the transmission of their adult movies through BitTorrent. Opp. 9-10; DN 100-2, at 10-11. But PFP has not provided any basis to believe that there were any statute of limitations issues raised in these cases. And PFP's focus on the large number of cases that those companies filed, by comparison with the number of copyright claims that PFP pursues, is misplaced; the issue here is the fundamentally dishonest and extortionate way in which PFP has litigated its cases (and pursued the much larger number of threats that resulted in settlements). Finally, despite justified concerns about litigation tactics that some courts have expressed in some adult movie cases, those companies, unlike PFP, spend most of their time producing content with broad appeals, and derive most of their income selling access to that content. *Malibu Media v. Does*, 950 F. Supp. 2d 779, 787 (E.D. Pa. 2013); *see also* Levy Ninth Aff. ¶ 13.

In addition, PFP has tried to create an illusion of factual dispute over whether its conduct has been inequitable by labeling many of Pool World's material facts as disputed. DN 100-1. However, as shown by Pool World's Reply in Support of its

Statement of Material Facts, few of PFP's "disputes" are supported by admissible evidence that creates a genuine issue of fact.

PFP also argues that Pool World is confusing the equitable basis for denying it the discovery rule here with the well-established statute of limitations exception for equitable tolling. Opp. 7-9. But there is a key difference between the two concepts: equitable tolling addresses inequitable conduct by a defendant that gives a would-be plaintiff an **extra exception** to the statute of limitations. Pool World's argument, however, articulates, based on PFP's inequitable conduct, a narrow exception to the discovery rule exception to the statute of limitations which, as shown in the motion, the Ninth Circuit and other courts have said is founded in considerations of equity. And the only authority PFP cites for refusing to consider equity as a counterweight to the discovery rule is a Second Circuit case rejecting a broad "sophisticated plaintiff" exception to the discovery rule based not at all on alleged inequitable activity. Opp. 6.

Finally, PFP's attempts to defend some of the inequitable practices called out by Pool World's motion fall far short. For example, PFP justifies its threat to seek statutory damages and attorney fees that were not available to it on the claim that it was unaware that the alleged infringement took place twelve years before. PFP and its counsel say they are too busy to take the simple, basic step of determining the date of an alleged infringement before sending a demand letter. Opp. 22-24. PFP admits, however, that it routinely uses "the Wayback Machine and other resources" to make

such a determination before it files suit, Opp. 24.  It also uses that device regularly when trying to **increase** the damages awarded on default.  Levy Ninth Aff.  ¶ 4.  PFP's decision to skip this easy bit of due diligence, a 30 second task, *id.*, using a resource that it admits it routinely uses, rebuts its denial that threatening unavailable remedies was inequitable.

PFP justifies the claim in its demand letter that it knew that Pool World had no license, and the affirmative allegation in the complaint that Pool World's use was unlicensed, on the ground that Getty affirmatively told it so before it filed, Opp. 12-14, and on Rule 45 subpoenas to grill manufacturers.   But PFP fails to provide the communication from Getty, received **after it sent the demand letter**, which said only that Getty could not confirm a license "based on the information provided," but also pointedly reminded PFP that the license for Pool World could have come indirectly from an agency or designer.  Levy Ninth Aff. ¶ 7 and Exh. DDD.  *See also* SMF 6 (Getty's licenses extended to licensees' customers). PFP also misstates Pool World's discovery response, which indicated that the license might well have come from a distributor, not a manufacturer.  DN 90-15, Exh. WW at 198.

PFP also defends the damages claims in the demand letter and in this litigation, as well as the settlement payments in the high four figures or even five figures,  on the ground that it has secured several large default judgments.  Opp. 26.  But those judgments were based on ex parte filings that falsely alleged (and falsely averred) that its minimum monthly subscription fee is $999, even though the undisputed facts show

that $999 has never been its monthly minimum fee. Indeed, going back to 2017 and 2018, there have been multiple subscribers paying half that amount. Not only did nearly half of the subscribers pay less than $999, with one subscriber paying $99 per month for several years, but for a period of time PFP was offering a subscription at $29.99 per month. Levy Ninth Aff. ¶ 5 & Exh. CCC.

PFP shrugs off this evidence, saying that its damages valuation is just a theory that it is entitled to submit to a jury. Opp. 28. Not so. As the motion explained, citing cases that are ignored by PFP's opposition, Ninth Circuit law is clear that a lost license fee rests on the actual market value of "the thing used" at the time of infringement, and not what the owner would have charged or some higher figure from the time of litigation. *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 *et seq.* (9th Cir. 2014); *Jarvis v. K2 Inc.*, 486 F.3d 526, 533–34 (9th Cir. 2007). Pool World has presented an expert report on market value of the one photo at issue here; PFP has no admissible evidence disputing that point. And PFP never told courts about cases like *Oracle Corp.* and *Jarvis*, or the principles for which they stand, when it obtained default judgments that it now cites as justifications for its improper claims. SMF 93.

PFP cannot try to a jury a damages theory that is contrary to well-settled law. The Court should apply established law to the undisputed facts and grant summary judgment barring that damages theory, both because it is the right outcome in this case, and so that other litigants will know that when the issue is presented to a court, they will be "protected against an unrealistically exaggerated claim." *On Davis v. The*

*Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001).

PFP argues that its threat to sue Pool World in Florida was consistent with the holdings of a few unreported district court cases discussing Florida's long-arm statute, Opp. 25-26, but ignores the many appellate rulings saying that long-arm statutes cannot constitutionally provide personal jurisdiction over an out-of-state accused tortfeasor unless a defendant knew that it was directing tortious conduct into the forum. *E.g.*, *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008); *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002). PFP's corporate predecessor was in Rhode Island at the time of Pool World's alleged act of infringement, and did not even incorporate in Florida until 2021, and even then, its base of operations appears to remain in Rhode Island. See Levy Ninth Aff. ¶ 2.

