Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe St.
Spokane, Washington 99201
(509) 795-4863
kirby@kirbylawoffice.com

Phillip R. Malone (pro hac vice)
Juelsgaard Intellectual Property and Innovation Clinic
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
(650) 724-1900
pmalone@stanford.edu

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PREPARED FOOD PHOTOS, INC., f/k/a ADLIFE MARKETING & COMMUNICATIONS CO., INC., a Florida for profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>POOL WORLD, INC., a Washington for profit corporation,<br><br>Defendant. | No. 2:23-cv-00160-TOR<br><br>**NINTH AFFIRMATION OF PAUL ALAN LEVY**<br><br>Hearing September 2, 2025 6:30 PM |

1. My name is Paul Alan Levy. This affirmation is made in further support of Pool World's motion for summary judgment.

2. I attach as Exhibit ZZ a document that I obtained from the website of the Florida Secretary of State, showing that in 2021 Prepared Food Photos ("PFP") switched its state of incorporation from Rhode Island to Florida. Despite this change,

the bank records from 2021 through 2024, including PFP's payroll account, have continued to reflect that PFP has a Rhode Island address.

3.  Over the course of this case, I have had a number of one-on-one conversations with PFP's counsel, Daniel DeSouza, on the understanding that they would be off the record.  Mr. DeSouza provides a partial description of off-the-record conversations I had with him in connection with the Rule 11 issue that eventually led Pool World to serve a Rule 11 motion, thus starting the running of the safe-harbor period for the withdrawal of the original complaint. To provide context for that partial description, I am attaching as Exhibit AAA Mr. DeSouza's initial proposed amended complaint.  It indicated that the reason why there were subscriptions under $999 per month was that, when PFP first adopted a subscription model in 2017, it had required payments of only $499 per month, but that later in 2017 it moved to a monthly payment of $999 per month; it specifically alleged that all of the subscribers under $999 per month had been subscribers for "5+" years, implying that the shift in monthly payment demand was the reason.  I told Mr. DeSouza that, if this amended complaint were filed, it would still be subject to a Rule 11 motion.  As shown by Exhibit OO to the complaint, out of the 22 subscription agreements, nine (roughly 40%) were under 999 per month, for monthly payments of $99, $300, $499, $500 and $750; one of those was signed in 2017, one in 2018, six in 2019, and one in 2021. And one, signed in 2020, called for $500 per month or $999 per month, depending on certain circumstances (*see infra* ¶ 8).

4. Rebecca Jones avers that her client is too busy finding new targets for infringement claims to check when any given infringement began. In my practice, I regularly use the Wayback Machine on the Internet Archive (archive.org), and as my Seventh Affirmation showed, at ¶ 33, so does Mr. DeSouza's firm in the course of its representation of PFP. In preparing this affidavit, I ran a check of how the website www.poolworld-grillworld.com appears in archive.org. It took me less than 30 seconds to open the Wayback Machine, enter the URL, and receive the result attached as Exhibit BBB. It took me a few more seconds to locate the first entry—in February 2011—and pull up the page showing that the composite image at issue in this case appeared on Pool World's web site in that year.

5. Although, as noted in the Statement of Material Facts, ¶¶ 34, 42, and acknowledged in the Jones Declaration, ¶ 17, most of PFP's subscribers have been grocery store chains and advertising companies, the Wayback Machine shows that, for a period of time in 2019 (AdLife is PFP's predecessor), PFP was advertising a subscription agreement for smaller retailers – with up to three locations – allowing unlimited downloads for only $29.99 per month with a minimum subscription of one year. *See* https://web.archive.org/web/20190405035124/https://preparedfood photos. com/ featured-subscriptions/. A screenshot is attached as Exhibit CCC.

6. Mr. DeSouza avers that each of the subscribers who signed up after he sent them infringement claims did so because they asked to sign subscription agreements. This fact, assuming it is so, does not make those agreements any more probative of

the market value of future access to PFP's database stock photographs of food. Indeed, many of the pre-agreement communications with subscribers make clear that the purpose was to settle past claims—communications from the subscribers identified as numbers 2 and 3 in Exhibit OO make clear that these subscribers were paying for past access. PFP has not produced communications with subscribers before 2023. in part because, according to Mr. DeSouza during a meet and confer, his firm's practice is to discard all email after one year. *See* Fifth Levy Affirmation, ¶ 22 (DN 70-1, at page 22). Moreover, Mr. DeSouza would not have personal knowledge of the circumstances in which subscriptions were entered before he took on the PFP account in 2021.