In addition to considering the specific, inequitable features of PFP's demand letters and enforcement program, the Court should also look at them as a whole, and conclude that PFP has regularly used a pattern of dishonest factual claims and unfounded threats to coerce settlements that provide far more income than its individual photos are worth. This unequitable conduct should eliminate this particular plaintiff's access to the equitable discovery rule in this particular case, where it has employed its regular coercive practices.

**B.     PFP Reasonably Should Have Found Pool World's Use Before June 2020.**

Summary judgment should also be granted on Pool World's second argument: that PFP should have discovered the alleged infringement sooner. At the outset of the

case, Pool World sought all documents relating to PFP's reverse image searches. Initially, PFP produced no documents; after a meet and confer, PFP represented that the only document it had was the spreadsheet showing searches that found alleged infringement. Ninth Levy Aff. ¶ 9. Those spreadsheets showed that it had conducted only a handful of successful reverse image searches for the Grilled Vegetable Image.

PFP has produced no records of unsuccessful searches, even though, every time PFP staff performed a search, the digital files showing that search, and how thorough that search was, would have remained for some time on the PFP computer used for the search. PFP made a conscious decision not to print or otherwise preserve them, or to make a permanent record of the searches, again because, it says, it is too busy finding more infringers to preserve evidence of its diligence. PFP has also failed to meet its burden of proof that it made reasonable efforts to discover the Grilled Vegetable Image because it produced no documentation of its search protocols that could create a disputed fact whether its searchers always looked for this particular image. PFP has been invoking the discovery rule for many years, and hence was on notice that records of unsuccessful searches would be relevant in litigation to show that it has reasonably tried to find alleged infringing use of each image. The Court should treat the failure to preserve such records as spoliation that bars PFP from making assertions about how often it searched unsuccessfully for this specific image. *See Ryan v. Editions Ltd. West* 786 F.3d 754, 766 (9th Cir. 2015) (spoliation sanctions can be proper when a party fails to preserve documents it should

have known were relevant to litigation).

PFP also relies on a report from Joe Naylor, the owner of Image Rights International.  However, Naylor's report does not provide adequate support for PFP to meet its burden of proving due diligence in searching.  *See Wood v. Santa Barbara Chamber of Com.,* 705 F.2d 1515, 1521 (9th Cir. 1983) (discussing photographer's failure to show due diligence).  He expresses general opinions not tied to this case; he does not say that he has examined any specific software, or methods or procedures, or any other efforts that PFP made over the ten years from 2010 to 2020 —including no searches before 2016.  Pool World's use of the composite image was found by the Internet Archive's crawler as early as 2011, and there is no reason to think Google's image searcher could not have seen it at the same time.

Indeed, Naylor's report tends in one respect to undermine PFP's resort to the "should have discovered" prong of the discovery rule: his explanation of the difficulties that confront users of Google reverse image searchers raises the question of what steps PFP took to overcome those hurdles.  The very fact that the Jones Declaration emphasizes that PFP does **not** employ sophisticated search technologies, such as the artificial intelligence methods that Naylor advertises in promoting his services, https://www.imagerights.com/discovery, undercuts its claim that it is pursuing all reasonable steps to identify each alleged infringement as quickly as possible.  Although PFP is a fairly small company, the undisputed facts reveal both that it is in the copyright search and enforcement business, and that this business is

exceptionally lucrative.  Given the substantial revenue it makes in that enterprise, it is reasonable to expect PFP to ensure the efficiency of its search operation by investing in sophisticated search methods rather than ordinary image searching.  PFP has offered no explanation for dropping Naylor's expert search services (which it once used, according to one of PFP's interrogatory answers, DN 90-17, Exh. YY, at 236) and decided instead to rely on manual Google reverse image searches by its clerical staff.  Naylor's failure to say anything specific about a former customer's actual search efforts speaks volumes.

PFP relies heavily on *Michael Grecco Productions v. RADesign, Inc.*, 112 F.4th 144 (2d Cir. 2024).  But that case represents only Second Circuit law, and held only that, on a motion to dismiss, a plaintiff's sophisticated enforcement efforts do not categorically exclude it from invocation of the discovery rule.  As noted in Pool World's Motion, the Second Circuit left open the question of whether the specifics of a particular plaintiff's sophistication could be considered in deciding the time at which the plaintiff should have discovered the alleged infringement and whether summary judgment was appropriate on that issue.  *Id.* at 154 n.8.

The Court should grant summary judgment on the ground that PFP reasonably should have found Pool World's alleged infringement no later than June 2, 2020.

## CONCLUSION

The motion for summary judgment should be granted.

Respectfully submitted,

/s/    Paul Alan Levy
Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

/s/ Stephen Kirby
Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe Street
Spokane, Washington 99201
(509) 795 4863
kirby@kirbylawoffice.com

/s/ Phillip R. Malone
Phillip R. Malone (pro hac vice)
Juelsgaard Intellectual Property
 and Innovation Clinic
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 724-1900
pmalone@stanford.edu

Attorneys for Defendant

August 28, 2025

## CERTIFICATE OF SERVICE

I hereby certify that, on this 28th day of August, 2025, I am filing this this reply memorandum and redacted versions of the attached reply on the material facts, affirmation and exhibits by the Court's ECF system, which will effect service on counsel for plaintiff, Max Archer Daniel DeSouza, and Lauren Hausman.  The unredacted papers will be delivered to the Court in hard copy and will be emailed to PFP's with consent.

/s/   Paul Alan Levy
Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

August 28, 2025