7. The Jones Declaration avers (¶ 8) that, before this action was filed, Jones contacted Getty Images to find out whether Pool World had a license to use the Grilled Vegetable image. Jones reports having received a negative response, but she does not attach that response. The response itself is attached as Exhibit DDD. It shows that Getty included a significant qualifier in its answer: "As per normal, it is quite possible that the use has been licensed accordingly by an agency or designer."

8. The Jones Declaration avers (¶ 20) that PFP has not entered into any new subscription after January 1, 2020, for less than $999 per month. That averment is contradicted by documents that PFP produced in discovery. As shown by Exhibit OO, the subscription agreement with company number 12, entered in June 2020, provided for payments of $500 per month so long as that company used the

advertising services of Bad-Adz. A copy of that agreement (with the company name redacted) is attached as Exhibit EEE. In disclosures made after the motion for summary judgment was filed, in connection with PFP's request for an extension of time, Mr. DeSouza confirmed that the company identified as number 12 in Exhibit OO in fact had continued to be a Bad-Adz customer (and hence was paying at the $500 per month rate) until that company stopped subscribing altogether because its owner had a stroke. Similarly, the agreement with a national advertiser that was filed as Exhibit U, DN 54-11 at page 149, 152, entered in July 2021, provided for payments of $750 per month. Moreover, Exhibit KK, which was provided in discovery only after the Court ordered PFP to provide records of payments pursuant to subscription agreements, showed payments in the amounts of $299 per month and $499 per month from companies whose subscription agreements were not furnished along with the 22 agreements provided in late 2023, and in the amount of $95 per month from a company whose payments did not even begin until December 2023.

9. The Jones declaration avers that PFP has been searching its entire library of 18,000 images on a rotating basis, searching each image on average every 6 to 8 weeks, effectively searching each image 6 to 7 times per year. At the outset of discovery, Pool World asked PFP to produce all "documents that reflect or contain any information about the reverse image searches." PFP initially refused to respond to this request, asserting that it was both overbroad and irrelevant. The document request, and PFP's response, has previously been filed as Exhibit L, page 17. After

Pool World met and conferred about a possible motion to compel, PFP indicated that the only document in its possession was the list of affirmative search hits, described in the Jones Declaration, some excerpts of which have previously been filed with the Court. PFP has effectively admitted, therefore, that it has no documents reflecting the supposed rotation practice that Jones describes. Moreover, her declaration indicates that PFP deliberately decided not to preserve the digital images of their searches, as those searches appeared on their computer screens, by printing out these purported searches, or by keeping screenshots, or by making any other record of them.

10. As the Court has been advised in two successive motions to extend the deadline for discovery, Jones has been unavailable for deposition for several months because of a family crisis described by PFP counsel. The parties had agreed in early March 2025 on depositions in Florida beginning April 15, but those depositions were postponed the day before after Mr. DeSouza called me to relate her inability to travel.

11. After Pool World's motion for summary judgment was filed, PFP complied with its longstanding promise to produce bank records showing payments from subscribers from the first five months of 2020. By inspecting these records, I was able to identify additional receipts of money obtained by making claims of copyright infringement. As a result, I have revised Exhibit RR, filed with the summary judgment motion, creating the attached Adjusted Exhibit RR (which I shared with PFP counsel before its opposition was due). In addition, I have noticed that in my Seventh Affidavit's summary of the funds received by PFP from accused infringers,

as reflected in a ledger from CopyCat Legal, I transposed two numbers, a 0 and a 4, so that instead of correctly recording the total received in that year as $1,406,515.81, my chart showed the total as $1,046,515.81. With both PFP's additional information, and a correction of the typographical error, the corrected chart is as follows:

**PFP Income from Copyright Claims**

|  | Unredacted Bank Statements Higbee Payment | Unredacted Bank Statements Settlements | PFP Search Hit Tracking Sheet 4/19 to 1/24 | CopyCat Ledger | Other | Total |
|---|---|---|---|---|---|---|
| 2018 | 73,345.69 | 589,479.20 |  |  |  | 662,824.89 |
| 2019 | 246,140.60 | 282,624.40 | 317,055 |  |  | 845,820 |
| 2020 | 160,711.22 | 22,600 | 55,625 |  | 37000 Sprouts | 275,936.22 |
| 2021 | none shown | 73,275.69 | 42,249 |  |  | 115,524.69 |
| 2022 |  |  | 11,000 | 1612298.66 |  | 1,623,298.66 |
| 2023 |  |  | 18,800 | 2828297.32 |  | 2,847,097.32 |
| 2024 |  |  | 3,000 | 1403515.81 |  | 1,406,515.81 |

**PFP Income from Subscribers**

|  | Subscriber Income Shown in Redacted Bank Statements | Subscriber Income Claimed in 2023 Interrogatory Answer (DN21-4, page B-60) |
|---|---|---|
| 2018 | 79,728 (including commingled) | 78,728 |
| 2019 | 91,639.07 (including commingled) | 192,879 |
| 2020 | 59,766.38 | 180,345 |
| 2021 | 88,984.20 (including commingled) | 71,162 |
| 2022 | 59,833.64 | 94,157 |
| 2023 | 79,584.44 | 70,484 |
| 2024 | 67,583.62 | n/a |

12. Our summary judgment filing contained another error. After conducting a digital search of sealed Exhibit SS, using as search terms the case names of each of the ten default judgment cases cited in PFP's initial disclosures, I found that none of those names appeared in the ledger of infringement payments obtained by CopyCat Legal. I confirmed this observation during a meet and confer with Mr. DeSouza, who commented that it can be hard to collect default judgments. The finding was mentioned in support of the summary motion (SMF ¶ 95). But after conducting a visual examination of the ledger in light of Mr. DeSouza's affidavit, I found that a small amount of the default judgment in *PFP v. redacted* was collected by garnishing a bank account (entry on 9/18/2024). Paragraph 95 of the Statement of Material Facts was incorrect in this one respect.

13. The DeSouza Declaration includes several paragraphs about the number of copyright infringement actions filed by two companies, Malibu Media and Strike 3 Holdings. What Mr. DeSouza does not mention is that, unlike his client, the public record reflects that employees at Malibu Media and Strike 3 Holdings spend most of their time creating new works, and the companies make most of their money from selling subscriptions to members of the public who want to watch their pornographic movies. Pool World's reply in support of its motion to unseal cited data from a published ruling in one of the Malibu Media cases, *Malibu Media v. Doe*, 950 F. Supp. 2d 779, 787 (E.D. Pa. 2013). I attach as Exhibit FFF an affidavit filed in a Strike 3 Holdings case, asserting among other things that Strike 3 has "a subscriber

base that is one of the largest of any adult site in the world" and is "the number one seller of adult DVDs in the United States." I have followed the issues in cases filed by companies that make adult movies for many years. I was appointed guardian ad litem for several hundred anonymous defendants in a case in the Northern District of Texas, and I represented an anonymous Internet user whom Strike 3 accused of infringement based on an IP address, seeking (successfully) to protect the user's anonymity. Despite Strike 3's faults, I am not aware of any reason to doubt the veracity of the averments about Strike 3's business. Nor would statute of limitations issues present themselves in the typical BitTorrent case.

14. The first time we learned that PFP had served subpoenas on Weber and Traeger was when we reviewed its Opposition.

Pursuant to 28 U.S.C. § 1746, I hereby certify under penalty of perjury that the foregoing is true and correct. Executed on August 28, 2025.

_____ /s/ Paul Alan Levy _____

# INDEX OF EXHIBITS

Adjusted Exhibit RR: Infringement Collections from Bank Statements. . . . . . . 70

Exhibit ZZ Prepared Food Photos Incorporation in Florida . . . . . . . . . . . . . . . . 75

Exhibit AAA Draft Amended Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

Exhibit BBB Wayback Machine Search for Pool World Website . . . . . . . . . . . 95

Exhibit CCC 2019 Subscription Offer on AdLife Website . . . . . . . . . . . . . . . . . 97

Exhibit DDD Email Exchange Between Getty and Prepared Food Photos. . . . . . 99

Exhibit EEE Subscriber Agreement of Company 12. . . . . . . . . . . . . . . . . . . . . 102

Exhibit FFF Affidavit from Strike 3 Holdings Lawsuit. . . . . . . . . . . . . . . . . . . 112